IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RODICA WAIVIO, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 07-C-6690 |
| ADVOCATE HEALTH CARE NETWORK, | ) | |
| ADVOCATE MEDICAL GROUP, | ) | |
| ADVOCATE HEALTH AND | ) | HONORABLE JUDGE |
| HOSPILAT CORPORATION, | ) | Ronald A. Guzman |
| ADVOCATE LUTHERAN GENERAL HOSPITAL,) | | |
| IAN JASENOF, individual and employee, | ) | |
| JENNIFER TORRES, individual and employee, | ) | |
| DANIEL PESCH, individual and employee | ) | |
| THOMAS IANNUCCI, individual employee | ) | |
| BRUCE PIELTE, individual and employee, | ) | |
| VISHVANATH KARANDE, individual employee) | | |
| RAPISARDA JOHN, individual and employee ) | | |
| FERTILITY CENTER OF ILLINOIS, | ) | |
| KARANDE& ASSOCIATES | ) | |
| MCBREEN, KOPKO&DAYAL, | ) | |
| Edward Nielsen, individual end employee | ) | |
| Anjali Dayal, individual and employee | ) | |
| Joanne Ciminera, individual and employee | ) | |
| PRETZEL&STOUFFER CHARTERED | ) | |
| Wilson Elser,Moskowitz, Edelman& DickerLLP) | | |
| Defendants. | | |

**FIRST AMENDED COMPLAINT(04/25/08) AND DEMAND FOR JURY TRIAL**

**NOW COMES** Plaintiff, WAIVIO, in Pro Se, and complaining against Defendants, states:

*Before word*

1. Theory of discrimination is applied here in medicine; Lupus is discriminator, it discriminates artificial means from natural means. Solution to lupus is Theory of "Toleration"[1], it is more likely Lupus will tolerate natural pregnancy than to tolerate an artificial pregnancy when Lupus is interpreted as discriminator;

---

[1] See brief 7thCir 07-2364 pag 30 Waivio v. UIC; precedent Thomas v. Metroflight (10th Cir 1987) "it is sex discrimination to discharge female worker for having an affair while toleration similar conduct by male employees"; it is disability discrimination to deny treatment to a person with lupus who needs "natural pregnancy" when tolerating natural pregnancy to others without lupus[such as young people]. This is disability discrimination based on lupus discrimination; Waivio was refused natural means of conception which were means to Waivio based on her lupus. It is age discrimination also because Waivio is willfully treated based on age as "old women" when solution to Waivio is treatment comparable to "young women"; Waivio is misclassified based age, or similar situated nat orig

1

2. Based on presentiment Waivio alleges solution to present situation is natural pregnancy[2]; however natural pregnancy at this age is "miracle", extremely very very rare; this is formulated based on "within the grasp of ordinary juror with regards to solution" opinion.

3. Natural pregnancy which is solution to Waivio is not "defendants practice"; denial of medical services when Waivio was pregnant is defendants are discriminating on lupus or they do not have interest to treat lupus; after death Waivio's child defendants are discriminating based on Lupus disability because "natural pregnancy" is not interest to defendants. It is age discrimination because defendants willfully intentionally treated Waivio as "old women" when solution to Waivio is "treatment for young women". It is retaliation or deter testimony because there is solution[which is extremely rare] but solution is opposite to unlawful Rapisarda/Lutheran practices, solution disproves unlawful discriminatory illegal practices.

4. Reformulation in terms of 04-C-3545: Waivo was discriminated based on national origin because "uninitiated in fertility treatment Gonal-F" were rare, uncommon; Waivio was discriminated based on lupus because solution to lupus was rare, uncommon, it was natural pregnancy which is rare in defendants' practices. Waivio was discriminated based on age by willful intentional misclassification as "old women" because "treatment of young women with natural pregnancy" was no interest to them, it was uncommon; Waivio was discriminated based on Romanian origin[3] because natural pregnancy demanded by Romanian culture [seen as lack of American culture, no culture for fertility treatments] was uncommon. It was retaliation/deter testimony federal court because "natural pregnancy" solution to Waivio was opposite to unlawful discrimination of defendants, it was against their false interests. Shortly this complaint is similar situated to 04-C-3545 [related 06-7189], similar situated practices, supporting again retaliation and deter of Waivio testimony/participation; Claims "federal laws and 42USC1985".

*Introduction*

---

[2] Under natural pregnancy solution it appears defendants deter Waivio solution which is opposite alternative to unlawful Rapisarda treatment; shortly defendants cover up "Gonal-F treatment"; if Waivio gets pregnant naturally Waivio disproves Gonal-F necessity, therefore defendants deter Waivio disproval of Gonal-F practice, deter Waivio testimony to federal court and it is retaliation too.

[3] Discrimination based on national origin of Rapisarda was based on testing of Gonal-F on uninitiated person given by lack of American culture, shortly Romanian culture was seen as uninitiated person therefore interest to medical society as to see Goanl-F side effects; this is flagrant bad faith human experimentation

5. Defendants have specific interests in Gonal-F[4] which is medically invalid proved to induce preemies and induce "lupus", fatal immunity diseases. This interest was supported by overwhelming number[5] of older women who receive medical services from defendants comparative to number of older women in community [existence of extreme disparities based on age or of specific programs, practices and specific interests in such older women]. Defendants granted preferential treatment, high interest based on age to older women, comparative to younger woman; defendants willfully intentionally discriminated based on age.

6. Rapisarda provided false and invalid treatment in April 2006 by willful false misclassification of Waivio based on her national origin or her age as "older women", when Waivio should have been treated as "younger woman". Rapisarda falsely related Waivio age and her national origin with his false interest in "Gonal-F practice" which was practice of Lutheran and Advocate therefore supporting Rapisarda employment within defendants' institutions. In alternative Rapisarda discriminated Waivio based on her participation in US District court [Charles Miller is UICemployee and Lutheran; Rapisarda had arguments available] because he falsely related his interest in Gonal-F practice with federal court.

7. Following Rapisarda  extreme aggravate treatment defendants covered up "invalid Gonal-F practice" by inducing injury to Waivio and refusing medical services, discriminating based on protected characteristics, or deter Waivio testimony to federal court about invalid medical practice or about Rapisarda invalid and illegal practices; they also willfully induced this federal legal action designated to cover up invalid Gonal-F practice by misconduct and abuse of process, exploitation of Waivio pro se representation.

8. While Defendants are highly interested in invalid Gonal-F practice, they severely discriminate Waivio based on "lupus" which is fatal disease induced by Gonal-F, therefore defendants willfully discriminate based on disability in violation of ADA, Rehabilitation Act. The willful induced opposite discriminatory practices one of high support to older women and another of discrimination against Lupus results in  Lutheran hospital to receive about 4000-6000

---

[4] Defendants interest to Gonal F is opposite alternative to Lupus; defendants interest for Gonal-F is similar situated with discrimination based on Lupus, therefore defendants refuse lupus treatment.

[5] This is similar situated to complaint.08/10/05 in 04-C-3545 existence of racial disparities, proving a relation between 04-C-3545 and present case therefore motivation defendants practices violation of 42USC1985; defendants in present case copied UIC/ETS practices in 04-C-3545 and 06-7189

pregnant women on year while the births are about 150 on year; Monetary profits of Defendants considering Invitro Vertilization [with $12000] is about $48000000 ; This practice is in flagrant violation of US Constitution and right of prosperity, fertility treatments are used with sole monetary purposes against the health and well being of people .

### General Allegations

9. This complaint is divided in two alternative with respect to Karande only; First alternative is that surgery performed March 25,2007 was the injury to Waivio and this was different than "Gonal-Ftreatment" [Karande has to respond to karande marked allegations]; second alterative is Karande induced "Gonal-F treatment", therefore Karande and "Gonal-F treatment" are same issues, and Karande has to respond all complaint in this alternative;

10. With respect to Rapisarda and FCI they need to respond all complaint all issues of facts and law because complaint is written in alternative that "Gonal-F treatment" or matters related to this treatment  provide motivation to all others.

11. Dayal representing Lutheran/Advocate/ individual defendants must respond all complaint all issues of law and fact because of Theory of vicarious liability. All fact of law are under Lutheran Hospital vicarious liability.

12. This is an action alleging "pattern and practice of unlawful discrimination", defendants' violation of plaintiff's freedom from discrimination in medical services based on plaintiff's age, national origin, disability, gender, protected actions, court federal participation protected membership in protected classes starting year 2006 till present as secured by US Constitution and federal laws, Age discrimination act 1975, Age discrimination Employment Act, 42USC1981, 42USC1981(a), Title VII [medical services were benefits of employment], Title VI[6], Title IX, Rehabilitation Act, ADA, Civil Rights of 1871, Fourteenth Amendment to US Constitution. Complaint claims defendants violated plaintiff's constitutional/federal rights to life, happiness, property, enjoyment of life, and prosperity plaintiff's baby right to life.

13. This is an action alleging defendants did not conform to "safe harbor provisions" of Immigration Reform Act, Title VII, Title VI, Section 1981. Immigration Act requires step by

---

[6]    42USC300w-7(a)Defendants satisfy the requirement from 42USC300w-7, defendants' activities are funded in part with founds made available under 42USC300, federal funds
42USC708 Maternal and Child Heath activities under federal funds satisfies 42USC708

step procedure, 60 days, viable solution to "no-match letter". Rapisarda misdiagnosed and mistreated Waivio; Rapisarda's treatment was "no-match" to specific Waivio necessities, His actions are discrimination based on national origin he did not conform with provisions of "no-match", and did not provide medical treatment corresponding to specific requests of Waivio and to specific situation at that specific time. Rapisarda intentionally discriminated Waivio based on her national origin as falsely related Waivio's national origin with his personal false interests in testing of inappropriately false drug or false interests to induce federal legal action.

14. Defendants' Practices and patterns are racial, national origin discrimination supported by "policices that are directed at race, national origin have been invalidated" *EEOC v. Greyhound Lines Inc* 635 F 2d 188(3d Cir 1980)(no beard polycy); *Jenkins v. Blue Cross Mutual Hospital Insurance Inc* 538 F2df (7th CIr)(discrimination alleged on Afro haristyle). Illgal testing of illgal medication is a practice targeted to Waivio Romanian national origin. Waivio belives actions of Rapisarda are similar situated to Burzynski in State Bd of Med Examiners v. Burzynski 917 S. W. 2d 365 (Tex App 1996); Rapisarda illigally without Waivio consent involved Waiovio in illgal testing of Gonal-F while Waivio had no knowlage, in violation of Illinois Reseaech Human Subjects act, in violation of Illinois Pharmacy Act, and Illinois Health and Safty Laws. Rapisarda is in violation of consent of Rodica and Nathan Waivio for such treatmnet therefor under Tort of Battery, Tort of Trasspass of consent.

15. This is an action alleging defendants did not conform with "safe harbor provisions" of federal or state laws and rules which governs medical services of John Rapisarda, Advocate, Lutheran, FCI, Karande  medical services as to specific matter and medical safety provisions under Title42, ADA, Rehat, Social Security Act or Chapter 117 Encouraging good faith Professional or  42USC300 or any federal law or state laws Illinois Health and Safety Law, Illinois Hospital licensing Act, 410ILCS250 Developmental Disability Protection Act, Illinois medical malpractice [all related statutes] 735 Ill. Comp. Stat. Ann. § 5/13-21  as related to matters presented. Defendants practices is flagrant violation of federal and state laws 735 Ill. Comp. Stat. Ann. § 5/13-212 in flagrant violation of provisions of safety of Waivio health, Defendants took decision of complete refusal  or induced harm or injury Waivio in less than 60 days from Waivio request of medical services. Waivio had first discussion Rapisarda on March

5

27, 2006 while his first treatment was 04/25/06 [less month]; Jasenof saw first time Waivio 6/23/06, by 7/11/06, 7/18/06 was his decision to completely refuse medical services; same Pilate, Ianucci; Karande saw Waivio 02/07, surgery badly performed 03/07, less than 60 days.

16. This is an Wrongful death actions pursuant 740 Ill. Comp. Stat. Ann. § 180/2 (West Supp. 2002). Defendants' action caused wrongful death to Waivio's child.

17. Lutheran and Advocate are liable for actions of Rapisarda, [individual defendants ] under theory of vicariously liable, (a) it acts in a manner, or knowingly acquiesces in the acts of Rapisarda, that would lead a reasonable person to conclude that Rapisarda [individual defendants] is its agent or employee, and (b) the patient [Waivio] reasonably relied upon such conduct. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 622 N.E.2d 788 (1993).

18.    All issues under medical matters are within the grasp of ordinary lay juror, medical experts are not necessity in present action. Documents on record shows Gonal-F is medically invalid because Gonal-F induced lupus;

19.    This is action also under ADA and 42USC12101...12514, Rehabilitation act 29USC794-794a. Medical condition induced by Rapisarda treatment was "lupus", known to all defendants and it is "disability" recognized under ADA and Rehabilitation act, specific condition, Waivio was entitled to medical services adequate to her specific condition and to her unborn child; defendants practice refusal of medical services as specific to situation is flagrant violation of ADA and Rehabilitation Act, discriminatory practices based on disability or conditions of disability. Waivio's medical condition after Rapisarda treatment while pregnant was in necessity of high risk doctor, specialized services which were available at defendants.

20.    This is an action of willful intentional malicious medical malpractice Medical malpractice resulted from actions taken by defendants , or by refusal to take medically appropriate action. Internet http://www.expertlaw.com/library/malpractice_by_state/Illinois.html recognize medical malpractice as: a.Misdiagnosis of, or failure to diagnose , a disease or medical condition; b.Failure to provide appropriate treatment for a medical condition; c.Unreasonable delay in treating a diagnosed medical condition; Rapisarda is responsible for misdiagnosis, willful refusal to diagnose to Waivio as he provided aggravate treatment when less drastic treatment and when natural treatment was available; Rapisarda refused to make record of

existent lupus and refused to provide appropriate treatment for such medical condition [resulted in unreasonable delay in treatment]; Jasenof/Torres/Ianucci/Pilate refused to make record of existent medical condition of thrombophilia when such medical evidence was available in labs ultrasounds, when medical evidence was provided by medical matter and refused to provide appropriate treatment for such medical condition [resulted in unreasonable delay in treatment]; Karande refused to provide appropriate treatment to Asherman's syndrome as he let scar in uterus after surgery and he intentionally caused "unreasonable delay in treating a diagnosed medical condition" while refused further services; Defendants actions were intentional, malicious without probable causes, intentional, and willful misconduct in medical services.

21. This action was brought by plaintiff not at Waivio's free will and desire but because Waivio was threaten, intimidated, coerced physically and emotionally, extremely abused, bodily injured by defendants when they induced death of Waivio child and they willfully induced injury to Waivio body. Waivio brought this action because defendants' actions implied they will continue to physically harm Waivio unless stopped by court order. Present statements are not voluntarily but they were brought based on defendants continue threatens to Waivio, because Waivio was coerced by force when defendants induced willfully injury to Waivio

22. This is an action induced willfully by defendants; defendants' practices are purposing to abuse the process, burden court, mainly designated for court to admit to illegal medical invalid treatments .

23. Pursuant Illinois Constitution and Illinois laws and US Continuation federal laws: as matter of law physician who has a doctor patient relationship with a pregnant woman who intends to carry her fetus to term has doctor-patient relationship with the fetus. As matter of law Plaintiff as pregnant woman was entitled to be informed that medical test results reveal that she has a disease that could affect her baby or her. The life of each human begins at conception. Unborn children have protected rights and interests in life, health well-being. Law requires attending physician inform his patient of the status of pregnancy, the development of her fetus the date of possible viability; defendants refused to Waivio and her child all these.

24. In performing professional medical services for a patient, physician [defendants] has a duty to use that degree of learning, experience and skills ordinarily possessed and used by members of that profession and of that school of medicine in the community in which the physician practices or in similar situated community and under like circumstances. In the application of skills and learning physician should also use ordinary care and diligence; Defendants intentionally violated all these violating of federal laws and constitutional rights.

25.    This is an action against defendants for Violation of Civil Rights Act of 1871, for violation of 42U.S.C.A.1985, 42USCA.1985(2), 42USCA.1985(3),defendants conspired to induce legal actions to cover up illegal invalid medical treatments or to injure plaintiff in "person or property" in retaliation for participating in federal proceeding or conspired went disguised to deprive Waivio of equal protection under law of constitutional or federal rights. Starting to May 2004 plaintiff had participated at federal legal action 04-C-3545 Judge Norgle Northern District Illinois, which continue till present. Defendants made Retaliatory harm to plaintiff, retaliatory discharge from medical services, constructive discharge, and their actions constitute sufficient injury to entitle plaintiff to relief see *Haddle v. Garrison* 525 US 121 142 L. Ed 2d 502 119 S CT 489(1998). Defendants deterred Waivio from testifying to Federal Court about their illegal invalid practices; Defendants conspired, go disguised against Waivio right to equal protection of law under which constitutional and federal rights are guaranteed.

26.    This is an action pursuant to 42USC300, 42USC300(e)(b)[7], defendants refused to provide adequate medical services and completely denied medical services to plaintiff as to specific necessities. Defendants' actions were intentionally against plaintiff's rights.

27.    This is an action pursuant to Title 42 Social Security Act, This is an action pursuant Title 42 Chapter 117 Encouraging good faith Professional Review; defendants are professionals or health medical services within the meaning provided under quoted federal laws. Defendants' actions were violations of Social Security Act or inadequate practices comparative to other peers. Peers of Rapisarda they do attempt natural cycle or natural pregnancy before any

---

[7]    42USC300e(b) health organization shall provide, without limitations as to time or cost other than those prescribed by or under this subchapter, basic and supplemental health services to its members

other attempt or try less drastic solution [Waivio can give testimony of other and there are testimony available public records to confirm this].

28. FCI acts to give medications Gonal-F as to testing of such medication while Waivio did not consent is violation of federal state laws. Overall defendants did test Gonal-F treatment on Waivio which motivates national original discrimination. Fatal illegal testing of medication is not done on American people but on minorities among which Romanians were more likely [see specific studies confirmed human experimentations are done on national minorities]. Rapisarda falsely related his personal interest in testing of drug Gonal-F with Waivio Romanian Origin. Because Waivio was "testing subject" retaliation and violation 42USC1985(2) and 42USC1985(3) are motivated as to deter Waivio testimony about "uninitiated person [East European] treatment with Gonal-F" which it is by itself "exceptional situation". Defendants get billions and billons of dollars based on information provided by Waivio Waivio has rights to ask $90000000 defendants used Waivio for illegal purposes. FCI's acts to give Waivio Gonal-F from other person or from its affairs it is in violation of Food Drug and Cosmetic Act.

