IN THE UNITES STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODICA WAIVIO, | ) |
| | ) |
| Plaintiff | ) Case No. 06 C 7189 |
| | ) |
| | ) Judge Virginia M. Kendall |
| BOARD OF TRUSTEES UNIVERSITY OF ILLINOIS AT CHICAGO, SOL SHATZ, individual and director, PETER NELSON, individual and Head Dep., and ARNSTEIN & LEHR LLP | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodica Waivio ("Waivio" or "Plaintiff"), proceeding pro se, brings this action against the Board of Trustees University of Illinois at Chicago (the "Board" or "UIC"), Sol Shatz ("Shatz"), Peter Nelson ("Nelson"), and Arnstein & Lehr LLP ("Arnstein" and together with Shatz and Nelson, "Defendants"). Before the Court is Defendants' Motion to Strike and Dismiss pursuant to Rules 11 and 12(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' Motion under Rule 11 is Denied and Defendants' Motion to Dismiss under Rule 12(b) is Granted and the Amended Complaint is dismissed with prejudice.

### Background

On December 29, 2006, Waivio filed her initial complaint in this action. Less than four months earlier, Judge Norgle entered an order dismissing with prejudice several consolidated cases between Waivio, UIC and various other parties (including Shatz, Nelson and Arnstein) for Waivio's abuse of the legal process. Seemingly unsatisfied with the result she obtained from Judge Norgle, Waivio then brought this action, which seeks to resurrect the same disputes Waivio has already

raised – or could have raised – in previous cases.

Waivio's Amended Complaint in this case – like her "Corrected Second Short Amended Complaint" in Case No. 04 C 3545 before Judge Norgle – comprises a rambling, disjointed, and almost entirely incomprehensible 203 paragraphs related to UIC's decisions to dismiss her from its graduate program and to deny her financial support and employment with the university. Waivio claims that UIC and its agents discriminated against her based on her disability, national origin and gender. Specifically, Waivio alleges that in early 2004, UIC improperly denied her requests for financial support, denied her requests for employment, and denied her requests for letters of recommendation. Strangely, Waivio also alleges that Arnstein – UIC's *counsel* – retaliated against her for "plaintiff's protected actions and opposition of UIC [sic] unlawful practice" by threatening Waivio with "dismissal of cases." (Am. Cplt. at ¶ 41.) Waivio appears further to allege that UIC's counsel, in the person of Richard Hellerman, caused the death of her unborn child:

> [Hellerman] screamed vehemently at plaintiff, inflicted emotional distress, threatened plaintiff with adverse actions, psychologically coercing intimidating her to file response to UIC.motion.dismiss.July8-12,2005. He misinformed, deceived plaintiff. He was full of anger, bitterness, and hostility toward plaintiff. Plaintiff asked him to stop intimidating and threatening her. He instigated plaintiff and created hostile environment against plaintiff by inflicting emotional pain, sufferings. 15-20 days later plaintiffs' baby died.

*Id.* at ¶ 47.

Waivio seems to be particularly troubled by the manner in which UIC and its counsel treated Julie Grosch ("Grosch"), one of the lawyers representing defendant Educational Testing Services in Case No. 04 C 3545. Essentially, Waivio complains that UIC and its counsel treated Grosch more favorably than they treated Waivio, which Waivio characterizes as "Defendants' discriminatory practice." *Id.* at ¶ 58-59. Waivio alleges that UIC's counsel, in the persons of Hellerman and

2

Norman Jeddeloh ("Jeddeloh") "proved interested and vehemently interacted with Julie Grosch, (woman, American, non-disabled)" while "[Waivio] was treated very severely as defendant." *Id.* at ¶ 51, 54. In what the Court can only interpret as an allegation related to the motive for the disparate treatment as between herself and Grosch (because it is almost completely unintelligible), Waivio further alleges that:

