## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

RODICA WAIVIO,               )
Plaintiff,               )   Case NO: 07-C-6690
        v.          )   HONORABLE JUDGE
ADVOCATE HEALTH CARE NETWORK,  )   RONALD A GUZMAN

ET ALL Defendants.

**NOTICE** *of Filing*

TO:
**Joanne Ciminera**
Wilson Elser
120 North LaSalle Street-Suit 2600
Chicago IL 60602
**Edward Nielsen**
One South Wacker Drive Suit 2500
Chicago IL 60606-4673
**Anjali Dayal**
20N Wacker Dr Suit 2520
Chicago IL 60606

**FILED**

JUN 2 3 2008 TC
6-23-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Please take note that on 07/03/08 Rodica Waivio presents Submission attached which is submitted to court and to all parties. Please take note that on  06/23/08    RODICA WAIVIO the Plaintiff submitted in the Dirksen Federal Building,219 S. Dearborn Street, Chicago IL 60604, **Pleadings** a copy of which is hereby served upon you.
Date 06/23/08
Plaintiff, Rodica Waivio
Address: 1325 Baldwin Court Apt 2A Palatine IL 60074
Phone: 847-963-0231

### CERTIFICATE OF SERVICE

The undersigned plaintiff, Rodica Waivio, being first sworn on oath, certifies that a true and correct copy of this notice and document referred to herein was served upon the above parties, by fax on 06/23/08    and e-mail
Date: 06/23/08
Rodica Waivio

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

JUN 2 3 2008 **TC**
Jun 23,2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

RODICA WAIVIO,                    )
Plaintiff,                        )   Case NO: 07-C-6690
          v.                      )   HONORABLE JUDGE
ADVOCATE HEALTH CARE NETWORK,     )   RONALD GUZMAN

ET ALL Defendants.

## RESPONSE TO EMERGENCY MOTIONS PROTECTIVE ORDER SANCTIONS ORDER 06/17/08 IS JUDGEMENT IN PLAINTIFF FAVOR; REQUEST FOR RECONSIDERATION ORDER 06/17/08

**NOW COMES** Plaintiff, RODICA WAIVIO, in Pro Se representation, and presents her

pleadings, respectfully states the followings:

Acknowledgement: Pursuant Rule 8(b) This document is unfinished; it is submitted upon

emergency as to satisfy any time limitations and may be interpreted by court as motion if court

finds it appropriate and if there is resonable ground or otherwise it is response to defendants

claims and reply in support of complaint. It will be presented 07/03/08 as response or motion and

plaintiff allows court to decide such situation as plaintiff is Pro Se without legal experience.

   1.  Order 06/13-17/08 established that Pursuant Rule 8(b) Court is unaware of

reasons to grant defendants requests except their intentional misconduct, false personal

interests etc. Order 06/13-17/08 was written based on defendants request made to court

which were not presented to Waivio, defendants actions are contumacious conduct.

   2.  Order 06/13-17/08 established that Defendants contacted court on 06/17/08 and

Presented issues of fact or law outside adversarial issues presented to Waivio therefore

Pursuant to Bank of Waunakee v. Rochester Cheese Sale Inc 906 F2d 1185, 1191 (7th Cir

1990) reconsideration is appropriate when "court ruled on matters outside adversarial

issues presented to Waivio". Defendants' actions are also violation of "Safe harbor

provisions" of Rule 11 the motions were not served separately and Waivio was not given

possibility to argue and make clarifications about. Pursuant to Waivio v. UIC 06-7189

Rule 11 can not be granted because defendants did not conform with safe harbor

provisions; fact that Rule 11 can not be granted means dismissal of case with prejudice or

any other sanction under Rule 11 can not be granted and also Waivio can not receive sanctions because such matters were not acknowledged and sufficient time was not given.

2. Starting with 02/22/07 Karande prescribed Waivio Metformin for one year; in Feb 2008 Waivio was unable to renew the Metformin prescription in spite of requests made to many doctors; On 06/17/08 Waivio requested Irina Goldvencht who was Waivio's primary doctor [Advocate Lutheran hospital employee] to give Metformin[1] as to emergent needs of medication for Lupus treatment[Waivio requested metformin also in Feb but she refused]. Shortly Order 06/13-17/08 is order granting Waivio prescription of medication METFORMIN as treatment for lupus; court established that EMTALA was violated by Northwestern Community Hospital between 06/11-12/08[2] while under "directions" of Irina Goldvenkht [Advocate Lutheran Hospital staff] and Karande. Court established defendants second time violated EMTALA, therefore court established a pattern and practice of dumping Waivio to emergency because of Lupus without treating Waivio or without making record of lupus.

3. Order 06/13-17/08 granting Waivio prescription of medication METFORMIN as treatment for lupus introduced Judgment for plaintiff against defendants for discrimination based on disability Lupus refusal of treatment of lupus and refusal of making records of lupus starting May 2006 till present; defendants dumped Waivio based on lupus and proved that **absent a court order they do not treat Waivio because of lupus**. Order 06/13-17/08 is order by which court ordered medication Metformin for Waivio on 06/17/08 as treatment of lupus. This means that defendants refused treatment and absent court order such treatment was not accessible to Waivio. This affirms

---

[1] EMTALA establishes that hospital has to make screening and diagnosis to best knowledge; however in June 2008 Waivio informed defendants and NCH of lupus and Waivio requested them screening for lupus; however hospital and defendants refused such screening and diagnosis or treatment; on 02/22/07 Karande prescribed one year of METFORMIN to Waivio which was recorded by Irina Goldvenkht and Advocate; on 06/17/08 plaintiff has realized that the medication Metformin is the treatment for lupus because lupus is class III hypersensitivity to swallowing similar situated with diabetics

[2] Plaintiff also informs court Waivio had second emergency room at NCH on 06/22/08 for pain and infection [Plaintiff stopped any medical service with Irina Goldventh plaintiff has no primary doctor today visits at emergency are expected to be often based on no medical services], this includes simptomes starting 06/16/08 mild infection, abdominal pain, [menstrual period started 06/19/08]. On 06/22/08 Waivio requested also screening for lupus as follow up of previous emergency but NCH refused such matter on false pretext. Plaintiff declares under oath that no doctor saw plaintiff on 06/22/08 just nurse practitioner and that on 06/12/08 Plaintiff requested to discus with doctor and no doctor come to discuss with plaintiff from morning 8:00am till 4:00pm; NCH said that some doctor come in morning at 6:00am however Waivio was sleeping therefore Plaintiff did not discuss with any doctor; screening and diagnosis were refused on both times. EMTALA services are denied to Waivio too.

complaint 04/25/08 Pursuant Thomas v. Metroflight (10th Cir 1987) "it is lupus discrimination to deny treatment to person with lupus who needs METFORMIN when tolerating such treatment with Metformin to non-lupus patients such as diabetics or people with polycystic ovaries"; "it is lupus discrimination to deny treatment to a person with lupus at emergency room hospital when tolerating more emergent treatments to others non-lupus patients";

4. Order 06/13-17/08 granting Waivio prescription of medication introduce judgment in plaintiff's favor on EMTALA Claims both in 2006 and 2008. This introduces judgment also on all claims of Tort of Medical Malpractice, Misrepresentation such as refusal of making adequate record misrepresenting facts, Tort of Concealment hiding the lupus and all others claims.