29. All state claims based on federal questions are under Tort of Intent [actions were with malice and indifference to Waivio's rights], Tort of Medical Professional Malpractice, Tort of Professional Malpractice, Tort of Legal Malpractice [legal representatives actions were with malice, intentional wrong, defendants' actions followed legal strategy and legal reprehensive should have known that defendants will cause injury to Waivio by such legal strategy], Tort of Retaliation, Tort of Retaliation discharge [as for discharge from medical services], Tort of Deceit, Tort of Concealment, Tort of Misrepresentation, Tort of Criminal Gross Negligent, Tort of Failure to Warn, Tort of Battery, Tort of Product liability Services.

20. This action is filed pursuant to US Constitution, constitutional rights secured by US Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution to enforce the provisions of 42USC300(e)(b), Public Health Service Act of 1944 as amended 42USC300w-7, 42USC708 Maternal and Child Heath activities under federal funds pursuant to 42USC708, Age Discrimination Act of 1975, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. ("Title VI"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e—2000e-5, et seq. ("Title VII"), , 42 U.S.C § 12101—12514; Americans with

Disabilities Act of 1990, Title III Private Entities ("ADA"), (42 U.S.C § 12181—12189);

Section 504 of the Rehabilitation Act of 1973 ("Rehab"), 29 U.S.C. § 794-794a, reg 34CFR Part

104; Americans with Disabilities Act of 1990, Title V of Section 503, and 42U.S.C. § 12203;

Section 1981 of the Civil Rights Act of 1866 (42 U.S.C. § 1981), Civil Rights Act of 1991 et seq.

("Sec 1981"); 42 U.S.C. § 1983("Sec 1983"); 735ILCS Civil Procedure; Code of Fed Reg Dep.

of, Dep. of Justice, Department of Public Health, Department of Health and Human Services,

Civil rights of 1871 "protects people participating in federal procedure", 42USC1895. Title 42

Chapter 7 Social Security, Social Security Act, Title42 Chapter 117 Encouraging good faith

Professional Review Activities; Code of federal rules Title 42; 45CFR46 Protection of Human

Subjects; 45CFR46.117 Consent [Waivio did not provide any consent]; This action is under

Illinois Constitution and all state laws and all federal laws related to facts and federal matters

presented [emphasis on medical malpractice, tort of Deceit Tort of failure to warn, Tort of

Concealment]; Illinois Health and Safety Law; Illinois Research testing on Human Subjects;

Illinois Pharmacy Act; Federal Food and Drug Act; Illinois Food and Drug Safety law;

(410 ILCS 250/) Developmental Disability Prevention Act[8]. Illinois Hospital Licensing Act;

775ILCS Illinois Blacklist Trade Law[9]; Illinois Human Rights Laws; Illinois Human Rights Act;

Emergency Medical Treatment and Activity Act (EMTASLA) 42USC1395dd, Social Security

Section 1867. Federal Patient Self Determination Act1990

    31.   **Parties:** RODICA WAIVIO ("Waivio") resides in Illinois.  At the time the

subject events occurred, she was resident of Cook County and member in defendants' medical

groups, and each doctor had plaintiff as member of their medical services.

    32. Plaintiff claims injuries, Rapisarda induced life time disability, fatal immunity

disease, health injury addressed to reproductive system, death of baby, infection intentional

---

[8]    410 ILCS 250 Hospital shell provide …Perinatal care for the high risk expectant mother who may deliver a distressed or disabled infant. (h) high risk mothers and their spouses are provided information, referral and counseling services to ensure informed consent (410 ILCS 250/11) (from Ch. 111 1/2, par. 2111)
Sec. 11. criteria for the identification of mothers at risk of delivering a child whose life or development may be threatened by a handicapping condition. Such criteria shall include but need not be limited to: (1) history of premature births; (2) complications in pregnancy including toxemia;)

[9]    (775 ILCS 15/5) (from Ch. 29, par. 95) Sec. 5. No contract or other agreement entered into or sought to be enforced in this State shall be valid if it contains any provision which discriminates or appears to discriminate against any person on the basis of race, national ancestry on ethnic or of any connection between that person and any other entity. Such provisions are declared to be void as being against public policy.

inflicted, child loss and damages resulted from defendants' intentional practices willful misconduct or gross negligence or intentional acts.

33. **Jurisdiction:** Jurisdiction is invoked pursuant to 28 USC1343(a)(1), 28 USC1343(a)(2), 42USC1981 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1331, 28U.S.C.§1343, 28U.S.C.§1441,42U.S.C.§2000e-5(f),42U.S.C.§2000d,42U.S.C.§1983,42USC1985 42U.S.C.§1988 to recover damages or to secure equitable relief under civil rights federal laws (28U.S.C.§2202), under laws upon which plaintiff claims were brought. Pursuant to 28 USC 1367 this court has jurisdiction over all state claims based on federal questions alleged in this complaint. Jurisdiction is also pursuant Title42 Chapter 117 Section 11101.

**Defendants**

33. All defendants receive federal grants and they are the grantees of such federal grants; all defendants receive state founds therefore they are subject to Section 1983; Advocate medical Group, Advocate Health Care Network, Advocate Health Centers, INS, Advocate Health and Hospitals Corporation, Advocate Lutheran General Hospital ("Advocate")are non profit corporations in Illinois.  Defendants are individuals and non-profit corporations in network organization and relationships; Fertility Center of Illinois "FCI" and "Karande and Associates" "Karande"are centers of Lutheran Hospital and Advocate System created under Illinois state laws such as Illinois Hospital License and state laws Lutheran Hospital; Advocate and Lutheran created these centers of medical care and Doctors from FCI were employees of Lutheran, therefore FCI and Karande are centers created state laws of Lutheran Hospital (Lutheran).

34..Ian Jasenof (male Hispanic, non disabled), MD is an employee of Advocate Lutheran Hospital previous mentioned defendants and  Jennifer Torres, is officially nurse of Jasenof employed by Advocate Health Care. Advocate Lutheran General Hospital is part of Advocate Network, Advocate medical Group and is an employer of Jasenof. Pesch is male, American, non disable. Bruce PILATE (male American non disabled), Thomas Ianucci (male American Hispanic non disabled) is an individual and employee of Lutheran Hospital, Advocate.

35. Defendant Karande is employee of Lutheran HospAdvocate medical Group, previously he was teacher at UIC. Charles Miller,  is employee of Lutheran General Hospital and employee of University of Illinois at Chicago employee as teacher.  This shows  relation

between present matters and previous matters from case 04-C-3545 Waivio v. UIC.
Defendant Ian Jasenof is graduate from UIC and has strong relations with UIC which motivates
relation of retaliation against plaintiff for her protected actions and oppositions.

36. Jon Rapisarda is employee Lutheran, Advocate  FCI, very good friend with Jasenof,
May 2006 Rapisarda sent letter recommendation and verbally recommended Plaintiff to Jasenof.

37. Defendants are "medical group" pursuant 42USC 300e(4); defendants are "heath
maintenance organization" pursuant 42 USC 300e(a). Defendants' organizations are under state
and federal laws, Illinois Professional License and Illinois Hospital license law.

38.  Plaintiff was/is a "member" of the above defendants entities pursuant to 42 USC
300e(1)(3) member or under state laws. Plaintiff has contract relationship.

**A prime facie Case discrimination**

39. Defendants have extreme bias for fertility; Defendants have specific interests in
Gonal-F which is invalid medically proved to induce preemies and induce "lupus" fatal
immunity diseases.  This interest was supported by specific programs, practices, grants etc
mainly for "old women"; this interest was supported particularly by Lutheran  based on
excessive bias in number of fertility specialists employed [comparative to other peers
or]comparative to number of other specialties employed;

40.  Defendants have specific interests  for old women mainly based on extreme bias in
fertility, extreme interest for fertility of Lutheran; defendants have bias with respect to number of
old women as patients comparative to number of older women in community Defendants granted
preferential treatment, high interest based on age to older women, comparative to younger
woman,willfully intentionally discriminated based on age. Defendants falsely and
inappropriately related plaintiff with their "fertility interest".

41.  Plaintiff believes that with resonable treatment for lupus Waivio pregnency could
have resulted in 2006/2007  in viable child

41. Plaintiff was born in  Romania on 08/04/69; plaintiff was aged over 35 when plaintiff
received medical services; federal and state laws requires medical providers evaluation of risks
however defendants refused to provide such information to Waivio at any time; Plaintiff is
female; plaintiff has bipolar depressions disability[see 04-C-3545] Pursuant ADA and

12

Rehabilitation Act and defendants had knowledge of this; bipolar depression did not interfere with Waivio medical services, and did not interfere to any required treatment; defendants were aware of plaintiff's national origin, disabilities, age etc; Plaintiff made all arguments available to defendants; complete and in deep information was provided particularly on 07/20/06 at first trimester scan Lutheran Hospital; patients Romanians are rare in defendants' medical services; Lutheran Hospital Jasenof patients were mainly Hispanic, Mexicans.

43. Waivio was qualified to receive medical services from defendants. Plaintiff had medical insurance with 100% coverage in Aetna after July2006 and previously Lumenos 100% coverage. Plaintiff is unaware of any impairment or any matter which could motivate refusal of medical services other than matters presented. For lupus disability Waivio was otherwise qualified for medical services provided by defendants, with or without reasonable accommodations she was qualified to receive medical treatment.

44. Defendants were fully aware of Waivio national origin, disability, protected actions and federal participation; all defendants have full knowledge and experience about "lupus", disability discussed here.

**Prima facie allegation Gonal-F treatment**

45. On 3/27/06 Rapisarda ordered blood work named "Cystic Fibrosis" which is dependent of cromosoms and ethnicity [national origin]. Rapisarda plan on 3/27/06 shows interest in ethnicity, national origin, by ordering blood work related specifically to ethnicity and national origin. In April May 2006 Plaintiff was experiencing many adverse actions in medical services from Rapisarda and FCI [vicarious liability Advocate] based on her age, national origin, gender, bipolar disability; pattern and practice was based on misevaluation, misdiagnosis and mistreatment, denial of viable means of conception. Waivio was willfully misclassified as "older woman" when  actually Waivio was able to get pregnant with simple IUI and HCG by natural means, Waivio was not "older woman" in April 2006 or year 2006  at time of events.

46. Rapisarda FCI, Advocate Lutheran had willful intentional discriminatory practice based on age in providing treatments. Plaintiff believes woman less than 35 years were provided with natural means of conception and with less aggressive treatments while women over 35 years were willfully intentionally and maliciously provided with aggravate treatment such as Gonal-F.

13

Plaintiff believes national origin factor may have contributed at this policy changes as more likely that minorities were treated in this Way while overrepresented classes or American people had this policy as to 39 or 40 year. Plaintiff believes age limit of 35 was for minorities, specific underrepresented national origin groups while age limit of 39-40 was for American and overrepresented classes. Both factor of age and factor of national origin were intentionally falsely related to personal interests of defendants in invalid Gonal-F practice.

47. On April 17, 2006 Waivio and her husband requested clomid cycle and requested natural cycle see exhibits. Waivio did not request Gonal-F to Rapisarda and Waivio had no prior knowledge of such medication. Rapisarda and FCI refused viable means to Waivio.

48. On April 17, 2006 Rapisdarda did not discuss medical treatment, risk of medication with Waivio he did not acknowledge any risk with Goanl-F and prior FCI did not provide any information or advise or provide any documentation about treatment. After April 17, 2006 meeting with RApisarda Jennine nurse of Rapisarda gave Waivio a booklet which was not discussed with Waivio and there was no available time to read such booklet because treatment started in less than 7 days; FCI people let plaintiff to understand that they will decide about treatment at beginning of cycle[04/21/06], Waivio was given Gonal-F starting 04/25/06 while Waivio was informed about final RApisarda decision to use Gonal-F on 04/21-22/06 [two days or one day before starting treatment with Gonal-F]. Because there was so short time Waivio had no time to see a second opinion and discuss this matter to others or FCI at that time or make a documented opinion. Nathan and Rodica were without prior knowledge of matters.

49. In March-May 2006 Rapisarda and FCI were participating at medical experimentation on human beings of medications which was not acknowledged to Waivio. Plaintiff saw some papers in their office which pointed at FCI interest in human experimentation; however Waivio was not directly presented nor discussed such matters. This experimentation was interest of Advocate and Lutheran supporting Rapisarda and FCI doctors employment at Lutheran. FCI personnel never acknowledged to Rodica & Nathan any such experimentation or any such purposes, and there was no any consent for such experimentation.

50. The other patients applicants, (not from the plaintiff protected classes) were treated better; they received adequate medical care to their specific necessities; they were treated gently FCI offered them viable means and low risks treatments.

51. For specific national racial minorities women who were younger than 35 years received natural treatment and less drastic treatments, while women who were similar situated to Waivio received extreme aggravate treatment similar situated to Waivio [this is affirmed by FCI booklet which acknowledges thrombophilia as part of FCI practice and by Advocate, Lutheran who proved extreme knowledge in this matter therefore there were other women similar situation to Waivio; plaintiff believes there were national racial groups ]..

52. AT the time of Waivio treatment there was an American woman [not involved in protected actions] older than Waivio who received medical treatment from FCI with clomide; treatment was successful resulted in pregnancy; Rapisarda and FCI offered others less drastic means while they refused to Waivio less drastic means.

50. Other similar situated peers of Rapisarda recommended three months of natural cycle for women older than Waivio at that time. Plaintiff believes other Women older than Waivio received natural cycle while Waivio was refused natural cycle.

53. Starting April 2006 the plaintiff had experienced many adverse actions in medical services based on her national origin, induced lupus by Rapisarda, protected actions or federal participation; the continued pattern and practice of unlawful discrimination was based on misevaluations, denial of viable means, refusal to provide medical services;

54. Rapisarda treatment with Gonal-F resulted in "lupus" condition known as **Systemic lupus erythematosus,** which is life time fatal disease of immunity system; Pursuant to ADA Rehabilitation Act this is life time disability, impairs ability to defend; this disability is related to cancer pursuant Rule 8(e)(2) because impared imunity system increases significantly risk cancer.

**Prima facie allegation pregnancy, after pregnancy treatment [all defendants]**

55. Rapisarda dismissed Waivio from medical services of FCI after "Gonal-F treatment" which induced lupus, Rapisarda refused to provide any medical services and any required acknowledgement, information or investigation.

56. Plaintiff unsuccessfully sought medical services with defendants for which there was vacancy and availability and for which defendants continued thereafter to seek patients or new patients similar situated to Waivio.

57. During the time period of the plaintiff's refusal of medical services defendants accepted new patients or provide services to past patients or continued to seek new patients.

58. Rapisarda replaced Waivio with another person different nationality different age and without induced lupus; Rapisarda could manage plaintiff's medical condition with induced lupus as he has history of long time practice on this matter, but he refused; he discriminated Waivio based on her national origin, or age or based on lupus or in retaliation for federal participation. In nov 2006 Waivio requested Rapisarda natural treatment and clomid treatment, but Rapisarda refused natural treatment with HCG and IUI and he refused clomid too, proving defendants refused natural means to Waivio, continuing unlawful illegal practices.

59. Iannucci, Pilate and Jasenof could manage plaintiff's medical condition with induced lupus as they has history of long time practice on this matter, but they refused; they discriminated Waivio based on her national origin, or age or based on lupus or in retaliation.

**Employment Benefits**

60. Medical services were "employment benefits" of Nathan Waivio, husband under federal protection of Age discrimination Employment Act[10] , Age discrimination Act of 1975, Title VII, ADA, Rehabilitation Act, Immigration Reform Act. All these services were paid by employment benefits of insurance Lumenos or after July 2006 by AETNA, which were agents of employer. Defendants violations are violations of TitleVII, ADA Immigration Reform act, etc as providers of employment benefits. This is a relationship with case 04-C-3545 and case 06-7189 because previously there were pending claims of discrimination in employment and this action appears a continuation of discriminatory practice of UIC/ETS.

61. Defendants were aware of legal actions in district court/Appellate Court, as plaintiff informed defendants. Ultrasound Picture made by Ian Jasenof of plaintiff's pregnancy were submitted to court in case 04-C-3545 and in state courts. Plaintiff showed legal papers of case 04-C-3545 to Rapisarda John in May 2006, and some of legal papers were left in Fertility Center

of Illinois in May 2006. Legal papers of case 04-C-3545 were also showed to Ian Jasenof and his nurse in summer 2006 and legal papers were left about his office. Plaintiff sharedlegal information with Pesch, while he claimed to have directorial position in Lutheran, or decisional/influential position. Miller is employee of Advocate and UIC sharing information.

62. Before receiving services from defendants plaintiff had no history of infertility [plaintiff got pregnant naturally in Summer 2005], and there was no any medical problem with plaintiff's reproductive system nor with Waivio health [Waivio has bipolar depression see 04-C-3545]. Records from everywhere do not have any record of similar situated conditions, no previous fertility treatment, no Asherman Syndrom, no Lupus no thrombophilia. Plaintiff was previously pregnancy in 2005 and ultrasound findings from NCH does not show any blood clot nor medical investigation made after that[fact about this appears in case 04-C-3545]. Waivio acknowledged that Waivio had no previous fertility experience, no previous record was provided, while Waivio acknowledged of been sent by "First Women Health" which is mainly gynecology, OB.

63. Plaintiff affirms that in September 2005 Karande performed D&C surgery with Waivio at DuPage Hospital, therefore plaintiff believes defendants were fully informed about all health history of Waivio see record at DuPAge Hospital and Northwester Community Hospital (NCH) where Karande has its practice.

64. After plaintiff received medical services from Rapisarda with "Gonal-F" Waivio was identified with "lupus", Drug-induced lupus which is similar situated to systemic lupus erythematosus which is Life time disability pursuant ADA and Rehabilitation Act, 42USC12101-12514, impairs immunity of system.

65. After plaintiff received medical services from defendants plaintiff was diagnosed with Ashermans' Syndrome result of hysteroscopy performed by Daniel Pesch on 01/05/07 at Lutheran Hospital and with lupus[11] fatal disease, incurable, see lupus anticoagulant positive on 09/28/2006 [Rapisarda detected], while plaintiff never before had something like this; on

---

[10]      t Waivio was not aged 40 , Waivio is qualified under act because defendants misclassified Waivio as "old woman" therefore similar situated to "40 years woman";

[11]      http://en.wikipedia.org/wiki/Drug-induced_lupus_erythematosus **Drug-induced lupus erythematosus** (DIL or DILE) is an autoimmune disorder, similar to systemic lupus erythematosus (SLE), which is induced by chronic use of certain drugs.

09/28/06 MTHFR, ANA Screen was detected positive as induced by treatments of Rapisarda. Furthermore Plaintiff's right Fallopian tube was blocked intentionally by Charless March in July 2007 college of Karande and college Miller believed in support of same practice of defendants.