> Plaintiff's female characteristics are opposite to Grosch; Grosch has long blond hear [sic], Waivio has short brown hear [sic], Grosch is tall, thin, Waivio is short, not thin; Grosch dressed "extravagant cloths," [sic] Waivio dressed uninteresting cloths; [sic] Grosch is beautiful, Waivio is uninteresting; Pursuant Rule 8(e)(2), Defendants misclassified plaintiff as opposite alternative Grosch, inappropriately related plaintiff's actions with their sexual interests. . . . Defendants have specific sexual interest, national origin, non disability, retaliation interests and plaintiff is [or plaintiff was wrongly classified as] related and opposite [regarded as impairment] to their sexual interest national origin, non disability retaliation e [sic] interests, therefore plaintiff was discriminated, refused and suffered adverse actions and effects based on her sexuality or other protected characteristics and protected actions.

*Id.* at ¶ 61-62. In addition to her allegations related to Defendants' "discriminatory practices," Waivio also includes similarly incomprehensible allegations related to "Plaintiff's Severe Treatment." Specifically, Waivio alleges that:

> Defendants refused to treat gently plaintiff. Plaintiff was inappropriately treated as criminal "kill you", unwelcome, unwanted ("physically restrain"), refused, rejected ("yelled obscenity"), defendants regarded plaintiff's protected characteristics as "impairment". Defendants regarded plaintiff's disability as threat, as impairment; Defendants harassed plaintiff based on her sexual characteristics, hostile environment against plaintiff. "Lie in bed", "attempted physically restrain" is insulting, "ashamed court publish". Intimidations are harsh words "kill", "obscenity", "admitted[false]", "abused court proceudre" or "fail to give notice", verbally harassed" "give harsh words", "crazy". Plaintiff's Romanian language is regarded as "obscenity", while plaintiff's disability is regarded as threats, or harsh words, while matters were evident misunderstandings. Plaintiff's genter is regarded as "uncommon" "unsolicited visits or wants plaintiff lie in bed or restrain him". Retaliation is related to plaintiff's state actions or discovery, opposition of unlawful discrimination, when defendants regarded Waivio's protected actions as "impairment", harassing, falsely claiming "abuse process", while barring her actions. All these negatively affected plaintiff's

3

performances or opportunities; plaintiff suffered substantive losses, state actions were dismissed.

*Id.* at ¶ 64-65.

Waivio's previous case – No. 04 C 3545 before Judge Norgle – sought relief from a variety of defendants for a large range of allegedly discriminatory practices related to Waivio's status as a student and an employee at UIC. Indeed, in her "Corrected Second Short Amended Complaint," filed in August 2005 in that case, Waivio alleged that "plaintiff was almost never evaluated based on her individual merit: she was almost never free from discrimination; the plaintiff was unlawfully discriminated against almost all the time in education and employment." (Exh. A to Mtn. to Dismiss at ¶ 57) (emphasis in original). Judge Norgle's Opinion dismissing that case also reflects that Waivio raised, in the course of litigating that case, her concerns about Grosch and the loss of her unborn child – allegedly as a result of the conduct of Jeddeloh and Hellerman. *Waivio v. Bd. of Trs.*, No. 04 C 3545, 04 C 2314, 04 C 6263, 05 C 2316, 2006 U.S. Dist. LEXIS 62126, *14-16 (N.D. Ill. Aug. 31, 2006).

## Discussion

I.  **Defendants' Motion Under Rule 11 is Denied.**

Fed. R. Civ. P. 11(c)(1)(A) requires that a "motion for sanctions under this rule shall be made separately from other motions or requests . . ." In filing a combined motion under Rules 11 and 12(b), Defendants have failed to comply with the procedural requirements of Rule 11(c)(1)(A). Moreover, the Court cannot ascertain from Defendants' papers whether they have complied with the "safe harbor" provision of Rule 11(c)(1)(A). That provision prohibits the filing of a motion for sanctions under Rule 11 "unless, within 21 days after service of the motion (or such other period as

the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." The plain language of Rule 11 requires the party filing a motion for sanctions under the rule to serve the motion upon the opposing party and allow 21 days before filing the motion with the court so that the party upon which the motion is served might have an opportunity to avoid sanctions by withdrawing the offending paper or allegation. In this case, the Defendants have not advised the Court whether they have provided Waivio with an opportunity to withdraw the Amended Complaint before bringing their Motion under Rule 11. Accordingly, because the Court cannot ascertain whether the Defendants have complied with the "safe harbor" provision set forth in Rule 11(c)(1)(A) and for their failure to comply with the requirement, under that same rule, that Rule 11 motions be brought separately from other motions, Defendants' Motion under Rule 11 is denied.