5. Order 06/13-17/08 granting Waivio prescription of medication also introduce judgment based on Gonal-F treatment in 2006 because it imply FCI and Rapisarda were interested in European people because they are classified as non-lupus patients, shortly Rapisarda was interest in fact that Waivio was uninitiated in fertility treatment as to false interest because of her Europen origin. Furthermore this introduce judgment on claims on Gonal-F transaction such as medical malpractice Tort of deceit concealment, misrepresentation, age discrimination violation of laws about human subject experimentation. This also introduces judgment on claims of court environment because defendants continue the practice.

6. Court affirmed that defendants deny treatment to Waivio based on lupus and imply that any other medical services are denied on similar situated premises, such as making records of lupus, or interacting with matters of lupus etc.

7. Order 06/13-17/08 is judgment in plaintiff's favor court affirmed discrimination based on lupus by defendants by refusal to treat lupus and by refusal to make records of such disability absent court order.

**Request**

8. Fact: based on order 06/13-17/08 Waivio received medication METFORMIN on June 17, 2008; plaintiff believes that order 06/13-17/08 is judgment for plaintiff against defendants. Plaintiff believes order 06/13-17/08 is for plaintiff against defendants.

9. Based on interpretation of above fact plaintiff is bringing this submission as

4

pursuant to US Constitution and federal laws presented in complaint 04/25/08 and pursuant to Bank of Waunakee v. Rochester Cheese Sale Inc 906 F2d 1185, 1191 (7th Cir 1990) responding to reconsider, request of reconsideration, motion of reconsideration, and Rules 59(e), Rule 59(a) any rule 59, and any suitable rule of this court including Rule 12(d) which requires fair opportunity to plaintiff party. Plaintiff requests court to establish judgment in plaintiff favor against defendants based on trial of facts presented and issues presented or any other suitable remedy.

**Short Argument**

Federal question raised by order 06/13-17/08 is:

Whether emergency medical condition of lupus could or can be soled by defendants and whether Waivio was entitled to EMTALA in September 2006 or in June 2008.

Order 06/13-17/08 established that Waivio is entitled to emergency and EMTALA are adequate claims and Metformin medication could and is treatment for emergent lupus conditions. Court affirmed EMTALA for Aug-Sept 2006 and for June 2008; Common question of law established order 06/13-17/08 as Court granted EMTALA to Waivio both in August, September 2006 and June 2008. Furthermore granting affirming EMTALA claims implies Defendants claims are pretext to unlawful discrimination because there was less drastic solution which was EMTAL; defendants had option to send Waivio to any emergency hospital room at any time. Defendants claims are refusal of medical services and injury to Waivio and severe treatment comparative to others imply they are unlawful discrimination.

**Situation in August –Sept 2006**

Waivio 2006 suffered of lupus induced by FCI Gonal-F treatment; evidence in support is:

1. Lupus coagulant positive see exhibits complaint 01/16/08
2. Thrombophilia uterus full with blood clots see submission in 04-C-3545 medical records in 2007 attesting blood clots of dimension 400CC at Northwestern Community Hospital.
3. Waivio body was swallow [characteristics of lupus[3]] see picture included from birth of child; Waivio was 186 pounds as admitted by defendants while Waivio was 155 pounds before Gonal-F treatment; over 30 pounds in 5 months.

---

[3] SLE is chronic <u>inflammatory</u> disease <u>type III hypersensitivity</u> response with potential <u>type II</u> involvement

4. Picture from Sept 17-18, 2006 shows Rodica Waivio's hand being swallow

 look at hand

5. Child[4] was suffering Lupus because skin was burned by rush induced by Lupus



---

[4] http://en.wikipedia.org/wiki/Lupus_erythematosus **Neonatal lupus**, babies born to women SLE, It is theorized maternal antibodies attack fetus, causing skin rash[see skin burned on fetus]



6. On 06/23/06 Jasenof performed Antibody screen which is ANA; fact is that ANA was positive for Waivio starting May 2006 till present implies Medical record made by Jasenof on 06/23/06 seen as exhibit of complaint 01/16/08 is false because there is no signature of Jasenof on sheet with Antibody screen; shortly JAsenof was fully informed by blood work and ultrasounds that Waivio had lupus; furthermore the body look of Waivio was corresponding to diabetes people which required treatment for swallowing shortly he refused any treatment to plaintiff while he falsely claimed that everything was normal. Evidently any doctor knows how to treat diabetes while Waivio was looking as diabetes patient; implies Jasenof had means of solution to Waivio in 2006, but he refused any solution.

7. As alleged in complaint and attested in record Jasenof was full aware of Lupus and blood clots starting 07/11/ 2006 (comp 37).

8. Waivio requested emergency to Jasenof and Torres but they7 lied to Waivio and they refused to transfer Waivio to Lutheran General hospital under the false claims that "there was no less drastic solution as pleaded by defendants which is false because there was METFORMIN there was treatment available.".

**Situation in June 2008**

9. Evidence from June 2008 is that body was swallow; On 06/02/08 Waivio visited rheumatology specialist Clerk who attested that Waivio has the legs swallow; Previous to this another hematologist performed blood work and established Lupus anticoagulant positive. Permanently Waivio had lupus anticoagulant positive and ANA positive.

10. Fact: on 02/22/07 Karande prescribed Waivio medication named METFORMIN

for one year without to make any blood work or any investigation; IN Feb 2008 Waivio had no more refill, so Waivio stopped Metformin in Feb 2008; Plaintiff visited Irina Goldvenht [Advocate Employee]and requested her metformin but she refused such medication.

11. Metformin is vital medication because stop body from swallowing which is main point of lupus, shortly Metformin treats lupus by stopping the swallowing of body. Lupus is class III hypersensitive to Swallowing

12. Fact that Waivio was without Metformin from Feb 2008 till June 2008 made Lupus to progress and this induced emergency conditions June 2008. Order 06/13-17/08 is cover up of defendants for inducing emergency conditions in June 2008 by refusal of medication Metformin and by refusal of medical record about lupus.

**Common Question of fact was:** whether there was/is treatment for Waivio:
Response is YES there was/is METFORMIN same medication as diabetics, Waivio situation was treatable; defendants had full knowledge of treatment and means as proved; defendants refused treatment in 2006, while in 2008 they requested a court order for it; Order 06/13-17/08 established METFORMIN was solution, and there was EMTALA, defendants had obligation to send plaintiff to emergency room hospital.