66. Waivio declares under oath that Rodica and Nathan Waivio never had knowledge of blood clots [anything related to] till September 17, 2006 when they were identified at NCH. Waivio declares under oath that Rodica and Nathan Waivio never had knowledge of "risk medical condition of any type" till September 17,2006. Waivio declares under oath that Rodica and Nathan Waivio never had knowledge of "risk drugs" with Gonal-F until fall2006 aftert discussing and investigating matters.

67. Defendants, Advocate and Lutheran and Rapisarda Karande and FCI had knowledge "Gonal-F" induces lupus and that it is life time disability and "fatal disease" of immunity system related to cancer. They acknowledged this in discussions with Waivio in fall 2006 but also their practice proved very well aware of this matter.

68. Defendants had knowledge completely of plaintiff's medical conditions, Waivio made available to defendants necessary information and blood work or ultrasound; starting week 10-21 of pregnancy Lutheran Hospital and Jasenof were fully aware of existent medical condition but he dishonestly misinformed plaintiff that "plaintiff's medical condition was normal" this is what he said to plaintiff; In conversations with Daniel Pesch after Sept 17,2006 he acknowledged they were fully aware of medical condition as early as week 10-11 of pregnancy and that they were aware that plaintiff has in critical medical condition in Sept 16,2006. Daniel Pesch acknowledged that they were fully aware of matters. Plaintiff asked Daniel Pesch what was the diagnostic of plaintiff's pregnancy and he said it was "Thrombophilia". Later discussions with hematology specialist confirmed "phospholipids syndrome" Furthermore medical hematology acknowledged that defendants usually solves this matters with baby aspirin and that it is typical procedure very well aware by doctors and hospitals, shortly there was nothing new for defendants.

69. In Oct 2006 plaintiff discussed with Thomas Iannucci, high risk doctor; he acknowledged that he was aware of all plaintiff's medical matters at time of Waivio pregmency and he acknowledged that Jasenof refused intentionally to make medical analyses of blood and

ultrasounds [which were requested by Waivio; Waivio made available to defendants all arguments information while they had previous patients with similar situated medical condition]; Iannucci confirmed that some blood work was done after death of plaintiff's baby when diverse medication was given to induce labor in Sept 17-18,2006, and this medication was used as cover up of real medical condition about which defendants were fully aware. Shortly there was intentional procedure to hide evidence of real medical matter, there was conspiracy, disguised.

70. Medical record at Lutheran or Advocate does not present this medical condition or any medical condition; record is empty with respect to pregnancy about 5 pages with nothing written essentially; Waivio was over 35 and state and federal law requires estimation of risk of pregnant women older than 35, however there is nothing in record while Waivio never was told anything in pregnancy time However in Sept 17,2006 plaintiff went to Northwestern Community Hospital where medical records are describing blood clots of 400cc, they detected infection on Sept 17, 2006 and critical medical condition see record.

71. Usually the clients receiving medical services by Jasenof were Hispanic, or national origin Mexicans. Jasenof and Jennifer Torres are Hispanic related as they speak Spanish. Daniel Pesch, Iannucci Bruce Pielate, Rapisarda are American origin

**Prima facie case for Tort**

72. Waivio alleges intentional malicious criminal negligence, gross negligence for "Gonal-Ftreatment", medical malpractice:

    a. RApisarda owed a duty to conform to specific standard of conduct [corresponding to Reproductive Endocrinology specialty, peer review] for the protection of the plaintiff and her child against an unreasonable risk of injury.
    b. Rapisarda breached that duty [as alleged]
    c. The breach was both a cause in fact and proximate cause of plaintiff's injury
    d. Damages to the Waivio family, Nathan and Rodica Waivio and death of child resulted.
    73. Defendants had a duty of care for Waivio arise because in all matters it was foreseeable defendants' conduct will cause unreasonable risk of harm to Waivio and her family.
    74. For all defendants Waivio alleges under state tort theory: (1) professional/business relationship (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose,(5) a causal effect between the interference and damage to the economic relationship, and (6) damages. Rotec Indus., Inc. v.

Mitsubishi Corp., 348 F3d 1116, 1122 (9Cir 2003), cert denied, 541 US1063 (2004) McGanty v. Staudenraus, 321 Or 532, 535, 901 P2d 841, 844 (1995).

75. Waivio alleges under state tort theory Active Concealment Of Known Facts Defendants are guilty (1) defendants Known, intently made false statements and intentionally conceals material facts, or (2) Actively prevents investigation and discovery material facts, or (3) While under no duty to speak, nevertheless does so, but does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated.

76. Defendants are liable under Tort.Concealment, Tort Deceit/misrepresentation. Defendants false statements, misrepresentation were made with intent to misconduct burden and introduce errors depravation plaintiff of her rights.

### Nature and Statement of Facts

77. [Karande] On Sep 21-22, 2005 Waivio had "D&C" performed by DR Morison and Karande Vishvanath at DuPage Hospital. This is first interaction between defendants and Waivio. Waivio believes this was not an accident but Karande followed UIC discriminatory practices or had specific interests with UIC. Starting Sept 21,22,2005 Karande dsicrimianted Waivio based on her protected characteristic or federal court participation; Karande "pursue UIC unlawful discrimination" based on false personal interests, false relation with UIC. UIC has liability in 04-C-3545 and 06-7189 for such conduct. Present facts are copy UIC practices.

78. [Karande] On March 20, 2006 Waivio had appointment with Michael Eisenberg from "Women Heath First" [gyn-ob about 1 mile away from FCI Buffalo Grove]. On March 20, 2006 Eisenberg recommended Waivio to visit FCI for fertility treatments; Eisemberg ordered on March 20, 2006 "DNA lab", "Genetic lab" which was performed [class of blood work, such as cystic fibrosis, chromosome Analysis, DNA Mutation]; plaintiff believes this was recommendation by Karande; this "Genetic lab" is related to ethnicity and national origin; based on national origin or other false interests Michael Eisemberg [friend with Karande, Rapuisarda,FCI and Lutheran] sent plaintiff to FCI; it appears Karande recommended this.

79. On March 27, 2006 Waivio had an appointment with John Rapisarda FCI. Plaintiff was recommended FCI by "Women Heath First". Waivio informed Rapisarda about its

national origin and Waivio never before had any fertility matter because Waivio previous pregnancy in Summer 2005 was natural[plaintiff provide previous medical record see FCI records]; Rapisarda requested Cystic Fibrosis [DNA test, test related to ethnicity, national origin], Day2-4 of period to have FSH, Extradiol, Prolactin TSH, Hepatitis BS and a saline Ultrasound. Rapisarda did not perform analysis Waivio fertility natural cycle analysis; shortly he did not know key elements, he did not investigate, did not diagnose Waivio because there was no any ultrasound "middle cycle" performed before "Gonal-F treatment"; there was no monitoring of LH or progesterone key indicators of fertility.

80.    In April 2006 Waivio were able to get pregnant with simple HCG and IUI without medication [as FCI personal agreed in signed papers]. Rapisarda treatment abused aggressed Waivio reproductive system, it was flagrant bad faith and flagrant medical violation, with extreme consequences for Waivio life, therefore violation of right to life, prosperity, happiness.

81. All results made were normal and plaintiff's uterus at that time was normal .

82. On April 17, 2006, Waivio met Rapisarda; Rapisarda allocated only 15 minutes to met Waivio afterwards he had other patients;  Rapisarda established "plan" for plaintiff see attached exhibit from 4/17/06; at time of Waivio meeting with Rapisarda Waivio had not any knowledge of "fertility treatment" of any type; Waivio did not really know what was an artificial insemination as Waivio had no previous such procedure; Waivio had not basic knowledge about clomid, and Waivio never heard about injectable ;  Rapisarda did not discuss medical treatment with Waivio, medication side effects or any risks while Waivio had no knowledge about; Rapisarda did not discuss medication with Waivio; On the "plan" on April 17, 2006, Rapisarda wrote "injection teaching" which means Waivio never before used something similar nor had any knowledge about. On April 17, 2006 Waivio was without any knowledge as to any medication nor as to any treatment; Recommended method of treatment for plaintiff was extreme aggressive [comparative to others], and there was less drastic way for plaintiff; Gonal-F[12] is the strongest jnjectable existent on market [before Waivio never ever heard about Gonal-F]; Waivio

---

[12] Plaintiff believes that this was actually recommendation of Karande who pursue UIC practices; plaintiff believes also that FCI booklet given to Waivio after 04/17/06 was Karande idea, false "defendants' defense" requested to FCI to acknowledge matters what they intended to do as false "defense in court"; defendants proves they had full knowledge of matters

21

could have not request this to Rapisarda because Waivio never before heard about Gonal-F; Plaintiff believes that at that time plaintiff could have got pregnant with HCG and simple insemination; furthermore there was Clomid Pills which never before were tried [or Menopure, Repronex light injectable]. Rapisarda never explained plaintiff the medication nor the difference between Clomid and Gonal-F at time of his decision for treatment to Waivio. HCG and Simple intrauterine insemination without any medication could have been a solution to getting pregnant or Clomid would have been a less drastic and available method for plaintiff, however Rapisarda treated plaintiff with the most aggressive injectable while refused HCG and simple Insemination, or less drastic clomid. Rapisarda did treat other patients, similar situated to plaintiff, with clomid and those were not Romanians or not involved in similar protected activities as plaintiff.

83. Rodica Waivio and Nathan Waivio did request in writing to FCI on 04/17/06 at this time "Natural Cycle egg development and monitoring" on 04/17/06 and "Stimulated Cycle oocyte (egg) development and monitoring Ovulation induction with clomiphene" as witnessed by Jennine the nurse of Rapisarda. Shortly Rodica&Nathan did made adequate requests and FCI people had knowledge and had heard and see in writingRodica&NAthan's requests, which they have papers signed and agreed by FCI people. Furthermore in October Nov 2006 Waivio requested Rapisarda natural cycle but Rapisarda refused natural cycle with HCG and IUI. IN December 2006 Waivio requested clomid but Rapisarda and FCI refused such treatment.

84. However medication Gonal-F in April 24,2006 for plaintiff was not directly ordered from pharmacy [they falsely complained there was not sufficient time to order usual pharmacies can provide very fast such drug] but the nurse of Rapisarda, Jeannine gave plaintiff medication, 3 boxes of Gonal-F 450, on free. Shortly plaintiff's received medication from the doctor itself, from FCI, and not direct from pharmacy. No pharmacy provided any Gonal-F medication to plaintiff in April–May 2006. Plaintiff believes this practice was not with other people non Romanians or not involved in protected actions.

85. Starting 04/25/06 Plaintiff received fertility treatment from FCI [04/25/06 was starting of period], injectable GONAL –F, on 04/28/06-05/03/06 with 112.5 for 6 days, followed by IUI on 5/6/2006. Plaintiff got pregnant and by 05/20/06 plaintiff's pregnancy was confirmed.

81. On 06/05/2006 Waivio had first ultrasound which confirmed there was hart beat.

At beginning of June, 2006 plaintiff had appointment with Rapisarda and plaintiff acknowledges problems with pregnancy as there was pain, cramps; plaintiff requested to him to provide further medical services till at week 12 as other persons [not Romanians,younger] were permitted. Repisarda refused further medical services and by 06/05/06 informed plaintiff that no further medical services will be provided by FCI after week 7 of pregnancy, after 06/12/06. Rapisarda recommended plaintiff to go to Jasenof and he sent a letter of recommendation to Ian Jasenof while demanded that no further services will be provided by FCI, despite of plaintiff's requests of medical care and plaintiff opposition.Rapisarda segregagted Waivio at Jasenof office in violation of 42USC2000e. Rapisarda refused to treat plaintiff while he intentionally sent plaintiff to Jasenof as to escape liability. Other patients, similar situated but not Romanians, younger or participating in protected actions were recommended to better places and to better medical care [or they were allowed till week 12 to be under care of FCI].

86. From the time of confirmation till at plaintiff's discharge from FCI there was no any blood work [only HCG and progesterone; there is possibility some blood work was covered up as Rapisarda might have used "progesterone blood" for other analysis; Rapisarda had means available to know that Lupus, trombophilia existed] while FCI and Rapisarda were fully aware that complications existed and plaintiff complained of pain and plaintiff requested to Rapisarda medical services as to specific pain/situation; plaintiff requested Rapisarda to provide medical services till at 12 weeks. However Dr Rapisarda refused further services after 06/12/06.

87. Plaintiff believes other patients, not Romanians or not involved in protected actions did received treatments as to specific similar conductions to plaintiff and they waited till 12weeks at FCI before transferring somewhere else.

88. After meeting with Rapisarda 04/17/06, Plaintiff was hand in booklet from FCI "FCIBooklet"[13] which acknowledges "If testing of the woman's natural cycle results in

---

[13]      FCI Booklet acknowledges "Fertility Center of Illinois IntegraMed America Inc All Rights Reserved/Rev.10/01"; Plaintiff acknowledges that FCIbooklet was given after meeting with Rapisarda from 04/17/08 therefore Waivio could not have knowledge of matters as Rapisarda established treatment without Waivio having knowledge about FCIbooklet; furthermore Waivio acknowledges at it was short time between Rapisarda "plan from 04/17/06 and the "Gonal-F treatment" which started on 04/25/06, there were 7 days insufficient time for Waivio to verify viability of such treatment; FCI personal or Rapisarda never discussed with Rodica or Nathan about the treatment or options of treatment only interaction was meeting March 27, and April 17, afterwards they just gave directions without explanations;

identification of hormonal or endometrial deficiency "Stimulated Cycled" may be recommended"; FCI practice was to test first the "woman's natural cycle"[essentially was Day 2-3 FHS, monitoring LH and Progesterone ultrasound middle cycle] however Rapisarda did not made an ultrasound of middle of cycle, and no monitoring of LH and Progesterone previous to "Gonal-F treatment"; he did not made "testing of Waivio's natural cycle" implying he is in violation of policy of FCI, he violated  standards of practice from FCI by FCI own acknowledgement. Rapisarda violated standards of practice from peer review "IntegraMed America"; FCI and Rapisarda are in violation of Title 42 Public Health, Chapter VII Social Security Act, Title 42 Chapter 117 Encouraging good faith Professional etc.  Rapisarda prescribed treatment was Violation of Drug standards of utilization, using the most aggressive and high risk drug existent on market when less aggressive and less risk drugs were available.

89. Same FCI booklet acknowledges "Human menopausal gonadotropins are used in women who have failed to achieve successful pregnancy with clomiphene[clomid] or in whom release of more than one egg each month is desired. Waivio did not request "release of more than one egg each month as desired"; never ever Waivio tried a cycle with clomid. Shortly Rapisarda decisions were independent of Waivio in flagrant violation of standards of practice.

90. FCI and Rapisarda did not acknowledge that specific Gonal-F has "risk" or Lupus or "immunity diseases" as nothing in FCIBooklet acknowledges this; lupus is fatal life time disease irreversible. Gonal-F manufacturer on box did not report this matter; FCIBookletpag8"serious complications of these medications[and does not specifically point to which medication was referring], with exception of multiple birth, are rare. The manufacturers advise that serious pulmonary conditions and thromboemblic[14] (blood clot) events" see exhibit. However the medication Gonal-F manufacturer on box and its content did not acknowledges such matter [see exhibit Gonal-F leaflet in April 2006 or before].  Rapisarda declared that such matters are Ovarian Hyper Stimulation (his writing is on pag 8 as confirmation) only for short time; Comparing recommendations of manufacturer and FCI statements, it can be seen FCI people identified and established "thromboemblic events" as side effects most common in their practice. Rapisarda was fully aware of existent side effects however he had less drastic solution that was

to try first HCG and IUI or try clomid; furthermore he refused any medical treatment of such condition, any medical analysis in May-June 2006 when plaintiff got pregnant and when plaintiff complained of pain and requested medical assistance. Plaintiff believes other people [no Romanians or no participating in protected activities] received full care while plaintiff was refused medical care.

91. The main problem with FCIbooklet was that it was given after Rapisarda established the treatment and there was too short time while Waivio had no experience; furthermore drugs were not discussed in each specifically as with respect to side effects or as with respect to human response to these drugs. FCIBooklet does not show difference between Clomid (or Menopor) and Gonal-F while Menopor has no reported side effect of thrombophilia. Furthermore there is no comparison between drugs, while Waivio had no previous experience with fertility treatment because Waivio never discussed previously with any specialist and had no treatment. Waivio experience in fertility at that time was at "Ovulation Kit" level and temperature chart.

92. There is no reported thrombophilia for clomid [discussed with pharmacist and investigation of public domain];.

93. Between May 2006-Sept 17, 2006 Plaintiff was pregnant. Plaintiff's baby died on Sept 17, 2006 as result of thrombophila untreated by defendants, which induced placenta rupture [ antiphospholipid syndrome treatable with baby aspirin [81mg], lovenox 41 mg, heparin].

94. In May2006 Plaintiff was recommended by Rapisarda, MD (american)(AMG) [employee of AMG and Luteran ], to  Jasenof, MD, for further medical care as related to pregnancy. Dr Jasenof received letter and complete information as related to previous treatment made by DR Rapisarda. From further discussions Jasenof confessed that he had many patients coming from DR Rapisarda with similar treatment, and he acknowledged to be aware of fertility treatments acknowledged by Rapisarda see record his writing states gonatropin and IUI. defendants in present case proved to be very well aware of side effects of medication and fertility treatments; Jasenof had knowledge of matters under discussion and he had treated successfully before patients with same conditions, who were not Romanians or unrelated to opposition of unlawful discrimination. Romanians were minority or very rear in defendants' institutions.

---

[14]     Rapisarda treatment appears "human experimentation" without Waivio consent of any type, in violation of

95. On June 23, 2006 in the ninth week of pregnancy, Plaintiff meat Dr Jasenof (American Hispanic, speaking Spanish, white) in his office from 1255 N. Milwaukee GlenView IL 60025. Dr Jasenof filled in registration with his office see record; plaintiff acknowledged her Romanian origin which appeared mentioned in record, and her bipolar disability; Jasenof made an examination of pregnancy and an ultrasound[15] picture [this picture was immediately presented to federal court in case 04-C-3545 where it was used as evidence of pregnancy]. At that time plaintiff meetTorres (Hispanic) the only nurse of Jasenof in obstetrics. Jasenof made blood analysis and requested urine sample as well as weighted plaintiff [she did not monitor the blood pressure or any fundal height]. Plaintiff requested him to make all analysis and scheduled first trimester analysis.

96. On July 11 Plaintiff called Jasenof's office and reported vaginal blooding. Plaintiff was scheduled immediately in that day at 1:00 pm to see Dr Jasenof.