## II.   Waivio's Claims are Barred by the Doctrine of *Res Judicata*.

Defendants also move to dismiss the Amended Complaint, arguing that Waivio's claims are barred by the doctrine of *res judicata*. "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In reviewing a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint and must draw reasonable inferences from those facts in favor of the Plaintiff. *Richards v. Kiernan*, 461 F.3d 880, 882 (7th Cir. 2006). Moreover, the courts must "treat pro se litigants gently." *Lockhart v. Sullivan*, 925 F.2d 214, 216 (7th Cir 1991). However, to survive a motion to dismiss, a complaint – even one filed by a pro se litigant – must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). *Res judicata* is an affirmative defense, and

5

the plaintiff need not plead around affirmative defenses. *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); Fed. R. Civ. P. 8(c). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." *United States Gypsum*, 350 F.3d at 626.

"Under the doctrine of res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Highway J Citizens Group v. United States DOT*, 456 F.3d 734, 741 (7th Cir. 2006) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). *Res judicata* applies to bar a subsequent action when the following three requirements are met: (1) there is an identity of causes of action; (2) there is an identity of parties or their privies; and (3) a final judgment on the merits. *Id.* (citing *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002)). "[T]he doctrine of res judicata provides that, when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States*, 463 U.S. 110, 129-30 (1983) (internal quotation marks omitted).

    A.    As Between this Case and Waivio's Previous Lawsuit, there is an Identity of Causes of Action.

"A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action." *Brzostowski v. Laidlaw Waste Sys.*, 49 f.3d 337, 338-39 (7th Cir. 1995) (citing *Colonial Penn Life Ins. Co. v. Hallmark Ins. Admin., Inc.*, 31 F.3d 445, 447 (7th Cir. 1994)). That is to say, "[t]wo claims are one for the purposes of res judicata if they are

6

based on the same, or nearly the same, factual allegations." *Id.* (citing *Colonial Penn*, 31 F.3d at 447). Accordingly, "the question is not [just] whether the legal issues now presented were raised previously; rather, it is whether these matters '*could have been raised* in [the prior] action.'" *Highway J*, 456 F.3d at 743 (quoting *Brzostowski*, 49 F.3d at 338 (emphasis added by *Highway J* court)).

"To determine 'whether the plaintiff could have raised the [current] issue[s] in the first suit,' we employ a 'same transaction' test." *Id.* (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993)). "Under the 'same transaction' test, 'a cause of action consists of a single core of operative facts giving rise to a remedy. . . . Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost. A plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory.'" *Id.* (quoting *Allied-Signal*, 985 F.2d at 913).

In this case, Waivio argues that *res judicata* is no bar to her claims because she has presented new facts regarding her interactions with UIC and because, she claims, her current Complaint focuses on events that occurred from 2004 until the present, as opposed to her previous suit which, she argues, sought recovery for events occurring between 2001 and 2004. (Am. Cplt. 17-19.) Despite the fact that Waivio focuses on different facets of her experience at UIC in the two complaints, the discrimination she alleges in the operative complaint in this case – discrimination based on her national origin, gender, and disability – arises from the same "core of operative facts" discussed in the first complaint – the events and interactions that led to her eventual termination from UIC's graduate program. Waivio reviews her time at UIC in detail in both complaints. In both complaints she alleges that UIC denied her requests for accommodations for her disability; alleges

7

that her dismissal stems from her Romanian heritage and her gender; and alleges that UIC discriminated against her by not offering her employment or funding – presumably on the same impermissible bases. That Waivio may have failed to raise certain facts or legal theories in her previous action is of no moment; she could have and should have raised all claims relating to her student status and employment with UIC in her previous action.