Order 06/17/08 affirmed Waivio claims and it is judgment in plaintiff favor against defendants; there existed Metformin which could have solved Waivio lupus medical condition in September 2006 while defendants sacrificed Waivio's child and refused medical services to Waivio. Similar situation had happen in 2008 because in feb 2008 Karande prescription expired and Waivio had no more medication; Court had answered the Waivio claims and there is no other response for these claims. Court granted EMTALA established Waivio has right to Emergency medical care to any office, defendants, defendants have treatment obligation.

**Discrimination based on disability Lupus, National Origin, age, gender**
Defendants claims are evidence of discrimination based on disability Lupus induced by Rapisarda, national origin, gender, age. Defendants claims from Motion for sanctions are false because Waivio requested medical record and because based on presentiment Waivio went to shortest place where Waivio cloud have obtained such medical record. Medical Record is a precondition of EMTALA because absent medical record doctors in

hospitals are unable to make diagnosis and stabilize such medical matters. Defendants claims are pretext to discrimination because as proved by record defendants did not provide information how Plaintiff can provide medical record or how plaintiff can transfer the record from their office. Absent record Waivio is unable to have medical treatment therefore violation of 42USC300, EMTALA. Till today Waivio did not receive copy of medical record from Karande and implies defendants refuse medical record and refuse such assistance. Defendants request of counselors without considering the gravity of medical matters imply that defendants completely and totally disregard necessities of medical care of Waivio.

**Complete Denial of Medical Services**

Defendants completely deny medical services to Waivio, both by refusal of treatment and by refusal of record; furthermore defendants conspire with others for perpetuation of unlawful discrimination by requesting to others to deny medical care to Waivio. Question raised is:

Who can provide medical services to Waivio.

Response is that about all medical providers in Waivio neighborhood are in Advocate system or are related with the business of Advocate, shortly there is communion of interests. Essential is that order 06/13-17/06 is actually an order of complete denial of medical services because defendants are in network.

Facts proved that any doctor where Waivio received medical services had become part of Advocate because Advocate harasses Waivio by following Waivio medical services. Irina Goldvekht was not part of Advocate system when she started treating Waivio; today she is part of system and she received benefits from Advocate in change for services. Defendants harasses Waivio by following Waivio and by inducing adverse actions designated to deny medical services or injury Waivio see facts on record.


**EMERGENCY is granted for Waivio; EMTALA was granted**

Medical care is under Hippocratic Oath described at

http://en.wikipedia.org/wiki/Hippocratic_Oath. There is no any reason [all defendants claims failed] which could motivate refusal of medical services in emergency matters while there is EMTALA. Order 06/17/08 Court declared that orders [court matters] are

not applicable in cases of emergency. Defendants claims failed for emergency, order 06/17/08 denied all defendants claims for EMTALA violation September 2006. Court granted Waivio claims on EMTALA against defendants. Defendants pretext for EMTALA violation failed and Waivio is entitled to remedy relief and damages for EMTALA Violation. There is judgment for Waivio against defendants on claims of EMTALA violation in September 2006. If defendants believed Waivio case 04-C-3545 was reason for refusal of EMTALA than they had obligation to contact "Emergency judge" [order 06/17/08 was established in emergency manner] and request order for Waivio; such contact was not done and imply defendants claims failed. There is no defense to EMTALA violation. Defendants admitted violation of EMTALA. Plaintiff and her husband attaches affidavit about EMTALA facts and request trail and decision judgment in plaintiff favor against defendants.

Furthermore dismissal of case of Waivio 04-C-3545 in 08/31/08 is not applicable because Waivio was in emergency conditions in August September 2006 as described. Court ruled against defendants court established violation of EMTALA. Court found defendants guilty of violation of EMALTA in September 2006 by death of Baby Elijah Moses Waivio. Fact that defendants brought an emergency motion when there was no emergency for defendants and made claims which were not emergency means that defendants were found guilty for violation of Waivio health by refusal to act in emergency situations. Matter from Kendall are not applicable because UIC discussed only claim preclusion in Kendall process therefore again not applicable because Kendall did not directly declared mattes when Waivio was in emergency medical necessities and again order do not apply.

**EMALTA as different and new cause of action**

Gatewood v. Washington Heathcare Corp., 933 F.2d 1037, 1041 (D.C. Cir. 1991) (finding EMTALA creates "a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat"). Jasenof refused EMALTA.

**Waivio entitled judgment in her favor based on trial of matters for EMALTA claims. Federal question raised by EMTALA      in Sept 06 lupus transaction is:**

S1: Whether Waivio was dumped by Advocate and Lutheran General Hospital in 2006

S2: Whether Waivio could have been treated by Metformin

S3: Whether Waivio was dumped by defendants in 2007-2008 continuing the practice

Pursuant Rule 8(e)(2) S1 and S2 are same; order 06/13-17/08 granting Metformin for Waivio implied court affirmed Waivio was dumped in 2006 by Lutheran General Hospital and Advocate; the granting of emergency claims means affirmation of claims of EMTALA; defendants requests affirmed complaint allegations, admitted therefore introduced judgment in plaintiff's favor on EMTALA claims Sept 2006. Order 06/13-17/08 is affirmation of court that Waivio was dumped by Lutheran Hospital because Metformin was solution. Same for claims following pregneny loss and court transaction; defendants prove continue practice of dumping Waivio.

**Denial of Defendants claims**

EMTAL is denial of defendants claims; defendants had less drastic solution that of EMTAL to send Waivio to any emergency hospital. Defendants claims failed.
Record proved they did not evaluate risk therefore they did not take seriously possibility of EMTAL implies they intentional damped Waivo as patient when there was solution EMTAL and possibility to save Waivio child. EMTAL denial implies discrimination based on disability Lupus as common question of law, order 06/17/08 mooted defendants claims, denied defendants claims.
Order of protection is moot because issue was whether Waivio had presentiment of emergency and requested medical record as to EMTALA, implies first step of EMLTA is medical record; refusal of medical record is violation of EMLTA when it is preexistent condition for emergency or matters can anticipatively go in emergency [such interruption of necessary medication]. Order 06/17/08 denies defendants claim, shortly it is judgment in plaintiff favor on lupus transaction;
FCI claims failed as to retaliation, conspiracy court matters do not motivate to set plaintiff on dumping path of Advocate.