97. At about 1:00pm Plaintiff met DR Jasenof, and plaintiff described vaginal bleeding. Dr Jasenof inquired about color of bleedings if it was brown or red. Plaintiff responded that it was both red and brown. Following Dr Jasenof performed an ultrasound exam of the pregnancy, including fetus, uterus, and he verified the cervix. Dr Jasenof requested to plaintiff complete bed rest; He requested plaintiff to come again in one week.; plaintiff inquired about medical situation while Jasenof refused to respond to plaintiff's requests of information and treatment; JAsenof appeared quite upset in that day; Plaintiff requested treatment while Jasenof refused any treatment; plaintiff did inquire about prometrium, and Jasenof told plaintiff to stop prometrium.

98. Plaintiff believes ultrasound performed in July 11,2006 day provide evidence of presence of blood clots in uterus and provide sufficient information to Jasenof to diagnostic plaintiff's condition and necessity of treatment;

---

45CFR46.117, and Title45 Public Welfare

[15]     Dr Jasenof had ultrasound machines in each room of treatment; ultrasound was performed by himself without help of qualified professions technician or any other doctor; On July 11,2006 plaintiff requested Jennifer to perform an ultrasound but Jennifer acknowledged that she had no knowledge how to use ultrasound or how to use Doppler Monitor; shortly she was quite limited in her practice; her recommendations appeared based on her own experience of pregnancy of her two children rather than on medical scientific matters.

    Shortly at the pace where Jasenof was seen about 20 patients on day, there was no any ultrasound technician who could perform an ultrasound and the only person managing ultrasound appeared to be Ian Jasenof. In October 2006 Jasenof complained and refused to see plaintiff based on reason that he had 20 patients on day, in a place where there was no ultrasound technician; there was no another OB Doctor at AMG from Gland View.

99. plaintiff believes that facts from Sept 16,2006 were consequence of complete refusal of Jasenof to treat plaintiff's medical condition which was identified by Jasenof starting 07/11/06

100. At this time Jeniffer, his nurse, did not make any medical measure of plaintiff's pressure, weight or any other matter. She limited at welcome Dr Jasenof.

101. On July 18, 2006 plaintiff has another appointment with Dr Jasenof. At this time Jeniffer requested urine sample and weighted plaintiff [she did not monitor the blood pressure or any fundal height]. Dr Jasenof inquired again about the bleeding color, and plaintiff responded that they are brown and red. Plaintiff asked the doctor about Prometrium; plaintiff requested to DR Jasenof to continue Prometrium. He told plaintiff to stop prometrium, and his voice was very upset, refusing to inform or provide any explanation. He performed an ultrasound exam. The baby was normal. Dr Jasenof recommended the First Trimester scan analysis at Lutheran General Hospital, with Genetics at Parkside Center 1875 W Dempster St Ste 310, Park Ridge IL 60068. Ultrasound was performed solely by Jasenof and there was no qualified personal as radiologist or stay trained for ultrasound. Plaintiff requested to Jasenof to make blood analysis but Jasenof refused under pretexts that he was interested in first trimester scan.

102. Plaintiff believes that other persons with similar conditions as plaintiff [no Romanians or no participating in protected actions] did received medical care and they were prescribed medicines as baby aspirin or levanox for treatment of condition while plaintiff was refused treatments and medication. Plaintiff believes other pregnant women had blood work made similar conditions however Jasenof refused to perform any blood analyses after July 11,2006 [ultrasound performed and his own experience of previous matters identified matter].

103. On July 20, 2006 plaintiff preformed the First Trimester Scan with Dr Bruce Pielate, high risk doctor. The ultrasound was performed by Debbie Fuldman. In the time of ultrasound the fetus showed very agitated, and very much mobility. Plaintiff had a very good look at the ultrasound monitor which was exactly in front of the plaintiff. Plaintiff inquired about the medical findings and requested explanations. At the end of the ultrasound exam Dr Bruce Pilate came and informed plaintiff that everything was good and was nothing abnormal. Plaintiff was informed about baby length of 7.03 cm. Plaintiff believes testing performed in July 20,2006 provide evidence of presence of blood clots in uterus and provide sufficient information to

defendants as to diagnostic plaintiff's condition and necessity of treatment; plaintiff believes DR Pilate identified the plaintiff's medical condition of thrombophilia   [as Daniel Pesch acknowledged in September 2006], and the test made all information available to defendants; however defendants refused to inform plaintiff they refused to make record of adequate diagnostic and misinformed plaintiff that everything was normal, when the reality was that plaintiff's medical condition was treatable. Plaintiff believes other similar situated persons, not Romanians or not involved in protected actions, had received complete information about real medical condition while plaintiff was misinformed and lied to.

104. Plaintiff trusted DR Pilet's words that everything was normal. Later facts proved that he lied to plaintiff, misinforming plaintiff about child, about medical condition which was not acknowledged on July 20,2006 while ultrasound provide all information to them.

105. Plaintiff does acknowledges that the procedure required plaintiff to acknowledge all her history and protected characteristics such as her Romanian origin and her disability as they ask all information.

106. On Aug 17, 2006 Plaintiff had an appointment at about 11:30 am with Dr Jasenof. However in morning Aug 17, 2006, Plaintiff received phone call from Jennifer requesting plaintiff to come at 10:00 am, as there was early availability and Dr Jasenof was on harry as he had other matter to do;  plaintiff responded that plaintiff could came earlier as plaintiff and the plaintiff's husband are interested to see an ultrasound of the plaintiff's baby.

107. Early in the morning plaintiff and plaintiff's husband met Dr Jasenof. This time Dr Jasenof refused to perform an ultrasound [while plaintiff requested an ultrasound] and he limited himself only listening at the fatal hart beat with a small pocket Doppler. Plaintiff requested him to schedule ultrasound for 20 weeks, but he refused; plaintiff requested blood work and all necessary testing and amniocentesis,  but he also refused under false reasoning such as previous results from Genetics were excellent or that he had no time.  He refused to listen to plaintiff's concerns as he claimed being very stressed out in that day. Plaintiff claimed that there were pain in the uterus but Dr Jasenof stated that this was because of the growing of the baby. He requested plaintiff to come in one month.

108. Plaintiff believes that other pregnant people[not romanians or ypounger or without lupus] received better care and better attention from Jasenoff while plaintiff did not receive any minimal care from Jasenof. plaintiff received no guidance or no necessary treatment or care.

109. Plaintiff discussed with Jennifer that plaintiff had pain in uterus but Jennifer said that this was normal because she had a normal pregnancy and because she had pain too while she was pregnant; shortly she was not providing care to plaintiff but he was just telling her stories.

110. On Sept15,2006 (Friday morning) Plaintiff called Jennifer and reported vaginal bleeding. Jennifer told plaintiff that this is normal in pregnancy, and recommended plaintiff to see DR Jasenof on next day on Sept 16, 2006, in the morning at 9:00 am. while plaintiff acknowledged her intention come with husband, for the pregnancy and the plaintiff's baby.

111. Jennifer discriminated against plaintiff because usually with other patients Jennifer was arranging them to be seen in AMG office from Lutheran Hospital which had doctors on call Jennifer did not arrange for plaintiff to be seen immediately or arrange a phone call to doctor on call; she misinformed plaintiff that there was no doctor available while she scheduled plaintiff to see Jasenof next day. Plaintiff believes with other patients no Romanians , with no lupus, or no participating in protected activates, she was directing them to office from Lutheran or provided them with phone call doctor.

112. ON Sept 16, 2006 at 9:00 am plaintiff and her husband met DR Jasenof. Plaintiff showed to doctor in a plastic bad blood and mucus which got out one day before; Jasenof said "this is shameful" DR Jasenof performed an ultrasound. Plaintiff's baby was developed comparative to last ultrasound. The ultrasound was quite long. The ultrasound provide information to Jsenoff that plaintiff's situation was critical and plaintiff was necessary to be hospitalized; plaintiff attaches as exhibit a study and similar pictures which proves that at that time Jasenof was fully aware of plaintiff's medical condition as blood clots were visible on his ultrasound machine; However Jasenoff discriminated against plaintiff based on national origin or her protected activities, or lupus and lied to plaintiff that everything "was normal" while Waivio relied on his statements.

113. Plaintiff inquired Dr Jasenof about the well being of baby and he responded that everything was normal and there was no concern. Plaintiff showed to him blood and some mucus

which from Sept 15, 2006 but Jasenof said that it was normal. Plaintiff in good faith believes that Jasenof was aware of the critical medical condition as cervix was open and as blood was showing some mucus which was sign of cervix being open. However Jasenof dishonestly misinformed plaintiff and he stated that everything was normal while plaintiff was in critical condition and cervix was open. Jasenof performed also a verification of cervix and he dishonestly misinformed plaintiff stating that cervix was closed but the cervix on Sept 16,2006 was open because mucus was getting out.

100. On Sept 17, 2006 about 3:00pm placenta had rupture under pressure of blood clots and pain. Plaintiff was transported immediately to Northwestern Community Hospital were plaintiff received blood transfusion and IV. The medical personnel established that there were blood clots in uterus; nurse measured on blood clot which was 400CC [there were many other clots], while plaintiff's situation was threatened by lost of blood see medical record  Plaintiff's baby died at 21 weeks. Plaintiff and her husband were informed that situation was critical and may result in lost of life of Waivio or her child.101. Plaintiff believes facts from Sept 17,2006 were fully preventable with simple baby aspirin and simple care; defendants willfully refused medical diagnostic and treatment discriminating plaintiff based on her national origin, lupus, or participation in protected activities. Defendants completely denied medical services to plaintiff and resulted was lost of life of baby and critical condition for plaintiff.

114. Plaintiff believes that other patients, not Romanians, not disabled or not participating in protected activities were treated better or were placed in hospital and care about while plaintiff was refused complete medical care.

115.   Defendants refused to inform plaintiff about "phospholipids syndrome" medical condition identified by defendants in week 10-13 of plaintiff's pregnancy; they refused to treat in any way plaintiff's medical condition; They refused to hospitalize plaintiff; on Sept 16, 2006, in week 21 of plaintiff's pregnancy, after making ultrasound which fully showed plaintiff's uterus with big blood clots [a critical condition Requiring hospitalization], Defendant Jasenof sent plaintiff at home refusing any medical services and refusing to inform plaintiff about the real critical medical condition[he let plaintiff to understand that plaintiff was all right]; plaintiff's baby died on Sept 17, 2006 and plaintiff was in critical condition of life on Sept 17, 2006,

loosing huge amount of blood which threatened plaintiff's life. "Phospholipids syndrome" is a medical condition treatable [with baby aspirin 81mg] and plaintiff's baby life could have been saved with minimal expenses and effort.

116.  At the time of plaintiff's pregnancy at Lutheran there were only 4 doctors in Obstetrics and Gynecology in Park Ridge office, Jasenof, Pesch, Gomez, Galvez; four obstetrics doctors completely refuse to treat Plaintiff's pregnancy or provide further medical services. However only Lutheran had about 19 specialists in infertility at time of plaintiff's pregnancy; each one was making about 200[16] women pregnant on year, therefore it was expected that about 3800 women were soliciting Lutheran for medical care following fertility treatments; Jasenof was complaining that he had about 20 women on day. It appears that there existed shortage of medical specialists in obstetrics ; the same situation is for gynecology. At time of plaintiff's pregnancy there were just 4 specialist in high risk at Lutheran and considering that fertility treatments are in essence high risk it can be implied that Defendants has shortage of specialists in high risk pregnancy and this induced discrimination based on national origin, age and disability. There is extreme low numbers of high risk pregnancy medical specialists comparative to fertility doctors, therefore defendants have bias with respect to fertility. Considering this comparative to case 04-C-3545 defendants might have seen in 04-C-3545 as mirror of their own practice, therefore motivating retaliation against plaintiff based on plaintiff's participating in federal procedure and opposition of unlawful discrimination.

117.  Defendants have bias and preference for specific race, national origin. Jasenof prefers Hispanic patient [or overrepresented classes]. Defendants granted preferential treatment

---

[16]    In one appointment fall 2006 with Rapisarda he declared that he is making about 200 women pregnant on year; Reproductive endocrinology appears main specialization of Lutheran General Hospital as the number of specialists in fertility [there were 19 specialist in fertility at Lutheran Hospital] was exceeding the number of specialists in obstetrics and gynecology about time of plaintiff's pregnancy; this suggest that defendants might have been afraid of a federal investigation of their affairs as there is excessive disproportion between the specialists in obstetrics and those in infertility. Defendants appear to have bias to fertility matters, as number of fertility treatments exceed the ability of defendants to serve these pregnancies. This implies that defendants bias results in scarifications of some pregnancies and associates this with minorities and lack of culture of those it can be inferred that national origin discrimination against Romanians was induced by defendants' bias to fertility, shortly plaintiff's pregnancy was scarified as plaintiff was minority based on her national origin. Plaintiff was differently treated in medical services based on her national origin. Because Hispanic appeared to be the primary race of patients of Jasenof, due to Hispanic patients preference for Jasenof's national origin/race, implies plaintiff was discriminated based on her national origin by Jasenof against Hispanic who were major class of patients of Jasenof.

based on national origin, race, non-disability based on overwhelming imbalance between patients in defendants' practice and community.

118. medical record made by AMG did not report any blood clot, while ultrasound performed showed clear evidence; NCH record identified on Sept 17,2006 big blood clots with 400cc, which provide evidence of Jasenof's complete refusal to provide medical services to plaintiff. Defendants had acknowledged many times they were fully aware of plaintiff's condition but they refused medical services.

119. On Sept 17,2006 after NCH stabilized plaintiff's medical condition they transferred plaintiff to Lutheran. At all time when plaintiff was at Lutheran Jasenof refused to discuss or meet plaintiff. Plaintiff was treated by Daniel Pesch and Isabel Gomez, and residents.

120. On Sept 18,2006 defendants refused to perform a complete D&C to plaintiff and they intentionaly and maliciously let a small part of placenta "product of conception" in plaintiff's uterus as to prevent further pregnancy. Afterwards they dishonestly misinformed plaintiff about her medical condition. They refused to clean the uterus under various pretexts. Following Dec 17-18,2006 defendants refused to give antibiotic to plaintiff as medical standards procedure required plaintiff to have antibiotic following pregnancy lost and labor; all other women with about same conditions received antibiotic and medical care; plaintiff requested antibiotic to Jasenof and Daniel Pesch and they refused to provide antibiotic. In night of Sept 19,2006 plaintiff called Pesch on emergency as plaintiff had high temperature, and plaintiff's heath was very bad, but Pesch refused to provide any antibiotic to plaintiff. Plaintiff discussed with other people and they confirmed that all other patients in labor situation received antibiotic and medical care staying for 4-5 days in hospital after delivery while plaintiff was sent to home on Sept 19,2007, in same day with delivery.

121. Following defendants' refusal to provide medication and medical care plaintiff uterus got infected and on Sept 22,2006 plaintiff was taken to Lutheran Hospital based on excessive temperature about 102degree and very bad medical conditions. Defendants gave plaintiff diagnostic of endometritis but in essence this was willfully induced by defendants in retaliation and based on plaintiff's national origin.

32

122. In December 2006 plaintiff had a hysteroscopy for diagnosis and biopsy report stated that there was placenta left over in uterus from pregnancy, as defendants refused to clean plaintiff's uterus.

123. Iannucci and Pesch had conspired to have plaintiff make hysteroscopy for removal of left placenta from uterus in fall 2006, see letter in Dec 2006 from Iannucci and record statements of Pesch; Pesch continually solicited plaintiff to have surgery with him in an effort to agrees and harm plaintiff.

124. In January 5, 2007 Pesh performed two surgeries of removal of placenta from uterus. While Pesch declared that procedure is a hysteroscopy and there can not be harm, Pesch performed actually two different surgeries in same time without consent of plaintiff and without given knowledge to plaintiff; on 01/05/07 Pesch performed both a D&C and a hysteroscopy as two separate procedures and he aggressed plaintiff's uterus. His actions are battery. Pesch and defendents have liable in trespass (battery) because they did not obtain consent for procedure, while they claimed to be a simple and without risk procedure.

125. In February 2007 plaintiff requested services from Charless Miller medical Group where plaintiff received medical treatment from Michel Zinger. Zinger performed an 3-D ultrasound and established that 70% of plaintiff uterus was scarred following the surgery performed by Pesch at Lutheran Hospital on 01/05/07; Zinger identified Asherman's Syndrome as induced by defendants. Plaintiff requested Zinger to make hysteroscopy for removal of scaring. Before making testing with Zinger plaintiff performed a saline ultrasound with Pesch, and Pecsh declared that uterus was normal. Comparing the two testing plaintiff realized that Pesch was dishonestly misinforming plaintiff about the real medical condition of plaintiff while he aggressed plaintiff on 01/05/07.

126. Plaintiff discussed with Pesch the testing of Zinger in Feb 2007. Pesch declared that he will discuss with Zinger about plaintiff. After a few days from Pesch discussion with Zinger, Zinger refused to perform surgery. He requested plaintiff to go to a mental heath doctor [he gave plaintiff a name] and have medical care and for that doctor to give a letter of recommendation to Michel Zinger that plaintiff was able to have surgery. Plaintiff did not satisfy the requests of Zinger therefore plaintiff left Charless Miller office without treatment. Zinger completely refused

medical care to plaintiff's situation while previous to discussion to Pesch he promised plaintiff total medical care to solve the Ashermsn's syndrome induced by Pesch surgery.

127. There is a relation between Pecsh induction of Asherman's syndrome to plaintiff and Zinger. In February 2007 Zinger was not an employee of Lutheran Hospital. Today Michel Zinger is an employee of Lutheran Hospital. It appears that Michael Zinger was compensated for his refusal to treat plaintiff by being made employee of Lutheran General Hospital [plaintiff declares under oath Michel Zinger appears today on internet http://www.advocatehealth.com/system/about/overview.html as employee of Lutheran Hospital while he was not en employee in Feb 2007].

(Karande)128. In February and March 2007 plaintiff received medical services from Karande (Indian), employee of Lutheran. Plaintiff requested him to make hysteroscopy for removal of scaring and plaintiff requested him to use scissors. On March 20,2007 he performed hysteroscopy for removal of scaring; however he burned plaintiff's uterus with electricity while he did not use scissors; after surgery plaintiff had about one month bleedings which indicated Karande let scaring intentionally in the uterus; on 04/17/07 plaintiff made HCG which identified that right side of uterus was left with scar see exhibits. On 05/09/07 Karande sent a letter to plaintiff asserting that no further medical services will be provided by him or his office, complete denial of medical services. In May 2007 his associate Sigal Klipstein was not an employee of Lutheran. Today Sigal Klipstein is an employee of Lutheran.  In fall 2006 Daniel Pesch recommended to plaintiff to receive treatment for infertility from Sigal Klipstein. Today she is employee of Lutheran  and this is related to plaintiff's harm by Pesch.