    B.    There Exists an Identity of the Parties or their Privies as between this Case and Waivio's Previous Lawsuit.

In order for the doctrine of *res judicata* to apply as a bar to this action, there must be – as between this suit and Waivio's earlier lawsuit – an identity of the parties or their privies. While the parties to this suit are not nominally identical to the parties in Waivio's previous lawsuit (Arnstein was not a party to Judge Norgle's case), *res judicata* may still bar this action to the extent that the parties to this suit share a sufficiently close identity of interests with the parties to the earlier suit – and they do. *See People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 177 (7th Cir. 1995) (concluding that privity "is generally applied to those with a sufficiently close identity of interests"). Here, there can be no question that the defendants in this case share an identity of interest with the defendants to Waivio's previous lawsuit. UIC, Shatz and Nelson are parties to both suits. And Arnstein's interest in this suit is sufficiently identical to the individual lawyers who faced allegations in the previous suit. Jeddeloh and Hellerman – who practice law with the Arnstein firm – faced allegations in Waivio's earlier suit that they caused the death of Waivio's unborn child; those allegations have been resurrected in this suit, but are now levied against the firm and not the individual lawyers.

C. <u>Waivio's Previous Action Proceeded to a Final Judgment on the Merits.</u>

It is beyond question that Waivio's previous case proceeded to a final judgment on the merits. As a sanction for her abuse of the legal system, Judge Norgle dismissed that case with prejudice. *Waivio v. Bd. of Trs.*, No. 04 C 3545, 04 C 2314, 04 C 6263, 05 C 2316, 2006 U.S. Dist. LEXIS 62126 (N.D. Ill. Aug. 31, 2006). A dismissal with prejudice is a final judgment on the merits for the purposes of *res judicata*. *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir. 1971). Accordingly, Waivio's previous action – which was dismissed with prejudice as a sanction for abuse of the legal system – was disposed of via a final judgment on the merits; Waivio's arguments to the contrary are without merit.

### III. Even if Not Barred by *Res Judicata*, This Court Would Nevertheless Decline to Exercise Supplemental Jurisdiction Over Plaintiff's Claims Against Arnstein.

Even if Waivio had not already raised her claims against Arnstein in her previous lawsuit – which she did – this Court would still decline to exercise supplemental jurisdiction over those allegations which, if they amount to anything at all, are tort claims under Illinois law between non-diverse parties. Although Waivio appears to couch her allegations against Arnstein in terms of discrimination and retaliation, the Court fails to comprehend how Arnstein could be liable for any discrimination against Waivio in employment or education since Waivio does not allege that Arnstein is an educational institution nor does she allege that Arnstein ever employed Waivio or considered any application for employment submitted by Waivio. That is to say, taking Waivio's allegation that Arnstein treated Grosch favorably while treating Waivio poorly as true, that allegation does not state a claim for discrimination in employment or in education under federal law. As such, even if Waivio's allegations against Arnstein were new and could not have been addressed in the

earlier litigation, they would still amount to nothing more than tort claims under state law over which this Court would decline to exercise its supplemental jurisdiction. *Baker v. Kingsley*, 387 F.3d 649, 654, n.1 ("28 U.S.C. § 1367 . . . expressly authoriz[es] district courts to decline to exercise supplemental jurisdiction over a state-law claim if all claims within the court's original jurisdiction [have] been dismissed.").[1]

## Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is granted and Plaintiff's complaint is dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: October 18, 2007

---

[1] Because Waivio's claims against Arnstein appear to arise almost exclusively from the alleged "severe treatment" Waivio received from Hellerman and Jeddeloh during the course of the previous litigation, it is possible – if not probable – that those claims would also be barred by the litigation privilege under Illinois law. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (quoting from the underlying district court opinion) ("Illinois law recognizes an absolute litigation privilege which protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation. This requirement is not applied strictly, and the communication need not be confined to the specific issues involved in the litigation . . . The absolute privilege is afforded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies.")