**Interpretation Pursuant Rule 8(e)(2) of order 06/17/08**

[Party] shall not initiate contact with the [court] outside the presence of [opposite party] except emergency situations.
Order 06/17/08 is ruling for plaintiff against defendants because counselors for defendants falsely and inappropriately initiated contact with court between 06/13/08 and

06/17/08 outside the presence of Waivio and without knowledge of Waivio and there was no emergency for defendants. This is violation of Waivio federal and constitutional rights, it is reason for mistrial against defendants as proved and it is reason for reconsideration under *Bank of Waunakee v. Rochester Cheese Sale Inc* 906 **F** 2d 1185 1191 (7th Cir 1990) see order 10/20/2007 Waivio v. UIC 06-C-7189. Evidently order 06/17/08 was firstly violated by defendants therefore first to be punished must be defendants. Court needs to establish sanctions against defendants because defendants requested it. Shortly it appears that defendants requested outside Waivio presence to court that any party shall be sanctioned for initiating contact which is inappropriately, and as proved defendants were first to be sanctioned because they inappropriately contacted court and presented matters outside Waivio presence. Waivio won Motion for Protection and Sanctions against defendants by proving good faith basis against defendants who proved flagrant bad faith.

**Order 06/16/08 establishes Waivio** may contact any defendants for emergency matters without counselors' presence.

**Order 06/17/08 denies defendants claims**

Kendall order 10/18/07 was established by ruling of court on issues law or facts outside the issues presented to Waivio, therefore dismissal of case 06-7189 is not evidence for defendants as barred by order 06/17/08 which establish its is against court the matters which were obtained by defendants presenting issues to court without to be presented to Waivio. There is violation of Rule 12(d) Waivio was not offered fair opportunity. FCI argument from response 05/06/08 failed, it is barred. Retaliation and conspiracy as different from unlawful discrimination and as different distinct transaction was not discussed in Waivio case 06-7189 as presented to Waivio party.

Defendants claims based on Norgle process failed also. Fact presented shows that in Aug 2006 Waivio was in critical medical condition. Shortly Court needs to evaluate previous matters of cases on merits and establish relation to present situation. Standards of merit are only applicable. Guzman has only choice of evaluation on merits of all previous cases. Dismissal with prejudice is not a solution or choice because defendants proved practice of presenting issues of facts or laws which were not presented to Waivio, therefore trial is only solution, as there are issues to be disputed. Dismissal with prejudice

is not final decision on merit in cases where trial is necessity therefore court needs to establish the winner and the loser.

**Waivio interpretation of Order 06/17/08**

1. Plaintiff interprets order 06/17/08 as order for plaintiff against defendants. Court order introduced 06/13/08 denied existence of emergency for defendants this means court finds that emergency is for Waivio[Waivio was in emergency hospital between 06/11/08 and 06/12/08]; court declares that court has reasons to believe there is emergency for Waivio and such emergency was not named; court declare court has reason to believe medical services needs to be enforced; court declares court finds false fact and matters presented in defendants motions; Order 06/17/08 establish also that court shall not initiate contact with counselors outside the issues presented to Waivio.

**FACTS**

1. Fact on 06/17/08 Waivio discovered that Waivio has extreme necessity of Karande medical services and that there existed extreme necessity of Karande medical services for which Karande letter from May 2007 was violation of law and violation of Waivio rights. Plaintiff believes that Karande motion is cover up because it does not mention that KArnde did sent plaintiff a letter in May 2007 and refused any further medical services see Karnde motion to dismiss filed 02/21/08.

2. On 06/17/08 Waivio contacted Eduard Nilsen and discussed with him; Waivio declared that there was extreme emergency Waivio was in need of Metformen and no doctors refused[5] this medication to Waivio.

2. On 06/17/08 this court entered on record an order granting defendants order of protection.

3. This court made decision of granting defendants protection outside adversarial issues presented to Waivio pursuant *Bank of Waunakee v. Rochester Cheese Sale Inc* 906 F 2d 1185 1191 (7th Cir 1990) see order 10/20/2007 Waivio v. UIC 06-C-7189.

3. From evidence of record court had received issues of fact or law which were not presented to Waivio and based on which court moved on 06/17/08 "there has been controlling change or significant change in the facts since the ruling from 06/13/08"

---

[5] On 02/07/08 Plaintiff visited Irina Goldvenkht primary medical doctor and requested health case and requested her to renew Metformen medication; She refused as she claimed she can not provide mediaction of another doctor;

about which Waivio was not informed therefore violation of *Bank of Waunakee v. Rochester Cheese Sale Inc* 906 F 2d 1185 1191 (7th Cir 1990).

4. Defendants proved that they contacted court and presented matters of fact or law without informing Waivio.

5. Order introduced 06/17/08 is violating Waivio right to life, happiness, prosperity and all other federal and constitutional rights. Order introduced 06/17/08 completely denies medical services to Waivio of any type, therefore it is in violation of 42USC300 and US Constitution.

6. Order 06/17/08 does not point to any doctor where Waivio can go and who would secure Waivio right to medical services [without being contacted and manipulated by defendants].

**Conclusion**

For reasons presented Waivio request trial of issues or retrial of issues and Plaintiff requests Trial by Jury with 12 people with Romanian origin or lupus persons and decision of judgment in plaintiff favor against Defendants, Waivio request to deny defendants motions and claims or in alternative Waivio request to open discovery, but Waivio requests to enforce defendants to provide medical services, and all requests as provided in complaint. Plaintiff requests reconsideration of order 06/13-17/08.

Rodica Waivio
06/23/08

14

About Us  Health Info  Programs and Services  Careers  Education  Contact  Search  Site Map  Home    **Advocate Locations**

print page

# ✚ *Advocate Health Care*

**Doctor Directory**



**Irina Goldvekht , D.O.**
*Internal Medicine*

Gender: Female  Age: 34  Years of Practice: 4

**Office Locations/Insurance Plans Accepted**

**Hospitals / Groups**
Advocate Lutheran General Hospital

**Languages Spoken:** Russian

**Professional Certification**
Medical School: Chicago College of Osteopathic Medicine
Residency: Lutheran General Hospital

**Philosophy of Care**
I believe that a key to a good doctor/patient relationship is communication
& respect. I enjoy educating my patients regarding disease prevention,
their illnesses and treatment options. The patient is the ultimate decision
maker regarding their health.

your First Appointment!

this Doctor to MyAdvocate!

**Office Locations/Insurance Plans Accepted** *(click on address tabs to expand)*
expand all | collapse all

| 1300 Busch Pkwy, Buffalo Grove  847.459.2860 | View map |

| 1051 W Rand Rd Ste 102, Arlington Heights  847.342.8220 | View map |

Start a new search

http://www.advocatehealth.com                    1.800.3.ADVOCATE / TDD 630.990.4700
                                                  Tambien tenemos representantes que hablan español

About Us | Health Info | Programs and Services | Careers | Education | Contact | Search | Site Map | Home | Advocate Locations

Use of our site constitutes acceptance of our Terms of Use. View our Notice of Privacy Practices.
Copyright © 2008 Advocate Health Care, Oak Brook, Illinois, USA

06/12/08

I Rodica Waivre would like to provide the following declaration:

1. On 06/11/08 I went to emergency of NCH. It was after 11:00pm. NCH refused to provide medical services for lupus and specific necessities at that time.