129. In Summer 2007 plaintiff requested medical services from Randy Morris, in his practice office from Naperville. After a short appointment Rendy Morrison refused to provide medical services on pretexts to discrimination, but he did not refused others no Romanians or no participating in protected activities. While in summer 2007 Randy Morrison was not an employee of Lutheran Hospital, today Randy Morrison is employee of Lutheran Hospital.

130. It appears Lutheran hire medical specialists in Ashermen's syndrome while plaintiff received a complete refusal of medical doctors to be treated from Ashermans' syndrome. Lutheran Hospital shows tactical legal strategy of hostile environment and complete denial to

plaintiff of medical services not only by completely refusal medical services, by intentionally inducing harm but also by hiring people who refused to treat plaintiff or people who were needed to treat plaintiff in local area. This motivates an inference of retaliation as it appears that plaintiff was aggressed intentionally and Pesch induced intentional harm to plaintiff. Furthermore there is significant movement regarding the number of infertility specialists employed by Lutheran General Hospital. At the time of plaintiff's pregnancy there were 19 specialists in reproductive endocrinology (RE), today there are 13 specialist RE from which 3 were new hiring as they are doctors specialists in Asherman's syndrome who refused services to plaintiff.

### Legal Strategy and Court Transaction

131. This transaction bear the characteristics legal strategy of legal representatives it is based on willful, legal strategy, designated to cover up previous transaction and to cover up defendants illegal practices. This transaction is similar situated to Arnstein Varga in 06-C-7189. This is different transactions.

132. Defendants liability appears defendants have full control over their legal representatives.

133. Counselors in present case have history of disciplinary actions. Disciplinary Counsel v. Nielsen (2001), 93 Ohio St.3d 1202 Supreme court Ohio and District of Columbia Court of Appeals entered March 1, 2001, in In re Kenneth E. Nielsen, Jr., 768 A.2d 41, in case No. 00-BG-1464, in which respondent, Kenneth Edward Nielsen, Jr., was publicly censured, disciplined His history shows suitable court legal strategy of defendants.

134. Legal misrepresentation, perjury, fraud is Advocate attorney Anjali Dayal and FCI attorney which appears to cover up, misrepresent real legal representatives of defendants. Anjali Dayel is a person similar to Grosch in 04-C-3545 hired for purposes of misrepresentation, perjury, fraud or disguise of different legal representative. Anjali has no federal legal experience see records of this court. Advocate has legal strategy of misconduct byfalse pleadings; court representation is the "gist of conspiracy" provide means for false bad faith pleadings designated to induce misconduct.

135. Court procedure reveals "gist of conspiracy" shows that defendants conspire or go disguise purposing depraving Waivio of equal protection of law, injury, and abusing legal system pursuant 42USC1985(2) and 42USC1985(3). Defendants have mastermind in Nielsen, have

experience in equity and counselors are misrepresented to court by false actors which are not really the counselors writing pleadings. This is violation 42USC1985(3) and 42USC1985(2).

136. Waivio served complaint 01/16/08 by mail/fax at court own big surprise; however defendants did not contest services but contrary defendants waived legal rights of services proving they are highly interested in present federal procedure, they are actually desperate in this procedure, court procedure is their interest, therefore proving facts are related federal procedure pursuant 42USC1985(2). Based on evidence in record Waivio introduced court transaction.

137. On 03/25/08 Anjaly in open court declared that Advocate was ready to provide response to complaint while she never ever had any significant participation in federal court implying Anjaly is not the person writing pleadings for Advocate but she misrepresents Advocate. Similar to Ciminera. These false actors proves perjury, misconduct, lie to court

138. On 02/21/08 Nielsen provided motion to dismiss essentially set up the state of misconduct of Waivio legal actions. Nielsen implies main interest of defendants is federal procedure to cover up the illegal medical practices. While Nielsen pleads guilty to malpractice, essentially he cover up illegal practices. Defendants induced willfully present federal procedure as cover up of illegal medical practices while they threatened coerced frightened Waivio. Words like "medical judgment" go disguise essentially criminal sanctionable practices flagrant violation of federal and constitutional rights.

139. Nilesen made false pleadings in bad faith designated to misconduct Waivio pleadings induce misinterpretation of actions. Nilsen requests for affidavit points that defendants are interested in Waivio testimony therefore injury against Waivio were designated to deter Waivio testimony. Nilsen motion is essentially abuse of process, evidence support of allegations.

140. The essence of defendants practice appears to be element of torture, battery trespass of consent; shortly actions of defendants induces impossibility of Waivio to do anything else than what defendants desire, induce. Defendants barred means to Waivio in essence implies Waivio needs to do what defendants want, essentially trespassing consent, and inducing actions against free will and desire of Waivio. consent is flagrantly violated, matters are not free will and desire of Waivio.

141. Plaintiff takes as evidence in support of her complaint the record in present case and submissions made by defendants and any exhibit on record related to complaint.

142. Waivio believes defendants' action are designated to induce injury to Waivio in person or her property and to deny her equal rights under law.

**Gonal-F Disaster**

143. Gonal-F has fatal error. When Waivio become pregnant with Gonal-F, body saw the pregnancy as foreign object, and rejected pregnancy[17][blood clots, lupus is form or rejection because Gonal-F was identified as foreigner].

144. Defendants practice is based mainly on compensation of rejection of Gonal-F treatment by body because the gestation time is short. These are techniques to cheat the body or counter the rejection [because the gestation time is limited] by lowering immunity with progesterone or similar situated techniques; however none can estimate when body rejects the pregnancy. This is reason Gonal-F is medically invalid.

145. Majority of life births with Gonal-F are preemies[or deaths], because body rejects pregnancy. [it is like artificial transplant with fatal error, transplant is not accepted by body, but in pregnancy case medical doctors attempt to overcome the body rejection. Shortly medically Gonal-F is invalid from medical point of view]. Any medical expert can establish Gonal-F has fatal error, it is medically invalid technology.

146. When plaintiff requested services from FCI plaintiff had no previous history of fertility treatment and had no knowledge of any medication; Rapisarda was fully aware of disaster of Gonal-F and gave Waivio medication which was medically invalid, . Rapisarda and Advocate, Lutheran are fully liable for consequences and have full liability for matters presented.

147. Plaintiff believes natural pregnancy may be tolerate because body tolerates its natural cells; theory of toleration points that it is likely that natural pregnancies are tolerated. Plaintiff requests as remedy defendants to provide natural eggs from other women, as solution of recovery of lost of child.

**Count I –US Constit; Tort of Intent, Tort of Deceit and Tort of Misrepresentation,**

---

[17]    Similar to artificial transport the main issue is acceptance of body of artificial part; if body does not accept the artificial part then there is fatal error; it is believed that lupus which was induced after Rapisarda treatment with Gonal-F was refusal of body of pregnancy because body treated pregnancy as foreign object.

**Tort of Concealment,  Criminal Negligence; Medical Malpractice; Tort of ProductLiability**

**Failure to Warn; Breach of contract; Tort of Battery, Tort of Trespass Federal**

**Food Drug Act; Illinois Food  Drug Safety ;42USC300, 42USC300(e)(b) Misconduct**

**720 ILCS 5/33-33(GONAL-F Trans) Rapisarda,FCI; Adv Lutheran; [alternat II Karande]**

1-147. Plaintiff repeats realleges paragraphs 1 through 147  as paragraphs 1-147 of this Count I.

148. Pursuant Rule 10(c) Plaintiff repeats and realeges "Prima Facie case for Tort" with respect
to this transaction and these defendants and facts therein.

149. Defendants of this count are Rapisarda FCI, vicariously liability Advocate and Lutheran;
plaintiff presents also alternative II that  Karande had liability because he performed D&C
surgery 09/22/05 and matters point to He having interest to induce present matters.

**150. Tort of Trespass and Battery**

a. Rapisarda intentionally and volitionally gave Waivio an unconsentual treatment with
GonalF; treatment was harmful and offensive over standards of care acceptable under peers and
induced injury and real harm; defendants have liability under Tort of battery

b. there is no consent to the trespass; Waivio did not consent to treatment; Rapisarda or
FCI did not explain and did not discuss Gonal-F treatment; he just gave directions

c. Rapisarda interfered willfully, intentionally with Waivio rights, health and well being;
Rapisarda and FCI actions were intentional maliciously

d. Rapisarda intentionally trespass battery was cause or proximate cause to  injury

e. Defendants' actions resulted in real harm, life time fatal disease

151. Defendants' actions were misconduct similar situated to (720 ILCS 5/33-33)
a. intentionally or recklessly failed to perform any duty as required by law, practice, rules
agreements
b) knowingly performs an act which he knows he is forbidden by law to perform; or
c)  with intent to obtain a personal advantage for himself or another, he performs an act in
excess of his lawful authority

**152. Tort of Deceit; Tort of Misrepresentation; Tort of concealment**

153. FCIBooklet [given after Rapisarda decided treatment which was not explained and was not
discussed with Waivio] declares on page 11 "In rare instances pregnancy may result in serious
harm or even death to mother due to occurrences such as pulmonary embolism (blood clot to the

lung), strike or hemorrhage after delivery[18]. There is **no known increased risk** to these complications in pregnancies following infertility treatment" This statement is a lie, lies to Waivio; No where did FCI acknowledged necessity of high risk doctor in pregnancy treatment no where they acknowledged lupus as life time fatal disability, while they lied to Waivio. FCI had knowledge of matters but they conceal the true. They treated Waivio with aggravate fatal procedure when less drastic solution existed.

154. The plaintiff claims the following:

a. Defendants used false, deceptive statements material to the facts and actions against plaintiff; these were done intentionally with purpose to personal gain or to hide information;
b. Plaintiff trusted all these, she relayed on Defendants' dishonest matters, or misrepresentation, or she was affected by Defendants' misrepresentation.
c. Defendants' deceive practice or misrepresentation was the legal and proximate cause of injury, losses, fatal disease and damages to the plaintiff.
    d.  Plaintiff suffered substantial damages, injuries as a result of the illegal practice;

155. Waivio alleges under state tort theory Active Concealment Of Known Facts  Defendants are guilty (1) defendants Known, intently made false statements  and intentionally conceals material facts, or  (2) Actively prevents investigation and discovery material facts, or  (3) While under no duty to speak, nevertheless does so, but does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated.

156. Rapisarda/FCI lied to Waivio about drug Gonal-F; Waivio requested effective treatment and Rapisarda gave Waivio an invalid medical treatment, in essence he lied plaintiff; in fall 2006 Waivio requested natural cycle or clomid but Rapisarda refused; Rapisarda not only that he refused in April 2006 adequate treatment but he refused those afterwards too. In November and December Waivio requested natural cycle with HCG and IUI and afterwards clomid which were refused under false pretexts; this proves Rapisarda continued its practice.

157. Rapisarda misrepresented matters and this induced injury to Waivio person and losses Rapisarda lied to Waivio about Gonal-F drug; Rapisarda misinformed Waivio about Gonal-F treatment while clomid and natural IUI were less drastic solution with less risk

---

[18]     Defendants were fully aware of predictable result in case of refusal of medical services and no information to Waivio of real situation, implying defendants might have attempted to induce Waivio's Death in Sept 2006

158. Rapisrda lied to Waivio when he did not inform Waivio that there was high risk in Gonal-F and that pregnancy needed high risk doctors;

159. Rapisarda lied to Waivio when gave Waivio medication from FCI. FCI is in violation of Food and Drug Act and Illinois Food and Drug Safety Law.

160. Rapisarda lied to Waivio when he did not inform Waivio about lupus, that he had knowledge of causes of her pains and cramps reported to him.

161. Rapisarda told Waivio to stop progesterone in after week 12 of pregnancy but this was a lie because progesterone was lowering immunity of system therefore was helping the child. Progesterone was necessary but he lied to Waivio.

**162. Tort of Intentional Product Liability**

Plaintiff repeats all allegations under tort of Product liability. Plaintiff alleges violation under Tort of Product Liability Consumer Protection, Failure to warn, Breach of warranty is because Waivio requested viable medical treatment and Rapisarda gave Waivio invalid medical treatment, illegal treatment, when less drastic solution was available. Rapisarda is violation of "Consumer Protection", by flagrant violation of Waivio constitutional and federal rights. FCI concealed vital information about which they were fully aware about Gonal-F or treatment with Gonal-F; FCI concealed vital information about Waivio real condition and this resulted in death baby and Waivio fatal disease. Rapisarda  refused to warn Nathan and Rodica Waivio with respect to high risk of medication, predictable consequences.

**162. Tort of Intentional and Medical Malpractice**

163.    FCI&Rapisarda's medical services are in violation of 42CFR1004.10 Statutory Obligations of practitioner and other, with respect to treatment provided to Waivio; Defendants treated gently Americans [counselors are Americans] and overrepresented national origin classes [Indians are preferred in Dayal], or younger women [Cimmenera, Filipovic] or persons non participating in protected actions;  parties in other legal actions with defendants, were treated gently comparative to Waivio treatment see public records and records in genre in district court as evidence of unlawful discrimination.

164.    Rapisarda violated 42CFR1004.10(a)  he provided treatment which was not economically because "Gonal-F" treatment in April 2006 was about 3000$ while a simple natural cycle with

HCG and IUI was significantly less $500, while a clomid cycle could have been between 500-1000$. Rapisarda treatment was not economical.

165.    Rapisarda violated 42CFR1004.10(a) he provided a treatment which was not "to the extent medically necessary" because less treatment HCG with IUI or cycle with clomid were available, and expected could obtain pregnancy, and avid high risks.

166.    Rapisarda violated 42CFR1004.10(b) Rapisarda treatment of Waivio did not meet professional standards because he gave extreme aggressive treatment when less drastic treatment was available and was expected with result of pregnency; Rapisarda did not meet professional standards when he refused to give Waivio medical services when Waivio complained of pain; he did not made investigation or he did not report results to Waivio while he had knowledge of side effects of medications provided by Himself.

167.    Rapisarda violated 42CFR1004.10(c) making medical procedure very aggravate when it was not supported by evidence of medical necessity; he did not made a normal ultrasound at middle cycle, he did not monitor LH he did not monitor progesterone to establish Waivio's natural cycle  ability to get pregnant before his treatment and this indicated that he did not investigated sufficiently Waivio, his treatment Gonal-F is not supported by evidence of medical necessity; Waivio was pregnant naturally in Summer 2005. It implies that Rapisarda's interests were falsely related to his interest of testing of medications and Waivio was abused.

168.    The plaintiff proves the following in the present count:

a. Defendants' agents were required to obey the state and federal laws; they owed a duty of lawful and proper conduct, trustful actions, trustful treatment
b.  Defendants' violated the state/federal laws as described in this count
c.  Defendants' violation was legal or proximate cause of injury losses to plaintiff,
   d.  Plaintiff suffered substantial damages as a result of the Defendants 'actions
      **167. Tort of Intentional Breach of Contract**

169. There was a contractual relationship between defendants and Waivio corresponding to medical services under state license terms and under Illinois Hospital License for Lutheran

170. Rapisarda owed a duty to conform to specific standard of conduct [corresponding to Reproductive Endocrinology specialty, peer review] for the protection of the plaintiff and her child against an unreasonable risk of injury.

   b. Rapisarda breached that duty [as alleged]

c. The breach was both a cause in fact and proximate cause of plaintiff's injury

d. Damages to the Waivio family, Nathan and Rodica Waivio and death of child resulted.

25. Defendants had duty of care for Waivio arise because in all matters it was foreseeable defendants' conduct will cause unreasonable risk of harm to Waivio and her family.

171. Defendants actions or omissions were willful and wanton conduct 735ILCS10/2-202; Defendants acted maliciously and without probable cause 745ILCS10/2-208.

171. Violation of federal and state laws as presented here is the cause or proximate cause for the plaintiff's injury and damages, for which defendants are liable and responsible.

WHEREFORE RODICA WAIVIO, respectfully requests that this court grant judgment in her favor and against Defendants, and grant Plaintiff all relief deemed appropriate under the law.

**Count II – US Constitution; Discrimination Based on National Origin or Race, Ethnicity, Age, Gender in medical services in Violation oTitle VII, Title VI, Age Discrimination Act 1975, Age Discrimination Employment Act, Illinois Human Rights Laws, 775ILCS15/5 Illinois BlackList Trade, federal & state laws ; Unlawful Discrimination 42USC1981 or 42 U.S.C. § 1983; Violation of federal and state laws experimentation human subjects; violation of 45CFR46 Protection of Human subjects and Title45Public Welfare;42USC300, 42USC300(e)(b); GONALFTransaction)Rap,FCI; Advoc, Lutheran, [alternative Karande]**

1-171 Plaintiff repeats and realleges paragraphs 1 through 171 of Count I as paragraphs 1-171 of this Count II.

172. This transaction is about Gonal-F treatment between March 27, 2006 and May 2006.

173. On 3/27/06 Rapisarda ordered blood work named "Cystic Fibrosis" which is dependent of cromosoms and ethnicity [national origin]. Rapisarda plan on 3/27/06 shows interest in ethnicity, national origin, by ordering blood work related specifically to ethnicity and national origin. Waivio ethnicity and national origin was falsely related to Rapisarda false interests.

174. Defendants did not comply with "safe harbor provisions" of Tile VII [title VI, ADA, Rehabilitation Act, Title42Chapter117] "no-match letter" Immigration Reform Act which requires 60 days of step by step investigation and viable solution; Rapisarda treatment "Gonal-F" was in violation of "safe harbor provisions" because HCG and simile IUI was less drastic

alternative available which could made Waivio pregnant at that time; same clomid was less drastic alternative available which could result in pregnancy.

175. Rapisarda treatment is flagrant bad faith, harmful and offensive, "human subject experimentation" in violation of 45CFR46.117 and Title45 Public Welfare, federal and state laws about human subject experimentation; Rodica and Nathan did not consent to any experimentation and had no knowledge of any experimentation. Defendants practice is similar situated to "Nonconsentual human experimentation on Human Beings", illegal experimentation on minorities in violation of federal and state laws. Advocate and Lutheran are direct responsible for supporting such practice. Rapisarda treatment is in violation of Food and drugAct.

176. American women or overrepresented national racial groups of women [such as Indians, Chinese there were many of those at FCI and Lutheran or Karande] of similar age to Waivio were not treated with Gonal-F, they were treated with natural conception attempt or clomid.

177. Younger women than Waivio were treated with natural conception or clomid, while older women older than Waivio were treated with "aggravate procedures" [such as IVF].

### Discrimination based national origin, ethnicity, race or gender, age

178.    Defendants treated severely Waivio comparative to other people not Romanians, not minorities, not aged, male.  Defendants refused adequate medical services to plaintiff based on her national origin, age, gender eliminating or discriminating her. Men, or young people or Americans or overrepresented classes received adequate medical treatments, less aggressive fertility treatments and better care resulted in effective treatments and children.