2. They took me in an observation room later in night

3. I have been told that about 6 am on 06/12/08 a doctor came in my room. I was unable to see the doctor because I was sleeping.

4. When I waked up on 06/12/08 I requested to see the doctor

5. NCH refused to provide a doctor for me starting from morning till at 4:00pm

6. Following the refusal of NCH to provide a medical provider I was unable to receive adequate medical care

7. I requested on 06/12/08 to be provided with record to see record. NCH refused to allow record to be seen. On 06/12/08

8. I tried many times to take record and I requested to review record and I was refused.

I Rodica Waivio request to anulate all the medical record from 06/11/08 and 06/12/08 because I was refused permission to descuss with a medical provider

Rodica Waivio
dated 06/19/08

recevied by: Dion Michael 6/19/08

This statement was written conform with a legal action pending

Waivio v. Advocate
case 07-6690
Federal District Court


Quest
Diagnostics

Quest on Demand™

QUEST DIAGNOSTICS INCORPORATED

| PATIENT INFORMATION | REPORT STATUS **Final** |

**WAIVIO,RODICA**

DOB: 08/04/1969  Age: 37
GENDER: F

ORDERING PHYSICIAN
**RAPISARDA,JOHN J.**
CLIENT INFORMATION
22596437
FERTILITY CENTERS OF IL
195
135 N ARLINGTON HEIGHTS RD
BUFFALO GROVE, IL 60089-8214

SPECIMEN INFORMATION
SPECIMEN:    WX106645T
REQUISITION: 0006437
LAB REF NO:

ID: BR5575
PHONE: 8479630231

COLLECTED: 10/18/2006    00:00
RECEIVED:  10/18/2006    23:13
REPORTED:  10/21/2006    05:11

| Test Name | In Range | Out of Range | Reference Range | Lab |
|-----------|----------|--------------|-----------------|-----|
| PROTEIN C ACTIVITY | | | | EZ |
| PROTEIN C, ACTIVITY | 167 | | 70-180 % normal | |
| | NOTE:  Protein C Activity assay performed by a Clotting method. | | | |
| PROTEIN S ACTIVITY | | | | EZ |
| PROTEIN S, ACTIVITY | 115 | ✓ | 60-140 % normal | |

**Performing Laboratory Information:**

EZ    Quest Diagnostics Nichols Institute-San Juan Capis 33608 Ortega Hwy San Juan Capistrano CA  92675
       Laboratory Director: R E Reitz

WAIVIO,RODICA - WX106645T

Page 1 - End of Report

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics. © Quest Diagnostics Incorporated. All rights reserved. OD228b0-NTL. Revised 3/04  B424 - 113570.


**Quest Diagnostics**

Quest on Demand™

PATIENT INFORMATION
**WAIVIO, RODICA**

REPORT STATUS **Final**

QUEST DIAGNOSTICS INCORPORATED

REPORTED: 10/11/2006 08:48
COLLECTED: 09/28/2006 14:53

DOB: 08/04/1969 Age: 37
GENDER: F
ID: BR5575

ORDERING PHYSICIAN
**RAPISARDA, JOHN J.**

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|

METHYLENETETRAHYDROFOLATE REDUCTASE (MTHFR), DNA MUTATION ANALYSIS
   METHYLENETETRAHYDROFOLATE    SEE NOTE     EZ
      REDUCTASE (MTHFR), DNA    RESULT: POSITIVE FOR ONE COPY OF THE A1298C MUTATION

                    DNA testing indicates this individual is heterozygous for
the A1298C mutation and does not have the C677T mutation.
The presence of one copy of the A1298C mutation has not been
associated with an increased risk for hyperhomocysteinemia
or vascular diseases. Consider genetic counseling and DNA
testing for at-risk family members.

                    Laboratory testing supervised and results monitored by
Charles Strom, M.D., Ph.D., FACMG, FAAP, HCLD.
Hyperhomocysteinemia is a risk factor for arterial disease
and venous thrombosis. Homocysteine levels are affected by
nutritional and genetic factors. Since MTHFR is involved in
methylation of homocysteine to methionine, individuals with
MTHFR gene mutations that reduce enzyme activity may develop
hyperhomocysteinemia and thus be at elevated risk for
vascular disease.

                    The C677T and A1298C mutations are detected by amplification
of the MTHFR gene by polymerase chain reaction (PCR)
followed by an oligonucleotide ligation assay (OLA). The
biotinylated extension products are then hybridized on
microspheres and detected by the identity of the
microspheres as well as the reporter fluorescence. Since
genetic variation and other factors can affect the accuracy
of direct mutation testing, these results should be
interpreted in light of clinical and familial data.

                    This test was developed and its performance characteristics
determined by Quest Diagnostics Nichols Institute. It has
not been cleared or approved by the U.S. Food and Drug
Administration. The FDA has determined that such clearance
or approval is not necessary. Performance characteristics
refer to the analytical performance of the test.

    SHARED ASSAY COMPONENTS                   EZ
                    TNP-Common procedures performed in test code ordered on same
accession.

ANA SCREEN EIA W/REFL
   TITER IFA
      **ANA SCREEN**                **POSITIVE**    NEGATIVE      CB

WAIVIO, RODICA - WX710223S

Page 3 - Continued on Page 4

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics. © Quest Diagnostics Incorporated. All rights reserved. QDM5000-NTL. Revised 1/04. EC7K 1/05/06.

Quest on Demand™

**Quest Diagnostics**®

QUEST DIAGNOSTICS INCORPORATED

PATIENT INFORMATION
**WAIVIO,RODICA**

REPORT STATUS  **Final**

DOB: 08/04/1969  Age: 37
GENDER: F

ORDERING PHYSICIAN
**RAPISARDA,JOHN J.**

CLIENT INFORMATION
22667154
FERTILITY CENTERS
OF IL-LINDENHURST
2592 E GRAND AVE FL 2
LINDENHURST, IL 60046-5915

SPECIMEN INFORMATION
SPECIMEN:   WX705745S
REQUISITION: 0001046
LAB REF NO:

ID: BR5575
PHONE: 8479630231

COLLECTED:  09/28/2006    14:53
RECEIVED:   09/28/2006    23:41
REPORTED:   09/30/2006    21:02

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| LUPUS ANTICOAGULANT EVALUATION WITH REFLEX | | | | EZ |
| LUPUS ANTICOAGULANT | ✓ | | | |
| **LUPUS ANTICOAGULANT** | | **DETECTED** | NOT DETECTED | |

THE RESULTS REPORTED ARE CONSISTENT WITH A LUPUS
ANTICOAGULANT (AN ANTIPHOSPHOLIPID ANTIBODY).