179. Rapisarda and FCI granted preferential treatment to groups overrepresented based on race, national origin, This motivates discrimination, disfavorable treatment Waivio or minorities against underrepresented protected national ethnic groups based solely on race, national origin.

180. Defendants discriminated Waivio intentionally because her national origin, ethnicity was rare, uncommon, therefore extreme high interest for illegal medical experimentation; public research proved that minorities are more likely to be subject to "non consent medical experimentation". This motivates both national origin discrimination and ethnicity in violation TitleVII,VI,Section 1981, 42USC1983 when defendants are interpreted as receiver state money;

43

181. FCI, Advocate and Lutheran had lack of race, national origin diversity among patients or personnel. There was racial national origin imbalance motivated by defendants preferential treatment in medical services based on race national origin; Romanians or East Europeans were underrepresented and disfavored based on their national origin, when other national origin racial groups overwhelmingly overrepresented were favorably preferred based on their race or national origin. Americans were favored and Hispanics were favored; Russian or East European were disfavored, treated aggressively.

182. Plaintiff believes FCI had imbalance in classes of patients with respect to age. Plaintiff believes majority of patients are older women. Plaintiff believes Waivio was misclassified based her national origin as "older woman" when in reality and based on her specific situation in April 2006 Waivio should have been treated as "younger woman".

183. "Younger women" were treated more favorable with natural treatment or clomid;

184. "Older women" were main interest of defendants and they were treated with aggressive treatments mainly Gonal-F at FCI or similar situated Lutheran.

185. Plaintiff believes Rapisarda wrongly gave plaintiff treatment corresponding to women in 38 or 40 years when actually plaintiff specific situation required treatment similar situated to women at 35 years, younger women. Plaintiff believes Rapisarda intentionally discriminated Waivio solely based on her age; Plaintiff believes Rapisarda intentionally discriminated Waivio solely based on her national origin, race, ethnicity.

186. Plaintiff believes Rapisarda and Advocate as well as Lutheran had high false interests in "Gonal-F practice" because of significant number of older women treated by those comparative to other peers who have no such high number of older women treated. Shortly they have a policy, a practice of treatment of older women, therefore high interest in "Gonal-F treatment".

187. The personal injury made by Lutheran Pesch and Karande in 2007 and after Sept 2006 shows on intentional delay introduced in Waivio medical health development, in essence is a [false cover up] "correction" of "Gonal-F treatment" misclassification of Waivio in April 2006 as old woman due to her national origin, [or false federal interest] and false interests of defendants in Gonal-F treatments; they wrongly misclassified Waivio in April 2006 as old woman. Shortly they intentionally injured Waivio as to cover up, "correct" misclassification of

44

Waivio as older women, when in April 2006 Waivio should have been treated as young woman. This confirms existence of policies and practices and a significant number of old women overrepresented at defendants comparative to such women in other communities or other peers.

188. Pursuant to 29CFR 1607.11 plaintiff was discriminated and denied medical services solely because of her Romanian origin. Other national origin minority patients, similar situated to Romanians, were treated in bad manner, denied adequate treatment, or were denied medical services, or suffered other adverse actions while those patients who were not Romanians or no national racial minority, were treated better, they were enjoying benefits of medical services that were denied to Waivio and other similar situated.

189. plaintiff was intentionally discriminated and denied medical services solely because of her age by misclassification of Waivio as older woman. Other "older women" patients, were treated with aggravated treatments, in bad manner, denied adequate treatment, or were denied medical services, or suffered other adverse actions while those patients who were younger than Waivio, were treated better, they were enjoying benefits of medical services that were denied to Waivio and "older women".Defendants discriminated against plaintiff in medical services, based solely on her age because defendants falsely related Waivio's age with false interests in Gonal-F.

190. Defendants discriminated against plaintiff in medical services, based solely on plaintiff's national origin because defendants had misconceptions, false personal interests, unmotivated reasons, unfounded fears, stereotypes, unfounded presumptions about Romanians or Traditions.

191. Plaintiff declares Waivio saw younger woman been treated with natural cycle, or clomid, as defendants admitted such practice.

192. Defendants violated Title VI or Tile VII or Age discrimination because defendants refused to provide settings adequate to Waivio's specific needs as to her national origin, or her specific age  and specific necessities at that time.

193. Similar situated patients not of Waivio's national origin or race younger were treated better. They received better medical services better treatments, and better medical settings.

194. Plaintiff was denied the benefits of the medical services solely based on the underrepresented [19]national origin. Other patients from underrepresented national groups, were denied benefits of medical services, or suffered adverse actions, while those from overrepresented national groups were allowed to enjoy effective treatments and benefits of medical services that were denied to Waivio or other similar situated patients from underrepresented national origin groups.

195. Defendants refused or failed to even attempt to understand Plaintiff's cultural differences and completely refused to accept her foreign traditions such as request to natural treatment made on 04/17/06 or made later in Nov 2006. Defendants made fun of Waivio's Romanian national origin or her age.

196. Romanian culture has tradition in respect to equity rights. Defendants disliked her ethnicity because it was opposite to their false interests and discriminatory practices.

197. Defendants refused or failed to make positive efforts in reaching at a level of trust of friendship, beyond the language or cultural, age differences. The relation between Waivio and defendants was cold, distant, and formal, therefore subject to national origin, age factors.

198. Jamie Filipovic (born 1977) and Joanne Cimminera(born 1975) , American origin women, member of fertility treatments of FCI and Rapisarda had no problem getting natural treatment and natural inseminations, effective treatments in fertility from FCI or Rapisarda, proving FCI and Rapisarda enjoys American National origin women, while they treat severely and disfavorable Romanians and similar situated.  Rapisarda, or other FCI members did not gave and will never give Gonal-F treatment To Cimenera and they did not give Gonal-F  treatment to Filipovic and never will do, proving main target were national minorities, Romanians;

199.  legal representation of Rapisarda and FCI proves treatments described were not usual done on women similar situated to Cimminera and Filipovic; shortly Cimminera can tell nothing about Gonal-F because she never was treated with so high risk medicine;

200.. Younger women similar situated to Cimmenera were treated gently with natural cycle and with clomid when these treatment were refused to Waivio and "older women".

---

[19]      Underrepresented means a class with law number of persons, lower than the normal corresponding percent in corresponded community see Tile VII, 42USC2000e- (j) Preferential treatment not to be granted on account of existing number or percentage imbalance

201. Rapisarda proves protection to younger women when facts proves at only 3 years older than Cimmenera Rapisarda administrated Waivio with a fatal disease drug.

202.        Plaintiff declares that plaintiff witnessed in her time spent at FCI many American origin Women been treated effectively, with clomid, and enjoying FCI services while Plaintiff was treated severely.

203 Rapisarda and FCI evaluations in medical services were discriminatory based on her national origin, comparative to evaluations of other patients, not Romanians, from overrepresented racial national origin groups.

204. FCI, Rapisarda, Advocate Lutheran violations of mentioned federal and stat laws was an actual cause or proximate cause to plaintiff's losses, injury, damages.

205. Defendants actions or omissions were willful and wanton conduct pursuant 735ILCS10/2-206; Defendants acted maliciously and without probable cause 745ILCS10/2-208.

WHEREFORE RODICA WAIVIO, respectfully requests that this court grant judgment in her favor and against Defendants, and grant Plaintiff all relief deemed appropriate under the law.

**Count III US Constitution; Tort of Intent, Medical Malpractice; 410ILCS250 Developmental Disability Preventive Act; Illinois Developmental Disability Act; Illinois Hospital License Act; Illinois Health and Safety Laws; State and Federal laws related; 775ILCS; Tort of Trespass and Battery; Tort of Deceit; Tort of Concealment; Tort Misrepresentation Tort of Product liability Failure to Warn Misconduct; Tort of Intentional Breach of ContractWrongful death 740ILCS180/242USC300, 42USC300(e)(b) EMTALLA 42USC1395dd**

Lupus transaction [Advocate Lutheran Rapisarda FCI Jasenof Torres Peasch Pilate Ianucci, Karande] [all defendants except their counselors]

1-206. Plaintiff repeats and realleges paragraphs 1 -206 of Count II as paragraphs 1-206 of this Count II. X.

207 Pursuant Rule 10(c) Plaintiff repeats and realeges "Prima Facie case for Tort".

208. Plaintiff claims Defendants' actions were misconduct similar situated (720 ILCS 5/33-33)
   a) intentionally or recklessly failed to perform any duty as required by law, practice, rules agreements etc.

b) knowingly performs an act which he knows he is forbidden by law to perform; or

c) with intent to obtain a personal advantage for himself or another, he performs an act in

excess of his lawful authority

209. this transaction is named "lupus  transaction" based on medical services, facts after Gonal-F

when Waivio become pregnant May 2006 and after death baby September 17,2006; it is separate

from "Gonal-F transaction", core of facts are different; this transaction is related to "Gonal-F"

because Gonal-F induced lupus;

**Tort of Deceit; Tort of Misrepresentation; Tort of concealment**

210.   No where did defendants acknowledged necessity of high risk doctor; no where they

acknowledged lupus or thrombophilia, while they lied to Waivio. Defendants had knowledge of

matters but they conceal the true.

211. The plaintiff claims the following:

a. Defendants used false, deceptive statements material to the facts and actions against plaintiff;
these were done intentionally with purpose to personal gain or to hide information;
b. Plaintiff trusted all these, she relayed on Defendants' dishonest matters, or misrepresentation,
or she was affected by Defendants' misrepresentation.
c. Defendants' deceive practice or  misrepresentation was the legal and proximate cause of
injury, losses, fatal disease and damages to the plaintiff.
    d.   Plaintiff suffered substantial damages, injuries as a result of illegal practice;

212. Waivio alleges under state tort theory Active Concealment Of Known Facts  Defendants are

guilty (1) defendants Known, intently made false statements  and intentionally conceals material

facts, or  (2) Actively prevents investigation and discovery material facts, or  (3) While under no

duty to speak, nevertheless does so, but does not speak honestly or makes misleading statements

or suppresses facts which materially qualify those stated.

213 Jasenof,Tor,defendants had full knowledge lupus Waivi made arguments accessible tothem.

214. Jasenof/Rapisarda told Waivio to stop progesterone in after week 12 of pregnancy but this

was a lie because progesterone was lowering immunity of system therefore was helping the

child. Progesterone was necessary but he lied to Waivio.

Plaintiff repeats all allegations under tort of Product liability.

Plaintiff alleges violation under Tort of Product Liability Consumer Protection, Failure to warn,

Breach of warranty is because Waivio requested viable medical treatment.

Jasenof refused to warn Nathan and Rodica Waivio with respect to existent lupus condition.

**Tort of Medical Malpractice Wrongful Death**

215.    FCI&advocate medical services are in violation of 42CFR1004.10 Statutory Obligations of practitioner and other with respect to treatment to Waivio. Wrongful acts of defendants caused death of Plaintiff's child and endangerment of Waivio.

216.    Rapisarda violated 42CFR1004.10(b) Rapisarda did not meet professional standards when he refused to give Waivio medical services when Waivio complained of pain; he did not made investigation or he did not report results to Waivio while he had knowledge of side effects of medications provided by Himself. Defendants had a duty of care for Waivio arise because in all matters it was foreseeable defendants' conduct will cause unreasonable risk of harm to Waivio and her family.

217. Jasenof/Jenifer treatment Waivio violated 42CFR1004.10(b) did not meet professional standards they did not inform Waivio about condition and they did not provide any medical care

218. Jasenof/Jenifer treatment of Waivio violated 410ILCS250 Developmental Disability Preventive Act which required defendants to acknowledge risks to mother, and make such record. Record of Jasenof shows not such knowledge. Jasenof and Lutheran were under obligation "sall provide perinatal care for high risk expected mother who may deliver a distressful or disabled infant" but Advocate refused to provide perinatal care, and Jasenof refused care in violation of state and federal laws.

219. 410ILCS250 Developmental Disability requires "high risk mothers and their spouse are provided information, referral and counseling services to ensure informed consent 410ILCS2550/11(h)" but all these were refused to Waivio and her child, defendants trespassed Waivio consent and their actions are battery offensive and harmful resulted in death and fatal endangerment to Waivio life; their actions were targeted to induce Waivio death in Sept, 2006.

220. Defendans violated42CFR1004.10(a)provided no-treatment "toextent medically necessary".

221. Defendants violated 42CFR1004.10(b) treatment of Waivio did not meet professional standards ; Defendants did not meet professional standards when they refused to give Waivio medical services while they had knowledge of side effects of medications provided by Himself.

**EMTALA 42USC1395dd**

223. Defendants violated provisions of EMTALA on Sept 15, 2006 and Sept16, 2006; On Sept 15,2006 Waivio called office of Jasenof about medical emergency but Torres refused to provide "medical examination" at Lutheran Hospital by misinforming Waivio and providing false information while Jasenof was hospital doctor;  on Sept 16, 2006 Jasenof employee of Lutheran violated 42USC1395(a) because after  he made an ultrasound, he refused to inform Waivio about her emergency condition and refused to take all necessary medical procedure to stabilize Waivio medical condition at that time against 42USC1395dd(b) or he refused to transfer Waivio at Lutheran Hospital for emergency medical care against 42USC1395dd(b)(2). Pursuant 42USC1395dd(a) Medical screening required, Jasenof was required to identify existence of medical emergency condition, but Jasenof refused to inform Rodica and Nathan about existence of emergency medical condition as uterus was with big blood clots. Such emergency medical care could have save Waivio's child. Lutheran refused its obligation under 42USC1395dd, Social Security Section 1867. Defendants' violation of provisions of 42USC1395dd resulted in death of child and endangerment of Waivio. Next day Waivio was in emergent medical condition at NCH without possibility of recovery, result of defendents violation of EMTALA on Sept 15-16,2006.

224.    The plaintiff proves the following in the present count:

a. Defendants' agents were required to obey the state and federal laws; they owed a duty of lawful and proper conduct, trustful actions, trustful treatment
b.  Defendants' violated the state/federal laws as described in this count
c.  Defendants'  violation was legal or proximate cause of injury losses to plaintiff,
    d.  Plaintiff suffered substantial damages as a result of the Defendants 'actions

**225. Tort of Trespass and Battery**

a. Defendants intentionally and volitionally completely  refused medical services or perform nonconsentual medical services to Waivio ; treatment was harmful and offensive resulted in death of child and endangerment of Waivio's life, body injury or adverse results; over standards of care acceptable under peers and induced injury and real harm; defendants have liability under Tort of battery,
b. there is no consent to the trespass; Waivio did not consent to treatment; defendants refused information counseling perinatal care and referral treatment;
c. Defendants interfered willfully, intentionally with Waivio federal and constitutional rights, health and well being; Defendants actions were intentional maliciously
d. Defendants intentional trespass consent, battery was cause proximate cause to injury
e. Defendants' actions resulted in real harm, death and endangerment of Waivio life

**226. Tort of Intentional Breach of Contract**

227. There was a contractual relationship between defendants and Waivio corresponding to medical services under state license terms and under Illinois Hospital License for Lutheran

228 Defendant owed a duty to conform to specific standard of conduct for the protection of the plaintiff and her child against an unreasonable risk of injury.

b. defendants breached that duty [as alleged]
c. The breach was both a cause in fact and proximate cause of plaintiff's injury
d. Damages to the Waivio family, Nathan and Rodica and death of child resulted.
**228**. Defendants had a duty of care for Waivio arise because in all matters it was foreseeable defendants' conduct will cause unreasonable risk of harm to Waivio and her family.

229. Exhibit attached comp.01/16/08 with Jasenof record of child was not signed completely by Jasenof [only two pages]; implies there is missing record or Jasenof willfully refused to make record. Only matters signed are initial matters dated 6/23/06 and 5 lines while signature of Jasenof is missing from record with respect to 5 lines observations between 6/23 and 9/16; shortly they have false information;

230. Medical record sheet requires "anticipated course of prenatal care", signs and symptoms of preterm labor, all these are empty and Waivio was not provided with such matters while others were provided with such care; the page with picture does not show signature of Jasenof. It implies Jasenof had other blood work done which did not appear in record, shortly Waivio made arguments accessible to defendant Defendants had means to have full knowledge of lupus and medical condition of thrombophilia.

231. Defendants actions or omissions were willful and wanton conduct 735ILCS10/2-202; Defendants acted maliciously and without probable cause 745ILCS10/2-208.

WHEREFORE RODICA WAIVIO, respectfully requests that this court grant judgment in her favor and against Defendants, and grant Plaintiff all relief deemed appropriate under the law.

**Count IV US Constitution; Discrimination based on Disability "Lupus" ADA Rehabilitation Act; 410ILCS250 Developmental Disability Preventive Act; Illinois human Rights handicap discrimination; Illinois Hospital License Act; Illinois Health and Safety Laws; 775ILCS Illinois Blacklist Trade Law; Illinois Human Rights Laws; Age Discrimination Act 1975; Age discrimination in Employment Act** 42USC300,

42USC300(e)(b) Lupus transaction [advocate Lutheran Rapisarda FCI Jasenof Torres Peasch Pilate Ianucci Karande ] [all defendants except their counselors]

1-231. Plaintiff realleges paragraphs 1-231of Count III as paragraphs 1-231 of present CountIV

232. Defendants actions or omissions were willful and wanton conduct 735ILCS10/2-202; Defendants acted maliciously and without probable cause 745ILCS10/2-208.

233. this is action of discrimination of Waivio because of disability "lupus" induced by Rapisarda , complete refusal of any medical services refusal of information or any necessities violation of ADA, Rehab federal and state laws and regulations with respect to health.

234. this transaction is named "lupus transaction" based on medical services facts after Gonal-F treatment when Waivio become pregnant and after death of baby; it is different than "Gonal-F transaction", core facts are different; this transaction is related "Gonal-F" but it is different.

235. Plaintiff was completely and totally refused and discriminated against in medical services at FCI and Advocate Lutheran, KArande based solely on her disability "lupus" because she was substantially impaired comparative to normal delivery or natural pregnancy patients or other patients; her disability needed  specific treatment, perinatal care, accommodations, comparative to other non lupus patients; in order to compensate her disability Waivio needed medical treatment from high risk doctors and treatment with baby aspirin, heparin levanox. Defendants were fully aware of such treatment because defendants had many previous fertility patients with same similar situated medical conditions.

236. Defendants refused to inform Waivio about existent medical condition of lupus which was identified by them and which was available to them based on similar situated patients and treatments of previous fertility patients.

237. Defendants had means and knowledge how to treat Waivio and what it was necessary to be done but they refused anything.

238. Defendants had false stereotype expectations  pregnancy patients, and Waivio medical condition was against their false stereotype of expectation.

239. Decision makers had unfounded presumptions wrong beliefs misconceptions about Waivo's disability by unfounded fears, stereotypes, false expectations;

240. Defendants violated 45CFR 84.34(a) in medical services, defendants refused proper settings to the maximum extent appropriate to plaintiff's disability her pregnancy or after her pregnancy.