This interpretation is based
on the following test results:

| | | | | |
|---|---|---|---|---|
| PTT-LA | | 41 H | 40 OR LESS sec | |
| HEXAGONAL PHASE NEUTRALIZATION | NOT CONFIRMED | | NOT CONFIRMED | EZ |
| DRVVT SCREEN | | 44 H | 42 OR LESS sec | EZ |
| PHOSPHOLIPID NEUTRALIZATION | | **CONFIRMED** | NOT CONFIRMED | EZ |

If either neutralization test is confirmed, a lupus
anticoagulant is present. If both neutralization tests are
not confirmed/not indicated, a lupus anticoagulant is not
detected.

Lupus anticoagulants (LA) represent a heterogeneous mix of
antibodies to phospholipid binding proteins. The titer and
avidity of these antibodies are highly variable. No single
test is sensitive enough to detect all LA antibodies.

----------------------------------------------------------------

Performing Laboratory Information:

E2   Quest Diagnostics Nichols Institute-San Juan Capis 33608 Ortega Hwy San Juan Capistrano CA  92675
     Laboratory Director: R E Reitz

 **Quest Diagnostics**

Quest on Demand™

QUEST DIAGNOSTICS INCORPORATED

SPECIMEN INFORMATION
SPECIMEN: WX836409S
REQUISITION: 0006316
LAB REF NO:

COLLECTED: 10/05/2006    10:00
RECEIVED:    10/05/2006    20:03
REPORTED:    10/09/2006    17:44

PATIENT INFORMATION
**WAIVIO, RODICA**

DOB: 08/04/1969 Age: 37
GENDER: F

ID: BR5575
PHONE: 8479630231

REPORT STATUS **Final**

ORDERING PHYSICIAN
**RAPISARDA, JOHN J.**
CLIENT INFORMATION
22596437
FERTILITY CENTERS OF IL
195
135 N ARLINGTON HEIGHTS RD
BUFFALO GROVE, IL 60089-8214

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| ANA COMPREHENSIVE PANEL 1 | | | | |
| ANA SCREEN EIA W/REFL | | | | |
| TITER IFA | | | | CB |
| ANA SCREEN | | POSITIVE | NEGATIVE | |
| ANTINUCLEAR ANTIBODIES | <1:40 | | titer | |

A SMALL PERCENTAGE OF POSITIVE ANA RESULTS BY EIA
YIELD A NEGATIVE ANA RESULT BY IFA. EVALUATION FOR
AUTOANTIBODIES TO SPECIFIC ANTIGENS MAY FURTHER
RESOLVE THE DIAGNOSIS.

REFERENCE RANGE:
| | |
|---|---|
| <1:40 | NEGATIVE |
| 1:40 - 1:80 | LOW ANTIBODY LEVEL |
| >1:80 | ELEVATED ANTIBODY LEVEL |

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| RHEUMATOID FACTOR | 7 | | <14 IU/mL | CB |
| DNA (DS) ANTIBODIES | <30 | | IU/mL | CB |

| | INTERPRETATION |
|---|---|
| < 30 | NEGATIVE |
| 30-60 | LOW POSITIVE |
| 61-200 | POSITIVE |
| > 200 | STRONG POSITIVE |

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| SM AND SM/RNP ANTIBODIES | | | | CB |
| SM ANTIBODY | <1.00 | | index | |

REFERENCE RANGE

INDEX VALUES < OR = 1.00    = NEGATIVE
INDEX VALUES > 1.00       = POSITIVE

THE PRESENCE OF SM ANTIBODIES IS HIGHLY SPECIFIC FOR SLE.
SM ANTIBODIES ARE PRESENT IN 30% OF SLE PATIENTS.

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics. © Quest Diagnostics Incorporated. All rights reserved. DD02300.NTL, Revised 10/4. SC28 - 116170.


**Quest**
**Diagnostics**

Quest on Demand™

PATIENT INFORMATION
**WAIVIO, RODICA**

REPORT STATUS **Final**

QUEST DIAGNOSTICS INCORPORATED

DOB: 08/04/1969  Age: 37
GENDER: F

ORDERING PHYSICIAN
**RAPISARDA, JOHN J.**
CLIENT INFORMATION
22596437

SPECIMEN INFORMATION
SPECIMEN:    WX106645T
REQUISITION: 0006437
LAB REF NO:

ID: BR5575
PHONE: 8479630231

FERTILITY CENTERS OF IL
195
135 N ARLINGTON HEIGHTS RD
BUFFALO GROVE, IL 60089-8214

COLLECTED:  10/18/2006    00:00
RECEIVED:   10/18/2006    23:13
REPORTED:   10/21/2006    05:11

| Test Name | In Range | Out of Range | Reference Range | Lab |
|-----------|----------|--------------|-----------------|-----|
| PROTEIN C ACTIVITY | | | | EZ |
|   PROTEIN C, ACTIVITY | 167 | | 70-180 % normal | |
| NOTE:  Protein C Activity assay performed by a Clotting method. | | | | |
| PROTEIN S ACTIVITY | | | | EZ |
|   PROTEIN S, ACTIVITY | 115 | | 60-140 % normal | |

------------------------------------------------------------------------------------

**Performing Laboratory Information:**

EZ    Quest Diagnostics Nichols Institute-San Juan Capis 33608 Ortega Hwy San Juan Capistrano CA  92675
        Laboratory Director: R E Reitz

Quest, Quest Diagnostics, the associated logos and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics. © Quest Diagnostics Incorporated. All rights reserved. QD10308-NTL  Revised 3/94  9C76  113570.



Quest Diagnostics

"uest on Demand™

QUEST DIAGNOSTICS INCORPORATED

REPORTED:    10/11/2006    08:48
COLLECTED:   09/28/2006    14:53

PATIENT INFORMATION
**WAIVIO, RODICA**

DOB: 08/04/1969   Age: 37
GENDER: F
ID: BR5575

REPORT STATUS  **Final**

ORDERING PHYSICIAN
**RAPISARDA, JOHN J.**

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|

METHYLENETETRAHYDROFOLATE REDUCTASE (MTHFR), DNA MUTATION ANALYSIS
   METHYLENETETRAHYDROFOLATE    SEE NOTE                                EZ
   REDUCTASE (MTHFR), DNA    RESULT: POSITIVE FOR ONE COPY OF THE A1298C MUTATION

                        DNA testing indicates this individual is heterozygous for
the A1298C mutation and does not have the C677T mutation.
The presence of one copy of the A1298C mutation has not been
associated with an increased risk for hyperhomocysteinemia
or vascular diseases. Consider genetic counseling and DNA
testing for at-risk family members.