241. Defendants refused to make adequate medical record conforming to their practice but they did not refuse to make such record to persons younger that Waivio or those without lupus or to overrepresented national racial groups.

242. defendants appeared to have false fears about disability lupus of pregnant women or non-pregnant women.

243. Defendants refused to provide specialized treatment corresponding to Waivio age and her specific lupus situation, while others not Romanian and not with lupus and younger received adequate care as corresponding to specific situation at that time.

244. Defendants refused to treat pregnant women with lupus or women of Waivio's age mainly based on the liability resulted from premature births of children. Advocate had a policy of discrimination based solely on lupus disability or solely on age or solely on national origin because they wrongly believed that such pregnancy creates liability for defendants.

245. Plaintiff was denied the benefits of medical services solely based on her lupus handicap. Other similar lupus handicapped patients were denied benefits of  medical services or were suffering adverse actions because of lupus disability; those without lupus handicap were allowed to enjoy the full benefits of medical services that were denied to plaintiff and to other of those similar situated.

246. Plaintiff was denied the benefits of the medical services solely based on her age. Other similar situated aged patients were denied benefits of the medical services or were suffering adverse actions because of age; those younger were allowed to enjoy the full benefits of medical services that were denied to plaintiff and to other of those similar situated.

247. Defendants violated federal laws and regulations by refusal to make positive efforts in providing required medical services or by making decisions concerning medical services in a manner which discriminated on the basis of handicap or disability or age.

248. Defendants violated 42USC12112(b)(1) by limiting, segregating, classifying patients in a way that adversely impacted the opportunity of the disabled persons [or aged person or minority

national racial person]; defendants violated 42USC12112(b)(3) by using standards criteria that had an adverse action or effect over a person with disability or age or national origin, Waivio.

249 Defendants violated 42USC12112(b)(2), 29CFR1630.6, 45CFR84.11(a)(4) or 34CFR104.11 by participating in relationships with others that subjected Waivio, patients with lupus to discrimination based on disability.

250. Amy was patient with disability similar situated to plaintiff who was refused effective medical services because of her disability lupus; she suffered similar situated adverse actions discriminatory patter as plaintiff.

251 Lorren was a person younger than Waivio who gave birth and she was provided with all necessary medical services which were refused to Waivio.

252. Discrimination based on disability lupus or age is proved by extreme rear births of patients with lupus or "old women" comparative to younger women or women without lupus.

253. Discrimination based on disability lupus or age is motivated by intentional refusal of Lutheran and Advocate to provide effective means for significant number of patients with lupus or "older women" resulted mainly from fertility centers where Lutheran RE specialist were working [such as FCI and Karande]. There was relation between age and fertility bias of defendants. Defendants' bias in fertility induced willful discrimination based on disability, age, national origin, falsely treated in same ways.

254. Defendants actions or omissions were willful and wanton conduct 735ILCS10/2-202; Defendants acted maliciously and without probable cause 745ILCS10/2-208.

**Age discrimination**

255. Waivio was solely intentionally discriminated based on age because her age over 35 required "high risk doctor" while Lutheran and Advocate had only 4 doctors availability. Age discrimination was induced by refusal of adequate resources, as number of 4 high risk doctor was insufficient to respond to Lutheran high demand in "fertility".

256. Waivio age, or her national origin was falsely interpreted as disability, impairment, similar situated to lupus disability or falsely related to "fertility bias".

54

257. Intentional discrimination was supported by refusal of Advocate to acknowledge to Waivio real condition because Waivio could have look for other medical providers, implies defendants were interested Waivio to be under their care as to cover up Rapisarda and lupus disability.

258. Discrimination based on age or lupus were cover up of invalid Gonal-F, therefore of "fertility bias"; discrimination based lupus, age, national origin were induced "fertility bias".

259. in time of plaintiff's pregnancy discrimination against Waivio based on lupus or age, or national origin was by refusal completely to provide medical services, because lupus by itself was discriminator, was termination Waivio pregnancy absent medical care; shortly they done nothing but intentionally suppress any possibility of treatment of lupus including refusal to inform Waivio, including progesterone as willfully to induce termination by "lupus", when in essence it was willful malicious complete medical services of defendants..

260. after baby death defendants discriminated based on lupus, age, national origin by willfully injuring Waivio as to deter her ability to get naturally pregnant, in essence deterred solution to lupus, discriminated solely based on lupus.

261. While discrimination may appear different in time of pregnancy and after pregnancy essentially defendants discriminatory practice is the same only that in "pregnancy time" lupus provide visible injury, while after pregnancy defendants had to actively intentionally act toinjury.

262. Shortly discrimination in time of pregnancy is falsely "hidden" behind "lupus" while after pregnancy unlawful discrimination is visible in its real dimension.

263. After death of Waivio child defendants refused complete D&C essentially they deterred Waivio ability to become pregnant naturally, essentially they discriminated based on lupus, deterring means of solution to lupus. Furthermore they introduce delay in medical treatment which points to age discrimination as age was used cover up of Gonal-F invalid practices;

264. Pesch intentionally harmed Waivio uterus with 70% essentially he deter Waivio ability to become pregnant by natural means which is discrimination based on lupus, he eliminate solution to lupus. Furthermore they introduce delay in medical treatment which points to age discrimination as age was used cover up of Gonal-F invalid practices; Picture which Pesch gave to Waivio after surgery showed visible traces ofuterus been aggresed, essentially Pesch willfully discriminated based on disability or age or national origin.

265. Karande intentionally burned Waivio uterus because similar to Pesch, he eliminates possibility of natural pregnancy which was solution to lupus, in essence he discriminated based on lupus, deterring means of solution to lupus. Furthermore Karande introduced delay in medical treatment which points to age discrimination as age was used as cover up of Gonal-F invalid practices; Picture which he gave to Waivio after surgery showed visible traces of burn, essentially Karande willfully discriminated based on disability or age or national origin.

266. Age discrimination is supported by intentional induce of delays which are against natural pregnancy which in essence are supporting defendants' practices. Age is seen as supporting of defendants practices and as cover up therefore Waivio is discriminated based on age by willful delaying medical recovery in essence willfully increasing Waivio age, deterring natural pregnancy deterring Waivio's federal and constitutional rights. Defendants practices is correlated, based, willfully related to age and increase in Waivio age.

WHEREFORE RODICA WAIVIO, respectfully requests that this court grant judgment in her favor and against Defendants, and grant Plaintiff all relief deemed appropriate under the law.


**Count V Discrimination based on national origin gender  Title VII, TileVI, Section 1981, Section 1983;  Illinois human Rights ; 42USC300, 42USC300(e)(b)**

Lupus transaction [all defendants except counselors]

1-266. Plaintiff realleges paragraphs 1-266 of Count IV as paragraphs 1-266 of present CountV

267. Plaintiff belives that medicaly there is relationship or false relationship between Lupus and natioanl origin/ethicity; lupus is realted or falsely related directly or indirectly in some way to national origin, ethnicity as proved by general parctice. Doctors related lupus with ethnicity; all doctors made "cystic Fibrosis" which is related to "cromosomial matters" and ethnicity.

**268. Unalwful discrimination under Title VII** defendants did not comply with safe harbor provisions TitleVII/ImmigrationAct; after Gonal-F tretment , defendants segregated Waivio from others at Jasenof office; defendants refused to give time Waivio; they did not follow step by step clear procedure;they did not verfy resons; they did not inform Waivio or aknowlage matters; they did not provide 60 days; they did not made positive steps for mediation or to solve; They did not support plaintiff in any way while there were avilable solutions; Defendants completely denied

plaintiff's medical services. Their deciosns were done before 60 days of ttetment as record is empty without signature.

269.  Waivio complied about pain and Waivio requested specialized medical treatment corespondent to specific situation; Rapisarda FCI were aware of causes of Waivio complains from past experience with other patients, but refused treatment. Blood work was made available by Waivio; arguments were made available to defendant, they had means to know about real condition of Waivio. Defendants covered up Waivio real diagnosis.

**Discrimination based on national origin**

270.    Defendants had a practice of denial medical service or given bad service, discrimination against, minorities or Romanians; patients with same national origin to plaintiff, or minorities, were not retained by Defendants; they suffered adverse actions, depravation of rights, benefits, ended in adverse actions.

271.    The national origin was a motivating factor of the discriminatory practice, in medical services; Hispanic, Indians, Americans people were preferred by Rapisarda and Jasenof instead of Romanians or patients with minority national origin or minorities, while the plaintiff's satisfied all requirements and was qualified to receive medical services.

272.    Defendants granted preferential treatment to groups based on race, national origin of the groups on account of the imbalance which existed with respect to the total number of persons of race, color, or national origin treated by defendants in comparison with the total number or percentage of persons of such race, color, or national origin in existent communities (in violation of Title VII, 42 USC 2000e-2(j) Title VI). This motivated the discrimination, the disfavor treatment, in medical services, against underrepresented protected national, ethic groups based solely on the race, national origin conforming to 29 CFR 1607.11.

273.    Defendants had lack of race, national origin diversity among patients or medical personnel. There was racial, national origin imbalance, motivated by defendants' preferential treatment, in education and employment, based on race, national origin; the Romanians were underrepresented and disfavored based on their national origin, when other national, racial groups [Hispanic] overwhelmingly overrepresented were favorably preferred based on their race or national origin.

274.    Defendants had national origin or racial preference and people of specific nationalities, or racial groups were favored based on their national origin, but other national groups were disliked and disfavored based on their national origin.

275. Lorena is Hispanic person how received medical care from defendants and she gave birth to child. Plaintiff also saw in Sept 2006 many Hispanic people with children treated from Jasenof. Plaintiff knows Indian people who gave birth to girl in Sept 2006 treated by Advocate office from Lutheran. Plaintiff saw Chinese woman who gave birth to child about the time of events  ; Indians Hispanics Chinese were preferred nationalities they were treated effectively and they enjoyed children.

276. At time of events there were 4 high risk doctors at Lutheran [they hired one more in 2007] from which 3 were American origin and Iannuci was Hispanic. Defendants had lack of national origin diversity in medical personnel for high risk.

277.    Plaintiff was denied the benefits of medical services, solely because of her Romanian origin. Other patient, Romanians were denied benefits of medical services, or suffered other adverse actions, while patients (non Romanians) were allowed to enjoy benefits medical services that were denied to Plaintiff and other similar situated. Hispanic was preferred to Romanians.

278.    Defendants refused or failed to even attempt understand Plaintiff's cultural differences and completely refused to accept the plaintiff's culture. Defendants' made fun of plaintiff.

279.    The plaintiff's lack of American experience was an additional motivating factor of the defendants' abuse, exploitation and humiliation against plaintiff.

280.    The Romanian culture has tradition in respect to equal rights. Defendants disliked her ethnicity because it was opposite to their false interests [unrelated to issues at question] and discriminatory practice.

281.    Defendants refused or failed to make positive efforts in reaching at a level of trust, or friendship, beyond the language or cultural differences. The relation between the plaintiff and the defendants was cold, distant, and formal, therefore subject to national origin factors.

282. Defendants' violation of federal or state laws as described was an actual cause or proximate cause to plaintiff's losses, injury.

283.    The relationship between the plaintiff and defendants was a contractual relationship..

284.    Plaintiff belongs to "Romanian ethnicity", an ethnicity traditionally subject to discrimination; the disparate treatment against the plaintiff had racial character on the grounds of the plaintiff's ethnicity. defendants had traditional discrimination against minorities, Romanians.

285.    The plaintiff was subject to a constructive discharge based on her ethnicity. The defendants acted with either actual knowledge of or reckless disregards for the violation of the plaintiff's federal right under Section 1981.

286.    Therefore, the plaintiff's ethnicity was a motivating factor of unlawful discrimination against plaintiff.

287.    Defendants' discriminatory practice against the plaintiff's ethnicity violated her federal right under Sect 1981, as protected under Section 1983; the violation was the cause to her damages injuries.

288.  Other persons with lupus who were hispanic, or indiens, or Americans received medical treatments from defendant for specific siltation similar to Waivio while defendants refused any treatment to Waivio.

289.  There was valid treatment for lupus, thrombophilia but defendants refused such treatment.

290.  Defendants actions or omissions were willful and wanton conduct 735ILCS10/2-202; Defendants  acted maliciously and without probable cause 745ILCS10/2-208.

291.  Defendants violations of federal and state laws presented are cause or proximal cause of injury, damages to Waivio; defendants are liable and responsible for under state and federal laws.

WHEREFORE RODICA WAIVIO, respectfully requests that this court grant judgment in her favor and against Defendants, and grant Plaintiff all relief deemed appropriate under the law.

### Count VI Misconduct in medical services, US Constitution, Tort of Retaliation, 42USC1985(2), 42USC1985(3); 42USC300, 42USC300(e)(b)

Lupus transaction [all defendants except counselors]

1-291 Plaintiff repeats and realleges paragraphs 1 through 86 as paragraphs 1-86 of this Count II.

292.  Defendants actions or omissions were willful and wanton conduct 735ILCS10/2-202; Defendants  acted maliciously and without probable cause 745ILCS10/2-208.

293. Pursuant Rule 10(c) Plaintiff repeats and realeges "Prima Facie case for Tort".

294. The plaintiff claims the Defendants' actions were misconduct similar situated to (720 ILCS 5/33-33)

   a. intentionally or recklessly fails to perform any duty as required by law, practice, rules agreements

   b) knowingly performs an act which he knows he is forbidden by law to perform; or

   c) with intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority

295. Defendants' adverse actions followed the plaintiff's opposition and plaintiff's protected actions, federal court activity within such a period of time to raise an inference of retaliation.

296. The plaintiff claims the following in the present count

A. Plaintiff opposed unlawful discrimination and participated in protected activities, and plaintiff had federal and state court procedure pending;.

B. Defendants acted adversely against plaintiff as described in this count;

C. There is a relationship between the plaintiff's involvement in protected activities, opposition and federal or state court participation and defendants' adverse actions against the plaintiff; this is proved by the short period of time between the plaintiff's protected activities and the adverse actions, or by defendants' complete refusal of medical services refusal to plaintiff's requests and specific necessities.

D. Plaintiff suffered substantial damages as a result of the actions described;

Defendants' practice was the legal and proximate cause of injury, losses, and damages to the plaintiff.

297.    The plaintiff proves the following in the present count:

a. Defendants' agents were required to obey the state and federal laws; they owed a duty of lawful and proper conduct, trustful actions;

b. Defendants' violated the state laws as described in this count

c. Defendants' violation was legal or proximate cause of injury losses to plaintiff,

d. Plaintiff suffered substantial damages as a result of the Defendants 'actions

298. Defendants' intended to deprive the plaintiff of her rights, among other ways, by retaliation,

discrimination based on national origin inappropriate conduct, activates of deceit, inappropriate

actions designated to deprive the plaintiff of her rights.

299. The facts described in this count proved the violation of state or federal laws actionable

under 45USC1985, Tort of Intent, Tort of Retaliation; these violations were the legal and

proximate cause of injury to the plaintiff, and the plaintiff suffered damages as a result of the

Defendants' actions; plaintiff's depravation legal rights or adverse damages were caused.

300 Defendents' actions appears crime they have "key characteristics criminal sanctions"see

record. Unborn.Victims.Act.2004,18USC1841,palintiff&baby victime defendents' actions

18USC242, based on plaintiff's national origin, Pursaunt.to.18USC242(b)plaintiff does not need to prove intent or that defendents' counsel had knowlage that death of child will result Defendants had continue repeated patern practice, malicious actions therefor custom 18USC242 Defendants actions are criminal pursuant.18USC§242.Deprivation rights defendants willfully subjected Waivio deprivation rights reason color race  Record proves defendants'actions are criminal essence therefor defendants did not comply with safe harbor provisions. Waivio is entitled to maximum punitive damages because defendents parctice share key charactertics oif criminal sactions see Mastering.Diversity.pag162 "punitive damage share key charactheritics criminal sanctions".

301. Plaintiff alleges defendants violated Section 42USC1985(2) first section

302. Defendants and other persons conspired to deter, by force, intimidation, or threat, Waivio as party and witness in US District court case 04-C-3545 or case 06-7189
• from attending such court,
• or from testifying to any matter pending therein, freely, fully, and truthfully,
• or to injure such party or witness in his person or property on account of his having so attended or testifying

303. Plaintiff pregnancy was included in procedure of 04-C-3545 as Waivio informed court, provide picture see record 04-C-3545 and 06-7189. Pregnancy was testimony of Waivio, defendants refusal of services was deter from Waivio testifying to court about their practice.

304. Case 04-C-3545 was about UIC counselors causing baby death in 2005; there is relationship between defendants actions and record case 04-C-3545; defendants interests were related to Waivio federal procedure.

305 Pregnancy induced by Rapisarda deterred Waivio participation in 04-C-3545 therefor defendants had interest supporting UIC, they induced Waivio pregnancy, fatal disease and dangerous health conditions as they were interested to receive employment with UIC or for different advantages.

306. Waivio alleges claim for violation of § 1985(3); plaintiff allege four elements:
(1) there was a conspiracy;
(2) for the purpose of depriving, either directly or indirectly, Waivio or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
(3) an act in furtherance of the conspiracy;  all facts; refusal inform Waivio about thrombophilia, refusal provide treatment;

(4) whereby Waivio was injured in her person or property or deprived of any right or privilege of citizen of the United States. See United Brotherhood of Carpenters and Joiners of Am. v. Scott Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, , 77 L .Ed. 2d 1049 (1983).

307. Defendants actions or omissions were willful and wanton conduct 735ILCS10/2-202;

Defendants acted maliciously and without probable cause 745ILCS10/2-208.

Tort of Retaliation
a. Waivio had participated in protected action in federal US Courts; defendants had knowledge of Waivio's protected participation and her testimony to US Courts
b. Waivio suffered adverse actions in retaliation from defendants and their counselors
c. There is a relation between Waivio's protected participation and defendants' adverse actions
Plaintiff believes that Waivio would have not been subject to adverse actions in absence of

protected activities.

308 Actions of defendants were discriminatory is proved by:

1. defendants hostility toward matters underlying plaintiff
2. defendants had knowledge of protected actions
3. desperate treatment; plaintiff was treated severely aggressively compared to others
4. inadequate investigation of medical matters, short time for decision
5. the magnitude of alleged offense
6. Plaintiff was treated severely, completely refused services while others received services
5 acts of disloyalty against plaintiff for engaging in protected actions.

309. Defendants' intended to deprive plaintiff of her rights, among other ways, by retaliation,

discrimination based on national origin inappropriate conduct, activates of deceit, inappropriate

actions designated to deprive the plaintiff of her rights.