                        Laboratory testing supervised and results monitored by
Charles Strom, M.D., Ph.D., FACMG, FAAP, HCLD.
Hyperhomocysteinemia is a risk factor for arterial disease
and venous thrombosis. Homocysteine levels are affected by
nutritional and genetic factors. Since MTHFR is involved in
methylation of homocysteine to methionine, individuals with
MTHFR gene mutations that reduce enzyme activity may develop
hyperhomocysteinemia and thus be at elevated risk for
vascular disease.

                        The C677T and A1298C mutations are detected by amplification
of the MTHFR gene by polymerase chain reaction (PCR)
followed by an oligonucleotide ligation assay (OLA). The
biotinylated extension products are then hybridized on
microspheres and detected by the identity of the
microspheres as well as the reporter fluorescence. Since
genetic variation and other factors can affect the accuracy
of direct mutation testing, these results should be
interpreted in light of clinical and familial data.

                        This test was developed and its performance characteristics
determined by Quest Diagnostics Nichols Institute. It has
not been cleared or approved by the U.S. Food and Drug
Administration. The FDA has determined that such clearance
or approval is not necessary. Performance characteristics
refer to the analytical performance of the test.

   SHARED ASSAY COMPONENTS                                        EZ
                        TNP-Common procedures performed in test code ordered on same
accession.

ANA SCREEN EIA W/REFL
   TITER IFA
     **ANA SCREEN**                        **POSITIVE**     NEGATIVE            CB

Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics. © Quest Diagnostics Incorporated. All rights reserved. QD02000-NTL Revised Rev. 6/26   111576L

Quest on Demand™

**Quest Diagnostics**

QUEST DIAGNOSTICS INCORPORATED

| | |
|---|---|
| PATIENT INFORMATION | REPORT STATUS  **Final** |
| **WAIVIO,RODICA** | |

DOB: 08/04/1969  Age: 37
GENDER: F

ORDERING PHYSICIAN
**RAPISARDA,JOHN J.**
CLIENT INFORMATION
22667154
FERTILITY CENTERS
OF IL-LINDENHURST
2592 E GRAND AVE FL 2
LINDENHURST, IL 60046-5915

SPECIMEN INFORMATION
SPECIMEN:   WX705745S
REQUISITION: 0001046
LAB REF NO:

ID: BR5575
PHONE: 8479630231

COLLECTED: 09/28/2006   14:53
RECEIVED:  09/28/2006   23:41
REPORTED:  09/30/2006   21:02

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| LUPUS ANTICOAGULANT EVALUATION WITH REFLEX | | | | EZ |
| LUPUS ANTICOAGULANT | | | | |
| **LUPUS ANTICOAGULANT** | | **DETECTED** | NOT DETECTED | |

THE RESULTS REPORTED ARE CONSISTENT WITH A LUPUS
ANTICOAGULANT (AN ANTIPHOSPHOLIPID ANTIBODY).

This interpretation is based
on the following test results:

| | | | | |
|---|---|---|---|---|
| **PTT-LA** | | 41 H | 40 OR LESS sec | |
| HEXAGONAL PHASE NEUTRALIZATION | NOT CONFIRMED | | NOT CONFIRMED | EZ |
| DRVVT SCREEN | | 44 H | 42 OR LESS sec | EZ |
| PHOSPHOLIPID NEUTRALIZATION | | CONFIRMED | NOT CONFIRMED | EZ |

If either neutralization test is confirmed, a lupus
anticoagulant is present. If both neutralization tests are
not confirmed/not indicated, a lupus anticoagulant is not
detected.

Lupus anticoagulants (LA) represent a heterogeneous mix of
antibodies to phospholipid binding proteins. The titer and
avidity of these antibodies are highly variable. No single
test is sensitive enough to detect all LA antibodies.

---

**Performing Laboratory Information:**

EZ   Quest Diagnostics Nichols Institute-San Juan Capis 33608 Ortega Hwy San Juan Capistrano CA  92675
Laboratory Director: R E Reitz

WAIVIO,RODICA - WX705745S                                    Page 1 - End of Report

Quest on Demand™


Quest
Diagnostics

QUEST DIAGNOSTICS INCORPORATED

| | |
|---|---|
| **PATIENT INFORMATION** | **REPORT STATUS** **Final** |
| **WAIVIO,RODICA** | |

**SPECIMEN INFORMATION**
SPECIMEN:      WX836409S
REQUISITION: 0006316
LAB REF NO:

DOB: 08/04/1969  Age: 37
GENDER: F

ID: BR5575
PHONE: 8479630231

ORDERING PHYSICIAN
**RAPISARDA,JOHN J.**
CLIENT INFORMATION
22596437
FERTILITY CENTERS OF IL
195
135 N ARLINGTON HEIGHTS RD
BUFFALO GROVE, IL 60089-8214

COLLECTED: 10/05/2006    10:00
RECEIVED:  10/05/2006    20:03
REPORTED:  10/09/2006    17:44

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| ANA COMPREHENSIVE PANEL 1 | | | | |
| ANA SCREEN EIA W/REFL | | | | CB |
| TITER IFA | | | | |
| **ANA SCREEN** | | **POSITIVE** | **NEGATIVE** | |
| ANTINUCLEAR ANTIBODIES | <1:40 | | titer | |

A SMALL PERCENTAGE OF POSITIVE ANA RESULTS BY EIA
YIELD A NEGATIVE ANA RESULT BY IFA. EVALUATION FOR
AUTOANTIBODIES TO SPECIFIC ANTIGENS MAY FURTHER
RESOLVE THE DIAGNOSIS.

|  |  |
|---|---|
| REFERENCE RANGE: | |
| <1:40 | NEGATIVE |
| 1:40 - 1:80 | LOW ANTIBODY LEVEL |
| >1:80 | ELEVATED ANTIBODY LEVEL |

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| RHEUMATOID FACTOR | 7 | | <14 IU/mL | CB |
| DNA (DS) ANTIBODIES | <30 | | IU/mL | CB |

|  |  |
|---|---|
| IU/ML | INTERPRETATION |
| < 30 | NEGATIVE |
| 30-60 | LOW POSITIVE |
| 61-200 | POSITIVE |
| > 200 | STRONG POSITIVE |

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| SM AND SM/RNP ANTIBODIES | | | | CB |
| SM ANTIBODY | <1.00 | | index | |

REFERENCE RANGE

| | |
|---|---|
| INDEX VALUES < OR = 1.00 | = NEGATIVE |
| INDEX VALUES > 1.00 | = POSITIVE |

THE PRESENCE OF SM ANTIBODIES IS HIGHLY SPECIFIC FOR SLE.
SM ANTIBODIES ARE PRESENT IN 30% OF SLE PATIENTS.

WAIVIO,RODICA - WX836409S

Page 1 - Continued on Page 2

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics © Quest Diagnostics Incorporated. All rights reserved. 0829360 NTL. Revised: SC20 : 119510.