WHEREFORE RODICA WAIVIO, respectfully requests that this court grant judgment in her

favor and against Defendants, and grant Plaintiff all relief deemed appropriate under the law.

**Count VII Misconduct; ADA, TitleVII, TitleVI, Rehabilitation Act, Age Discrimination Employment; Age discrimination Act; Section 1981, Section 1983; Abuse of Process; Obstruction of justice; Conspiracy and Retaliation 42USC1985(2), 42USC1985(3) Tort of Retaliation; Retaliation in violation of State and Federal Laws; Legal Malpractice, Tort of Deceit; Tort Concealment Tort of Misrepresentation; Tort of Fraud; 42USC300, 42USC300(e)(b) (court environment) all defendants all counselors all individual counselors**

1-309 Plaintiff repeats and realleges paragraphs 1-309 of Count VI as paragraphs 1-309 of this CountVII

310. Defendants and their counselors have a contractual relationship; they acted with malice and without probable cause with reckless disregards to Waivio federal and constitutional rights.

311. Defendants and counselors pursue unlawful discriminatory of Rapisarda/Advocate/Lutheran/ Karande. Their liability appears under same laws under which Advocate, FCI, Karande and Lutheran are liable for unlawful discrimination. Dayal Cimmenera Filipovic means that counselors are pursuing discriminatory practices of defendants which they represent rather than federal "nexus". Actions of "uninitiated attorneys" are interpreted as "pursue of Advocate Lutheran unlawful discrimination".

312. Uninitiated Counselors are discriminating plaintiff based on her protected characteristics national origin, disability [lupus], age, protected actions by treating severely Waivio comparative to others not from protected Waivio class or non participants in protected actions or federal court procedure.

313. Record of case shows uninitiated counselors make remarks falsely related to national origin, disability, age, protected actions, while they do not have same "conduct" with respect to others not from plaintiff's protected class; Shortly Dayal made false complains about Waivio but they did not complain about others defendants or other counselors; similar Nielsen treated severely Waivio in his "motion dismiss 02/21/08" but he treated nicely other defendants and their counselors when he provided "help" to them as his motion helps others in court procedure. Shortly Nilsent treated severely Waivio but treated nicely, helpful all others, essentially proving unlawful discrimination against Waivio; he refused to allow time to Waivio to amend complaint but he gave time or failed to contest all other defendants' requests for extension of time; he treated severely Waivio but nicely others; he appears"pursue unlawful discrimination Advocate".

314. Facts in court support allegations of unlawful discrimination in  medical services as defendants appears to demonstrates their practice.

315. Fact that Cimmenera and Filipovic both have less 35 years while Dayal has 39-40 years means defendants discriminates based on age, Advocate supports "older women", while

Rapisarda cover up his interest for "older women"[this affirms allegations in complaint]. Young age of FCI's attorneys represents evidence of cover up of age discrimination;

316. Cimmenera, Michael Vittori, and withdrawn Filipovic are unable to provide personal evidence of "Goanl-F treatment" [plaintiff denies any affirmation related to Gonal-F which are not supported by affidavit of experimented Gonal-F treated person]. Same argument is for Karande counselors for any pleadings.

317. Karande motion dismiss 02/21/08 demanded Waivio affidavit in essence affirmed that defendants do not deny Waivio allegations about invalid Gonal-F because there is no "medical experts" in Gonal-F and because they refuse to provide testimony of persons treated with Goanl-F; shortly all experiences with Gonal-F which they know were disaster, and there is no denial of Waivio allegations of Goanl-F disaster as invalid medical treatment; implies they affirm Gonal-F is invalid medically; essentially Nielsen "motion of dismiss 02/21/08" declaring "complaint is an allegation of medical malpractice", means defendants affirm "Gonal-F" is invalid medically.

318. Plaintiff believes Dayal has no experience of Goanl-F therefore she is unable to deny allegations from complaint with respect to Gonal-F. Dayal shows that Advocate has interest in "older women", but Dayal was treated gently comparative to Waivio which proves discrimination based on lupus, national origin and protected actions.

319. Present settings of court shows allegations of complaint are affirmed with respect to Goanl-F treatment absent any affidavit of person treated with Gonal-F. Medical expertise is unable to deny Waivio allegations of Gonal-F because Gonal-F is relative new product, in other words there is no "history of Gonal-F", therefore there is no "medical experts" for such matters. Matter must be denied only by "within the grasp of ordinary Gonal-F treated person", and court setting as up today has no means to deny Waivio allegations that Goanl-F is medically invalid.

320. This is court environment which includes matters of present federal procedure or actions in anticipation to court transaction. This court environment is divided in two transactions: first transaction which pursue "unlawful discrimination of defendants" by uninitiated attorneys Dayal, Cimmenera, Filipovic and second transaction of experienced attorneys Nilsen [and hidden similar situated attorneys or legal decision makers] which appears liable under 42USC1985 and similar situated.

321. Pursuant Rule 10(c) Plaintiff repeats and realeges "Prima Facie case for Tort" with respect to this transaction and to these defendants and facts therein.

322. The defendants counselors intended to deprive plaintiff of legal rights based on fact that plaintiff has lack of representation in federal court in both cases with UIC and with Advocate; counselors abuse and exploit plaintiff's legal rights and abuses judicial system; counselors actions are abuse of process, misconduct see record of present case as evidence in support.

323. Counselors willfully induced present action with purposes to abuse the process and abuse the plaintiff lack of representation in federal court and to induce benefits advantages to defendants.

324. While this is different transaction, defendants in present transactions appears to "pursue Rapisarda Advocate discriminatory practice", they are cover up or disguise; this actions is similar to class action,  with common question of law, therefore general principles of class actions are applicable.

325. defendants anticipated court transaction and acted under legal tactical strategy [willful and wanton conduct; acting maliciously without probable cause]which was foreseeable that will cause harm, injury to Waivio. Defendants and their attorneys are liable under federal state laws Tort of Legal Malpractice because they acted with malice and without probable cause.

326. Waivio had served complaint of present actions by fax and hand delivery because of lack of time while defendants proved to waive all rights regarding services, essentially proving that they have interest in present action motivating allegations pursuant 42USC1985(2).

327. Karande brought a motion to dismiss on 02/21/08 which was abuse of process; he demanded affidavit designated for false purposes. Nilsen made false allegations, misinforming court. His motion set up the stage for abuse of process and misconduct.

328. Advocate is misrepresented by Anjaly Dayal, attorney with no federal experience appearing in court as misrepresentation. Daiyal is lying to court about real attorney of Advocate; she is covering up the real person writing pleadings in prsent case in violation of Rule 11 FRCP; Practice of Advocate shows "legal tactical strategy" with full knowledge of federal laws, while Anjaly has no federal experience. Anjaly is misrepresenting others in this legal actions; Waivio has action of legal misrepresentation, tort of deceit, defendants lie to court.

65

329. Court representation of Advocate is similar to ETS representation in 04-C-3545 by Grocsh when it was proved that Noel Brennan was real ETS attorney; shortly Advocate follows the tactical legal strategy of previous parties in 04-C-3545 and 06C-7189 Waivio v. UIC/ETS. This motivates allegations of conspiracy for violation of Waivio civil rights and retaliation in violation on 42USC1985(2) and 42USC1985(3). Present case shows relation with previous action, as defendants appears to pursue similar situated illegal and unlawful discrimination, severe treatment Same with Joanne Ciminera, uninitiated attorney appears representing parties who proved legal tactical strategy in full knowledge of federal procedure and federal laws; Ciminera proves to misrepresent FCI, real attorney is concealed; defendants are lying to court misinforming court about the real identity of attorneys representing legal pleadings in this court; this set up the stage for conspiracy and disguise in violation of Waivio legal rights and equal protection under law pursuant 42USC1985(2) and 42USC1985(3).

330. Defendants are in violation of Rule 11(a) which requires pleadings to be signed by attorney of record while attorneys for Advocate and FCI are not relay the real attorney writing pleadings.

331. Ciminera and Anjaly are misrepresenting parties and their pleadings are perjury pursuant 18USC1621, 28USC1746 "willful misrepresentation and fraud"; Pursuant Costello v. US Anjali and Ciminera are "willful misrepresentation and fraud"; Real attorney in present case are presenting pleadings with false signature, therefore perjury and violation of Rule 11(a) "pleadings needs to be signed by attorney of record".

332. Ciminera, Anjaly are presenting pleadings which are not their own conception but they are written by other attorneys who refuses to inform the court about their real identity; Ciminera and Anjaly signature on pleadings in present case are perjury, signature is false, they are presenting pleadings of other attorneys and Ciminera and Anjaly signature on these pleadings are false.

333. court procedure is "gist of conspiracy", defendants counselors conspires, go disguise to deprive Waivio of rights to equal protection or induce injury her person or her property .

334. On 03/19/08 FCI withdraw its attorney Jamie Filipovic; this introduce evidence for Waivio as defendants appears to conspires and go disguise against Waivio's federal rights. They make arrangements which supports allegations.

335. Till today there is no real knowledge who is the Advocate's real attorney and who is FCI's real attorneys. This creates burden to court and induces misconduct as defendants' counselors refuses to identify themselves. This is abuse of process.

336. Attorneys in present case have conduct similar to conduct of counselors for ETS and UIC in 04-C-3545; counselors abuses the process by false pleadings, pleadings in flagrant bad faith designated to burden the process. They induce record of delay, injury to Waivio body and contumacious conduct in medical services for Waivio.

337. Activity of attorneys in present case is similar situated to Dotson in Dotson v. Bravo 321 F3d 663, 667 (7th cir 2003), Barnhill in Barnhill v. US 11F3d 1360, 1367 (7th Cir 1993) see Norgla order Aug 31, 2006 in 04-C-3545.

338. Defendants present pleadings in flagrant bad faith, false statements, record of delay, contumacious conduct.

339. Pursuant to Dotson v. Bravo 321 F3d 663 667 (7th Cir 2003) "court should consider the egregiousness of the conduct of defendants and their counselors in question in relation with all aspects of the judicial system".

340. This court should sanction defendants and their counselors for abuse of process by introducing judgment for Plaintiff against defendants as proved there is no less drastic alternative for defendants. This Hon Court should follow the court of Hon Judge Norgle and Kendall as to deter defendants and their counselors misconduct and abuse of process.

341. Defendants actions were conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." See Griffin

342. Defendants actions were severe treatment comparative to others not from protected class; others not participating in protected actions were treated better.

343. Tort of Retaliation
a. Waivio had participated in protected action in federal US Courts; defendants had knowledge of Waivio's protected participation and her testimony to US Courts
b. Waivio suffered adverse actions in retaliation from defendants and their counselors
c. There is a relation between Waivio's protected participation and defendants' adverse actions Plaintiff believes that Waivio would have not been subject to adverse actions in absence of protected activities.

344 Pursuant 42USC1985(3) plaintiff alleges four elements:

(1) there is a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the
conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. See United Brotherhood of Carpenters and Joiners of Am. v. Scott Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352,
, 77 L .Ed. 2d 1049 (1983)

345. Pursuant 42 U.S.C. § 1985(3), a plaintiff alleges : (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, Waivio or her class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Id. at 828-29; Griffin Griffin, 403 , U.S. at 102-103.

*346.*  Defendants acted with purpose to obstruct justice and conspired to deter Waivio testimony *Pursuant Kush v. Rutledge* 460 U.S. 719, 103 S.Ct. 1483 (1983),
Defendants actions were motivated by intent to deprive Waivio of the equal protection of law.

347. Plaintiff alleges that defendants' conspiracy was successful as Waivio suffered injury, damages, lost of children

**Tort of Deceit Misrepresentation, Concealment Legal Malpractice**
348. The plaintiff claims the following in the present count:

a. Defendants used false, deceptive statements material to the facts and actions against plaintiff; these were done intentionally with purpose to personal gain or to hide information;
b. Plaintiff trusted all these, she relayed on Defendants' dishonest matters, or misrepresentation, or she was affected by Defendants' misrepresentation because others relied on Defendants' misrepresentation.
c. Defendants' deceive practice or misrepresentation was the legal and proximate cause of injury, losses, and damages to the plaintiff.
d. Plaintiff suffered substantial damages as a result of the Defendants' misrepresentation was the legal and proximate cause of injury, losses, and damages to the plaintiff.
349.     The plaintiff proves the following in the present count:

a. Defendants and counselors were required to obey state and federal laws; they owed a duty of lawful and proper conduct, trustful actions;
b.  Defendants' violated state/federal laws as described in this count
c.  Defendants' violation was legal or proximate cause of injury losses to plaintiff,
d.  Plaintiff suffered substantial damages as a result of the Defendants 'actions
350. Defendants intended maliciously to deprive the plaintiff of her rights, among other ways, by

retaliation, discrimination based on national origin, disability, inappropriate conduct, activities of

deceit, inappropriate actions designated to deprive plaintiff of her  rights.

351. Defendants actions were with malice without probable cause (745 ILCS10/2-208) or willful and wanton conduct (745ILCS10/2-2002) against plaintiff's right or against her person.

352. Defendants actions were willful misconduct similar situated to (720 ILCS 5/33-33)
   a) intentionally or recklessly fails to perform any duty as required by law, practice, rules agreements
   b) knowingly performs an act which he knows he is forbidden by law to perform; or
   c) with intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority
   d) solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law

WHEREFORE RODICA WAIVIO, respectfully requests that this court grant judgment in her favor and against Defendants, and grant Plaintiff all relief deemed appropriate under the law.

WHEREFORE, plaintiff, in her complaint, prays that this Hon. Court grant following relief:

   (a)     Declare defendants did not comply with safe harbor provisions, safety requirements, procedure of safety and prevention of fatal disease, procedure of safety and prevention of death for mother and unborn child.

   (b)     Order manufacturers medication to introduce Explicit Warning for "Lupus" as fatal incurable life time disability; Order manufacturers to introduce Explicit Warning for "premature birth" and high risk doctor in assistance pregnancy and delivery or labor; Order explicit warning "baby aspirin", levanox heparin are treatment for lupus.

   (c.)    Declare that defendants in present case proved flagrant violation of consent of patient, prohibit defendants from interaction in any way with consent of patient, and provide sanction for further violation.

   (d)     Declare defendants proved no real effort to obtain "natural conception"; Enforce defendants to provide viable means for "natural pregnancy" to Waivio and all other patients by providing diversification of medical treatment for natural conception. Enforce defendants to provide natural conception to Waivio by any means.

   (e)     Order fertility doctors and center to introduce explicit and clear warning with respect to Gonal-F and related medication  as for "Lupus" as fatal life incurable disability and "premature births" and required to all patients with this treatment to have high risk doctors.

69

(f)     Order to state and all other institutions to increase significantly number of high risk doctor to respond to existent fertility treatments, to develop treatments, specific accomodations and everything possible as to accommodate disabilities from fertility treatments..

(g)     Prohibit discrimination of pregnant women based on disabilities [induced by fertility treatment], prohibit scarification of children similar situated to Waivio's child.

(h)     Provide solution, restrictions, limitations, sanctions of any type to defendants as this court may find proper as to deter further similar conduct, deter others from similar situated conduct or practices as presented in this complaint.

(k)     Declare in present specific case of Waivio receiving "Gonal F Treatment" from FCI, Gonal-F is proved to induce lupus, fatal life disease related to Cancer, and it is proved invalid medical treatment, fatal erroneously medical procedure. Declare Gonal-F treatment as medical invalid, prohibit practices based on such medication; Court to provide solution as adequate based on court judgment and its rationality.

(l)     Declare that in present specific situation of Waivio receiving treatment from defendants "Lupus" as induced by Gonal-F is disability within provision of ADA and Rehabilitation Act and Waivio has right to federal protection and has rights to aids, accommodations as specifically needed, and protection from discrimination pursuant ADA.

(m)     Pursuant 42 USC1395dd(c)(a) Civil enforcement for personal harm Waivio is entitled to damages and equitable relief for her lost of child.

(n)     Prohibit discrimination national origin, age, disability, retaliation against Waivio.

(o)     Declare defendants had unlawful illegal practice against plaintiff in violation of federal and state laws and US Constitution;

(p)     Declared that defendants did not provide the request for natural conception as requested by plaintiff on 04/17/06; order defendants to satisfy such request; Enforce 42USC300 enforce defendants obligations of medical care preventive health safe harbor provisions Order Defendants provide full adequate medical services [which are medically valid and effective] to Plaintiff for all her life. Order defendants to provide natural means, including natural eggs, embryos, or provide monetary dollars for such treatments independently from defendants.

(r)     Permanently enjoin the Defendants and its agents, employees, successors, and all persons in active concert or participation as appropriate, from all illegal practice;

(s)     Provide sufficient remedial relief to make Waivio whole for the loss she has suffered as a result of the actions against her as alleged in this complaint; provide remedy as Waivio to have two children would have had absent discrimination.

(t)     Provide solution to defendants practice as to secure that practice is not repeated.

(v)     Provide all remedy available under law and all damages compensations any type.

(z)     Award compensatory damages for induced lupus from Gonal-F treatment as disability for all life. Plaintiff requests monthly compensation $2500 month [adjusted] for all life.

(y)     Award compensatory damages to Waivio for future pecuniary loses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and injuries incurred (direct, indirect) as a result of the discrimination against  as alleged in this complaint.

(w)     Award punitive damages to Waivio as a result of malice, wrongdoing or reckless indifference to Plaintiff's rights as alleged in this complaint.

(w1)    Plaintiff requests the suspension of the right of medical practice to John Rapisarda, Karande [if second alternative is affirmed] Lutheran Hospital, Ianucci, Pilate or injunctive order to enjoin them from unlawful and illegal activity against plaintiff including misinformation of others, perjury, false statements, activity of deceit, conspiracy, misconduct .

(w2)    Provide sanctions and punishment for defendants' agents as appropriate to Laws.

(w3)    Enforce defendants pursuant to 42USC300, 42USC300(e)(b) to provide full and viable adequate medical services and correct past matters.

(w4)    Pursuant 42CFR1004.20 provide sanctions, exclusion from practice Rapisarda

(w5)    Plaintiff requests defendants to provide treatment [or monetary equivalent] with natural healthy eggs, embryos  from other people, as to recover children lost.

Plaintiff prays for such additional relief as this Honorable Court deems just and proper.

## JURY DEMAND

The plaintiff hereby demands a trial by jury of all triable issues pursuant to Rule 38 of FRCP and Sect 102 of the Civil Rights Act of 1991, 42 U.S.C. Sec 1981a. Plaintiff hereby demands a jury determination of damages, and damages about $30000000 from FCI $70000000 from Advocate and $30000000 from Karande.

Date of submission        1325 Baldwin Court, Apt 2A,
04/25/ 2008                       Palatine, IL, 60074 Phone: 847-963-0231
Respectfully, Submitted by Dr. Rodica Waivio