Affinity Healthcare – Arlington Heights
1655 West Rand Road, Arlington Heights, IL 60004
847-342-3270

Irina Goldvekht D.O.
IL036-107264

Name    RODICA WANRO
Address  1325 BALDWIN CT    #3R, PALATINE, IL 60074

MRN    56512
DOB    08/04/1969

Metformin HCl 500 MG Tablet #360

Quantity (three hundred sixty tablet)

TAKE 2 TABLETS TWICE DAILY

☐ May Substitute
☐ May Not Substitute

Signature of Prescriber

Written: 06/17/2008    Refills Authorized 1 Times    Rx: 13242970






**Follow Up Appointments for Physicians and Post Hospital Care/Referrals Services**
(Home Care, Diabetes Services, Wound Care, etc.)

| | |
|---|---|
| Name: DR. Golcivekht <br> Phone: (847) 457 7860 <br> When: Tomorrow on 6/13/08 on Monday 6/16 | Name: <br> Phone: <br> When: |
| Name:  Call for appointment <br> Phone: <br> When: | Name: <br> Phone: <br> When: |
| Name: <br> Phone: <br> When: | ☐ SMOKING CESSATION <br> ▪ Referral phone 847-618-7916 <br> ▪ Advised to quit <br> ▪ Keep environment smoke-free <br> ▪ Smoking cessation material provided |

**Follow These Care Instructions:**
(Follow up tests, skin/wound care, intravenous lines, urinary catheters, supplies, additional discharge instructions.)

Medical Records # (847) 618 4950

☐   Refer to education materials provided   ☐ NA   List _____

| | |
|---|---|
| **DIET:**  Regular | **ACTIVITY:**  As Tolerated |

**PERSONAL MEDICATIONS RETURNED**          **VALUABLES / BELONGINGS RETURNED**
☑ None      ☐ Yes                                    ☑ None      ☐ Yes

**MEDICATIONS:** FOLLOW DISCHARGE MEDICATION LIST (ATTACHED)

New prescriptions given: ☑ NA   ☐ List: _____
Medication information given: ☑ NA   ☐ List: _____
Vaccines given this admission: ☑ NA   ☐ List: _____

**CALL YOUR PHYSICIAN IF YOU HAVE:**
▪ Difficulty breathing
▪ Unrelieved or new pain
▪ Persistent nausea and/or vomiting
▪ Fever greater than 100.5°F
▪ Presence of calf pain
▪ Questions, problems or concerns
▪ Other _____

**Patient/Significant Other verbalized understanding of above and has received a copy**

X  Pt. refused to sign
_____
(Signature/Relationship)

_____
(RN Signature)

Date  6/12/08   Time  1500

WAIVIO ,RODICA I
54223269    F    38   06/12/08
DOB  08/04/1969   0001382333

**Northwest Community Hospital**
Arlington Heights, IL 60005



1 4 0 0 2 D I S R

**PATIENT DISCHARGE INSTRUCTIONS**

NCH Item # E1055

Form # 005.329-09/06-1-E

**nch** Northwest Community Hospital
Emergency Department
800 West Central Road
Arlington Hts, IL 60005
847.618.4000

Name **WAIVIO, RODICA I** Age 38
Address 1325 BALDWIN COURT Date 06/22/2008
APARTMENT 2A
PALATINE , IL 60074-

NON-REFILLABLE

Rx *Naproxen EC 375mg*
*7 tab BID prn*
*#30*

MG/CC Quant. *30* Label as Such
☐ May Not Substitute *CBach CNP* M.D.
☑ May Substitute DEA No. *MB1444688*

---

**nch** Northwest Community Hospital
Emergency Department
800 West Central Road
Arlington Hts, IL 60005
847.618.4000

Name **WAIVIO, RODICA I** Age 38
Address 1325 BALDWIN COURT Date 06/22/2008
APARTMENT 2A
PALATINE , IL 60074-

NON-REFILLABLE

Rx *Amoxicillin 875mg*
*7 tab BID*
*#20*

MG/CC Quant. Label as Such
☐ May Not Substitute *CBach CNP* M.D.
☑ May Substitute DEA No. *MB1444688*

---

## DISCHARGE INSTRUCTIONS FOR: NAME: WAIVIO ,RODICA I

DATE: 06/22/2008

### INSTRUCTIONS TO PATIENT:

The examination and treatment you have received in the Emergency Department has been given on an emergency basis and is not intended to be a subsitute for complete medical care. For your protection, we suggest you follow up with your primary care physician, or with the follow-up physician named below, for continuing care.

X-RAYS: X-rays taken in the Emergency Department are often initially read by the emergency physician. A radiologist reviews the x-ray study and makes the final report. You, or your physician, will be notified if the final report is different from the initial reading. X-rays do not always show injury or disease, and fractures may not be revealed on the initial x-rays. If the problem persists or becomes worse, additional x-rays may be required. If this should occur, you should contact your physician, or return to the Emergency Department. Prior to picking up your x-rays call the **Hospital File Room at (847) 618-5900, 24 hours in advance,** to ensure your films are ready to be picked up.

The emergency physician, nurse practitioner or physician's assistant providing your care in the Emergency Department is an employee of **BestPractices, Inc.**

*847-618-1000 physician referral* *(own)*

Call as soon as possible to schedule an appointment with your primary care physician, or the follow up physician listed here. Tell the receptionist you were seen in the Emergency Department. **If you are a member of a PPO or HMO, you should contact them prior to follow-up.**

FOLLOW UP MD: *Goldverht*

Wound Check _____ Days    Suture Removal _____ Days    Appointment *1-2* Days

| IF YOUR CURRENT CONDITION DOES NOT IMPROVE OR WORSENS, RETURN TO THE EMERGENCY DEPARTMENT |
|---|

AFTER CARE\CARE NOTES FOR YOUR DIAGNOSIS OF: (1) *abdominal pain*
(2) ®️ *otitis media*

☐ Discharged with an acceptable pain level.

I hereby acknowledge receipt and understanding of the instructions as indicated above. I understand that I have had emergency treatment only and that I may be released before all of my medical conditions are known or treated.

I will arrange for follow-up care as instructed above. I further understand that it is my responsiblity to provide my care provider with the Patient Medication Reconciliation Record.

X *Rodica* *6-22-08* *1145* *andy*

Patient or Representative Signature    Date    Time    Nurse/Nurse Practitioner/Physician Assistant Signature

WAIVIO ,RODICA I    06/22/08
54352018    F    38

0001382333

NCH Item # 32528

**nch** **Northwest Community Hospital**
Emergency Department
800 West Central Road
Arlington Hts, IL 60005
847.618.4000

14008DISR

**EMERGENCY SERVICES
DISCHARGE INSTRUCTIONS**
Original - Patient   Copy - Chart

FORM # 005 057 11/07 2 FT

WAIVIO ,RODICA I
5435201B    F    38    06/22/08
DOB 08/04/1969    0001382333