dc

F I L E D
6-26-2008
JUN 2 6 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**Plaintiff(s)**

RODICA WAIVIO

**v.**

ADVOCATE etal

**Defendant(s)**

Case No. 07-6690

Judge Guzman

# Exhibits For Plaintiff

Now Comes Plaintiff Rodica Waivio and presents the following exhibits for briefing purposes.

1. Complaint Nov 08 2005 Christopher Mitchell 05-C-637
2. Complaint WATTS June 16, 2004, 04 C-4062
3. Complaint March 28, 2000 Shannon, 00-C-1870
4. Complaint Dec 2000, AAHA Payne case 00-C-7635
5. Complaint Feb 2001, Gallo, case 01-C-0743
6. Complaint June 18 2002 M JAWAD, case 02-C-4295
7. Complaint Dec 1, 2002 Worthington 02-C-8994
8. Complaint Dec 23, 2002 Karney 02-C-9332

9. Complaint Shealey v. Advocate Feb 24, 2006
10. Complaint Nov 27, 2007 Alexander 07-CV-6655
11. Complaint Dec 3, 2001 Subaric 01-C-9243

Rodica Vlaiuic
Pro Se
06/26/08

**FILED** *LAL*

NOV 0 8 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**05C 6375**

| | | |
|---|---|---|
| CHRISTOPHER MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. **05C 6375** |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | |
| ADVOCATE HEALTH and HOSPITALS | ) | Magistrate Judge  **JUDGE AMY ST. EVE** |
| CORPORATION, | ) | |
| | ) | |
| | ) | **JURY DEMANDED  MAGISTRATE JUDGE KEYS** |
| Defendant. | ) | |

### COMPLAINT

**NOW COMES** the Plaintiff CHRISTOPHER MITCHELL, by and through his attorney

Charles Siedlecki and complaining of the Defendants ADVOCATE HEALTH and HOSPITALS

CORPORATION, states as follows:

### JURISDICTION

1.  This action is brought pursuant to The Family and Medical Leave Act ("FMLA") 29

U.S.C. § 2601 et seq. and the Civil Rights Attorney's Fee's Awards Act of 1976, (42

U.S.C. § 1988); Equal Pay Act; and 42 U.S.C. 1981. Jurisdiction of this Honorable

Court is invoked pursuant to 28 U.S.C. § 1331, 1343, as well as this Honorable Court's

power to assert ancillary and pendant jurisdiction over related state claims.

### PARTIES

2.  Plaintiff CHRISTOPHER MITCHELL (hereinafter sometimes referred to as "Plaintiff"),

is a citizen of the United States of America and a resident of the State of Illinois

-1-

3.     Defendant ADVOCATE HEALTH and HOSPITALS CORPORATION, (hereinafter sometimes referred to as "Advocate") is a registered Illinois Corporation and an employer within the meaning of the FMLA. Defendant controls, owns and operates a medical care facility known as Advocate Christ Hospital and Medical Center (hereinafter sometimes referred to as ("Christ Hospital") located in Oak Lawn, Illinois. Upon information and belief Defendant employs more than 500 persons.

## FACTS

4.     Plaintiff was hired by Defendant on September 24, 2001.

5.     Plaintiff is a black male.

6.     Plaintiff had a contractual relationship with Defendant.

7.     Plaintiff was employed within the general stores (shipping and receiving) department at Christ Hospital and Medical Center facility located in Oak Lawn, Illinois.

8.     Prior to his termination Plaintiff received excellent performance evaluations.

9.     In January 2005, Plaintiff was diagnosed with the serious health conditions of multiple sclerosis and an inoperable brain cyst.

10.     In January 2005, Plaintiff provided written notice to Defendant of his need and request to take leave under the FMLA so as to obtain medical care for serious health conditions.

11.     Plaintiff had worked continuously for Defendant at the Christ Hospital and Medical Care facility for more than twelve (12) months preceding his request for FMLA leave.

12.     Plaintiff had worked more than 1250 hours during the twelve (12) month period preceding his request for FMLA leave.

13.     Plaintiff was granted intermittent FMLA leave by Defendant on February 15, 2005. At

-2-

that time Defendant informed Plaintiff that his FMLA leave was effective as of January 21, 2005.

14.     From February 15, 2005 through September 12, 2005, Plaintiff continued to work for Defendant and take intermittent FMLA leave as needed.

15.     On September 14, 2005, Plaintiff was informed by Defendant in a letter dated September 1, 2005, that his FMLA leave was exhausted and that his position was no longer available to him.

16.     In fact, Plaintiff had not exhausted his FMLA protected leave at the time of his termination.

17.     Defendant's own documentation shows that Plaintiff had taken 402 hours of FMLA protected leave at the time he was terminated.

18.     Plaintiff was entitled to 480 hours of FMLA protected leave.

19.     Defendants actions in refusing to return Plaintiff to his position and terminating his employment while on FMLA protected leave was unlawful, discriminatory, retaliatory pre-textual and a violation of federal law.

20.     Defendant failed to follow its own policies and procedures regarding termination of Plaintiff.

21.     Plaintiff's ability to exercise his rights under the FMLA was thereby intentionally interfered with by Defendant.

22.     Plaintiff's spouse is a management level employee of Defendant and insured that all proper notifications and medical certifications were timely submitted to Defendant.

23.     On October 12, 2005, Plaintiff's spouse attended an FMLA training session held by

-3-

Defendant at Christ Hospital. At that meeting Defendant's own instructor, using "Multiple Sclerosis" as an example, stated that such a condition was both a serious illness under the FMLA and a disability under the Americans With Disabilities Act ("ADA").

24. Defendant's own instructor informed Plaintiff's spouse that it was a violation of law and that the employer would be strictly liable for refusing reinstatement to a person who was on FMLA leave.

25. At the time of his termination Plaintiff's department was not undergoing a restructuring. In fact a male white employee, Jim Hardy, was brought in to Plaintiff's department after Plaintiff's termination.

26. Plaintiff was discriminated against by Defendant because of his race.

27. Defendants have engaged in a pattern and practice of discriminating against black employees.

28. Defendants have discriminated against black employees, as follows:

    a.    Black employees are more harshly or disproportionally disciplined that white employees for the same or similar offense(s);

    b.    Black employees are targeted for termination, by white supervisory personnel of the Defendant, and are terminated to a greater degree than white employees;

    c.    Black employees are not paid at a level equal to white employees, inclusive of females, for performing equal work;

    d.    Black employees are subjected to racially offensive language in the workplace;

    e.    White employees were allowed to retain their positions even after they have legitimately exhausted their FMLA leave.

-4-

29.  Defendant falsified and back-dated white employees FMLA records so as to justify their disparate treatment as compared to black employees.

30.  Defendant failed to properly document/record employees FMLA leave.

31.  Defendant was aware of this disparate treatment and has failed to take corrective action.

32.  In May of 2005, Plaintiff's department underwent a reorganization.

33.  Defendant's agent Ms. Mary Jo Crandall, who is white, terminated 12 to 14 employees, all of whom were black.

34.  Defendant terminated Plaintiff because he availed himself of rights protected under the FMLA.

35.  Defendant retaliated against Plaintiff for having taken FMLA leave.

36.  Defendant terminated Defendant because of his race.

37.  Race was a motivating factor in terminating Plaintiff's employment.

38.  Defendant's actions intentionally created a situation in which Plaintiff was forced to chose between receiving health care or losing his job. Such intentional actions are in direct violation of the of the FMLA and effectively undercut the intent of the Act.

39.  Such action by the Defendant substantially interfered with Plaintiff's substantive rights under the FMLA.

40.  Prior to taking the above enumerated and unlawful actions with regard to Plaintiff, Defendant had knowledge of his existing health conditions.

41.  Plaintiff was allegedly terminated by Defendant for having failed to return to work after having exhausted his FMLA leave. Defendant's proffered reason is false, unsupported by Defendant's own records and pre-textual.

42.   Defendant was well aware of the fact that Plaintiff's ongoing medical treatments were associated with great cost. Plaintiff's injections alone total more than $10,000.00 dollars per year.

43.   Defendant's actions in discharging Plaintiff under such circumstances interfered with, and unduly burdened Plaintiff's exercise of rights guaranteed him under the FMLA and has caused Plaintiff severe emotional distress.

## COUNT I
### *Retaliation In Violation of FMLA*
### *Against Advocate Health and Hospitals Corporation*

1-43   Plaintiff repeats and realleges paragraphs 1 through 43 above as paragraphs 1 through 43 of Count I, as though fully set forth herein.

44.   Defendant applied FMLA time-off taken by Plaintiff as a negative factor against Plaintiff in terminating his employment.

45.   Plaintiff was terminated from his employment because he availed himself of the guarantees and rights of the FMLA.

46.   Defendant's proffered reason for terminating Plaintiff is false, unsupported, and pre-textual. There exists a causal link between Plaintiff availing himself of FMLA rights and his termination.

47.   Said discriminatory and unlawful termination is in direct violation of FMLA 29 U.S.C. § 2615(a)(2).

48.   As a result of Defendant's actions Plaintiff has suffered harm and injury, damage to his good reputation, exacerbation of his physical condition, physical injury, extreme mental anguish, painful embarrassment among his friends and co-workers, disruption of his

-6-

personal life, financial injury, lost benefits, lost wages and the loss of enjoyment of the ordinary pleasures of everyday life.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor as follows:

(a) Monetary damages to compensate Plaintiff for all lost salary and benefits from the time Defendant's improper conduct commenced to the time of the award, plus all accrued interest thereon;

(b) Monetary damages to compensate Plaintiff for all future lost salary and benefits;

(c) Liquidated damages equal to an amount awarded hereunder, pursuant to FMLA § 107(a)(1)(A)(iii);

(d) Reasonable attorney's fees, expert witness fees and costs of litigation and costs of this suit;

(e) Satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and this Court shall deem proper under the circumstances.

**COUNT II**
***Interference with Plaintiff's Substantive Rights Under the FMLA***
***Against Advocate Health and Hospitals Corporation***

1-48. Plaintiff repeats and realleges paragraphs 1-48 above as paragraphs 1 through 48 of Count II, as though fully set forth herein.

49. Plaintiff had worked for Defendant more than 1250 hours within the preceding twelve month period.

50. Plaintiff had provided written notice and medical certification(s) to Defendant regarding his need for FMLA leave.

-7-

51.  Defendant intentionally interfered and burdened Plaintiff's in the exercise of his substantive statutory rights as an eligible employee under 29 U.S.C. § 2615(a)(1) .

52.  Plaintiff was entitled to FMLA leave and Defendant unlawfully interfered with Plaintiff's exercise of said entitlement.

53.  As a result of Defendants discriminatory actions Plaintiff has suffered harm and injury, damage to his good reputation, extreme mental anguish, painful embarrassment among his friends and co-workers, exacerbation of a pre-existing physical condition, physical injury, disruption of his personal life, financial injury, lost benefits, lost wages and the loss of enjoyment of the ordinary pleasures of everyday life.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in his favor as follows:

(a)  Monetary damages to compensate Plaintiff for all lost salary and benefits from the time Defendant's improper conduct commenced to the time of the award, plus all accrued interest thereon;

(b)  Monetary damages to compensate Plaintiff for all future lost salary and benefits;

(c)  Liquidated damages equal to an amount awarded hereunder, pursuant to FMLA § 107(a)(1)(A)(iii);

(d)  Reasonable attorney's fees, expert witness fees and costs of litigation and costs of this suit;

(e)  Satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and this Court deem just under the circumstances.

-8-

## COUNT III
### *Intentional Infliction of Emotional Distress*
### *Advocate Health and Hospitals Corporation*

1 - 53.  Plaintiff repeats and realleges paragraphs 1 through 53 of Count II, as paragraphs 1

through 53 of Count III, as though fully set forth herein.

54.  At all times relevant to this action, the actions and inactions of the Defendant, its' agents

and employees in forcing Plaintiff to chose between his job and obtaining medical care

for his serious health conditions, were extreme and outrageous.

55.  Defendant's employees were at all relevant times acting as agent/ employees of Advocate

Health and Hospitals Corporation.

56.  The Defendant its agents and employees at all times relevant to this cause of action,

intended that their conduct inflict severe emotional distress upon the Plaintiff, or knew

that there was a high probability that their conduct would cause severe emotional distress.

57.  As a result of Defendant's actions or inactions in interfering with Defendant's ability and

right to keep his job and care for his serious health condition, intentionally interfering

with Plaintiff's right to FMLA leave and in creating a situation in which Plaintiff was

forced to chose between his life and his job, Plaintiff was and continues to be caused

severe emotional distress.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court:

a.     Award compensatory damages, in an amount in excess of Seven Hundred and

Fifty Thousand ($750,000.00) dollars.

b.     Award Plaintiff attorney's fees and costs of this lawsuit

c.     Grant Plaintiff such other and further relief as this Honorable Court deems

appropriate.

## COUNT IV
*Race Discrimination in Violation of 42 U.S.C. 1981*
*Against Advocate Health and Hospitals Corporation*

1-57.  Plaintiff repeats and re-alleges paragraphs 1 through 57 above as paragraphs 1 through 57

of Count IV, as though fully set forth herein.

58.  Plaintiff is black.

59.  Plaintiff received good evaluations prior to his discharge and was meeting the legitimate

expectations of the Defendant.

60.  Plaintiff was targeted for harassment because of his race.

61.  Plaintiff was targeted for false discipline because of his race.

62.  Plaintiff was denied pay equivalent to his non-black counterparts because of his race.

63.  Plaintiff was denied reinstatement because of his race.

64.  Non-black employees were treated favorably as compared to black employees because of

race.

65.  Plaintiff suffered the above discrimination and harassment at the hands of the Defendant,

its supervisors and/or agents.

66.  Plaintiff informed and complained to the Defendant of these actions yet no corrective

action was taken.

67.  Plaintiff was discharged on false and pretextual grounds because of his race.

68.  Defendant's actions have caused Plaintiff to suffer harm and injury to his good

reputation, extreme mental anguish. Painful embarrassment among his friends and co-

workers, disruption of his personal life, lost wages, income, benefits, opportunity for

-10-

advancement, exacerbation of a pre-existing physical condition, physical injury and the

loss and enjoyment of the ordinary pleasures of everyday life.

**WHEREFORE,**    Plaintiff respectfully prays that this Honorable Court grant the following

relief:

   a.    Award compensatory damages against the Defendant in excess of Seven Hundred

          and Fifty Thousand dollars ($750,000.00)

   b.    Award the Plaintiff back pay, pre-judgment interest, lost benefits, reinstatement or

          front-pay, in an effort to make Plaintiff whole.

   c.    Award punitive damages in excess of Three Million dollars ($3,000,000.00)

   d.    Award reasonable attorney's fees and costs of this suit.

   e.    Such other relief as this Honorable Court deems just and

          proper under the circumstances.


                                    Respectfully submitted,


                              By: _____
                                    Charles Siedlecki
                                    One of Plaintiff's Attorney's



Charles Siedlecki & Associates, P.C.
10540 South Western Avenue
Suite 405
Chicago, Illinois 60643
(773) 881-2535


                                    -11-

GSB/cal

DOCKETED
JUN 1 7 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

JUDGE GOTTSCHALL

| | |
|---|---|
| JANNIE WATTS and KATHERINE A. MAZUR, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) |
| Plaintiffs | ) ) ) |
| vs. | ) ) |
| ADVOCATE HEALTH CARE NETWORK, an Illinois not-for-profit corporation, and ADVOCATE HEALTH AND HOSPITALS CORPORATION, an Illinois not-for-profit corporation, and JOHN DOES 1 THROUGH 10 | ) ) ) ) ) ) ) |

MAGISTRATE JUDGE BOBRICK

**04C  4062**

Civil Action No.: _____

**Jury Trial Demanded**

U.S. DISTRICT COURT
CLERK
04 JUN 16 PM 2: 53
FILED-ED4

### CLASS ACTION COMPLAINT

Plaintiffs, JANNIE WATTS and KATHERINE A. MAZUR, by and through their attorneys,

CLIFFORD LAW OFFICES, P.C., and SCRUGGS LAW FIRM, P.A., file this Class Action

Complaint seeking monetary damages, injunctive and other equitable relief against ADVOCATE

HEALTH CARE NETWORK, an Illinois not-for-profit corporation, ADVOCATE HEALTH AND

HOSPITALS CORPORATION, an Illinois not-for-profit corporation, and JOHN DOES 1

THROUGH 10, and in support thereof, alleges the following:

### I.
### INTRODUCTION

ADVOCATE HEALTH CARE NETWORK and ADVOCATE HEALTH AND

HOSPITALS CORPORATION (collectively referred to as "Advocate"), both of which are registered

as Illinois not-for-profit corporations, hold themselves out as charitable, non-profit entities.  In

exchange for their promise to operate as a charitable, non-profit entity and that they would not

|-|

engage in business "directly or indirectly, for the benefit of private interests, Advocate receives millions of dollars each year in Federal, State and local tax exemptions.

In reality, Advocate is anything but charitable. While it promises to provide affordable care to the uninsured poor, Advocate has and continues to engage in a practice and pattern of charging inordinate, unreasonable and inflated prices for medical care to its uninsured patients who are all too often impoverished members of the community with little or no means to pay. Uninsured patients are generally unable to pay these inflated and unreasonable charges. Advocate, as a self-proclaimed charity, also pursues aggressive collection techniques which often result in lawsuits, judgments, garnishments and bankruptcies against uninsured patients.

Plaintiffs and the Class are the third party beneficiaries of the contractual promises made to Federal, State and local governmental bodies to provide charitable care to the uninsured poor. The Class also includes all uninsured patients who, regardless of their financial status, were charged unreasonable and excessive rates for medical care.

Advocate and its many related entities which employ the same business model have thereby amassed and hoarded billions of dollars in cash and marketable securities, which otherwise should be available to provide charity care to the uninsured who were contemplated by the tax exemption. Moreover, enormous property and revenues have been insulated from taxation, the effect of which has bestowed upon Advocate and its confederates greater liquidity than that possessed by most state and local governments.

This Complaint asks the Court to certify a Class of the intended healthcare consumer beneficiaries of Advocate's commitment to the government, more fully defined below, and to require Advocate to honor the commitments for which it received its unique freedom from taxation.

## II.

*Class Action Complaint - Page 2*

## PARTIES

1.      Plaintiff JANNIE WATTS is an adult resident citizen of Chicago, Illinois, residing at 1122 East 133rd Street and is a healthcare consumer.

2.      Plaintiff KATHERINE A. MAZUR is an adult resident citizen of Chicago, Illinois, residing at 4559 North Kilbourn Avenue and is a healthcare consumer.

3.      **ADVOCATE HEALTH CARE NETWORK** and **ADVOCATE HEALTH AND HOSPITALS CORPORATION** are both Illinois not-for-profit corporations with their principal place of business in Oak Brook, Illinois. (These Defendants are hereinafter collectively referred to as "Advocate.") Advocate is a healthcare organization of physicians and health care professionals and is recognized as the leading integrated health delivery network in the United States.

4.      The various Defendants, designated John Does 1 through 10, are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include but are not limited to agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint tortfeasors, tortfeasors, contractors, co-conspirators, joint adventures, partners, stockholders, and any other person or entitled of the named Defendants and/or any other persons who may be liable to the Plaintiffs for the claims asserted herein.

### III.
### JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C. §1331 and 1367, because Plaintiffs' claims arise out of a federal contract between Advocate and the United States Government in which Advocate agreed to provide mutually affordable medical care to its uninsured patients in exchange for a tax exempt status under 26 U.S.C. §501(c)(3). This

Court also has subject matter jurisdiction of this controversy under 42 U.S.C. § 1395 because Advocate conditioned providing emergency room medical care to the Plaintiffs and the Class on their ability to pay and on financial guarantees from the Plaintiffs and the Class. This Court further has subject matter jurisdiction of this controversy under 28 U.S.C. § 1340 because Plaintiffs' claims arise out of Advocate's duties and obligations under 26 U.S.C. §501(c)(3).

      6.      Venue in this district is proper pursuant to 28 U.S.C. §1391(b).

**IV.**
**FACTS**

      7.      Advocate represents itself as a Chicago based, tax exempt, charitable, nonprofit hospital system. It was incorporated in 1995 as the result of a merger between EHS Healthcare and the Lutheran General Health System. Advocate traces its beginnings back more than 100 years to hospitals formed by predecessor churches of the Evangelical Lutheran Church in America and the United Church of Christ. Advocate is currently affiliated with the Illinois Conference of the United Church of Christ and the Metropolitan Chicago Synod of the Evangelist Lutheran Church of America.

      8.      Advocate is the largest not-for-profit healthcare provider in the Metropolitan Chicago area and is believed to be one of the top ten systems in the country. It has the highest market share in its six county service area surrounding Chicago, with a 14.5% market share in 2002. It is also the largest provider of healthcare to the uninsured, serving approximately two out of every ten uninsured patients in Cook County. Advocate currently maintains eight hospitals and according to the Illinois Secretary of State operates under several different assumed names including:

> Advocate Bethany Hospital
> Advocate South Suburban Hospital
> Advocate Christ Hospital and Medical Center
> Advocate Trinity Hospital

*Class Action Complaint - Page 4*

Advocate Lutheran General Hospital
Advocate Good Samaritan Hospital
Advocate Good Shepherd Hospital
Advocate Hope Children's Hospital
Advocate Lutheran General Children's Hospital
Advocate Southwest Hospital
Advocate Clinical Research
Northwest Infectious Disease
Endeavor Plus
Counseling Center of Lutheran General Hospital
Good Samaritan Health and Wellness Center
Barrington Cancer Care Center
Advocate Christ Medical Center
Midwest Children's Brain Tumor Center, NFP
The Advocate Center for Pediatric Research
Childhood Trauma Treatment Program
Advocate Health - EHC
Advocate Fitness
Lutheran General Laureate Day School
Advocate Occupational Hospital
Lutheran General Cancer Care Center
Helping Hand Program
Lutheran General Recovery Center
Lutheran General Children's Daycare
Advocate Research and Education Institute
Lutheran General Sports Medicine Center
Wellspring Family Care

9.      Advocate is also one of the most financially successful hospital systems in the

Country.  According to Fitch Bond Ratings, in 2002 Advocate generated over $2 Billion in net

patient revenue. Its total unrestricted net assets are valued at over $1.2 billion. At the close of 2002,

it had approximately $1 billion in unrestricted cash on hand.

10.     Advocate entered into express and/or implied Agreements with the United States

Government, the State of Illinois, Cook County, and local governmental bodies to provide mutually

affordable medical care to all of its patients in return for substantial tax exemptions.  An express

and/or implied contractual relationship was thereby created between Advocate and the United States

Government, the State of Illinois, and local governmental bodies to accomplish such purpose. Advocate's uninsured patients during the period of 1995 to June 15, 2004, were the express and/or implied intended third party beneficiaries of such Agreements.

11.    Since 1995, Advocate applied for and has received a federal income tax exemption as a purported "charitable" institution under 26 U.S.C. §501(c)(3).  Under §501(c)(3), Advocate is required to operate "exclusively"  in furtherance of a charitable purpose, with no part of its operations attributable directly or indirectly to any noncharitable commercial purpose and with no part of its earnings inuring to the benefit of any private individual or entity.   By accepting this favorable tax exemption, Advocate explicitly and/or implicitly agreed: to operate exclusively for charitable purposes; to provide an emergency room open to all of its uninsured patients without regard to their ability to pay for such care; to provide mutually affordable medical care to all of its uninsured patients;  not to charge its uninsured patients the highest and full undiscounted cost for medical care; not to charge its  uninsured patients a higher rate for medical care than its insured patients; t o u se i ts n et a ssets a nd r evenues t o p rovide m utually a ffordable m edical c are t o i ts uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

12.    Since 1995, Advocate applied for and has also received state and local income, property and sales tax exemptions from the State of Illinois, Cook County, and other local governmental bodies under 35 ILCS 200/15-65. Under §15-65,  in order for a nonprofit hospital to be exempt from taxation it must operate actually and exclusively for charitable purposes and: no fee should be charged to any patient who is unable to pay; charity care must be dispensed to all who need and apply for it; no gain or profit is derived from any patient unable to pay; and no obstacle is placed in the way of those who are in need of charitable medical care. By accepting these favorable

*Class Action Complaint - Page 6*

state and local tax exemptions, Advocate explicitly and/or implicitly agreed: to operate exclusively

for charitable purposes; to provide mutually affordable medical care to all of its uninsured patients;

not to charge its uninsured patients the highest and full undiscounted cost of medical care; not to

charge its uninsured patients a higher rate for medical care than its insured patients; to use its net

assets and revenues to provide mutually affordable medical care to its uninsured patients; and not

to pursue outstanding medical debt from its uninsured patients through humiliating collection

efforts, lawsuits, liens and garnishments.

13.    Despite its favorable tax exempt status and its substantial net revenues and asset

reserves in the billions of dollars, Advocate has breached its Agreements with the United States

Government, the State of Illinois and other local governmental bodies by failing to provide

emergency room medical care to its uninsured patients without regard to their ability to pay for such

care, charging its uninsured patients the highest and full undiscounted cost for medical care at

grossly inflated rates from the actual cost of providing such services, providing discounted medical

care to its Board of Directors and entities connected to its Board of Directors, allowing noncharitable

for-profit physician groups and service providers to derive profit from its tax exempt hospitals, and

by engaging in aggressive efforts to collect such medical debt from its uninsured patients through

abusive, harassing, and humiliating collection lawsuits, liens, and garnishments.  Advocate's

uninsured patients have therefore not received the benefit of the Agreements between Advocate and

the United States Government, the State of Illinois and other local governmental bodies.  These

uninsured patients and healthcare consumers primarily consist of the working class who do not

qualify for Medicaid or charity care but cannot afford private health insurance and/or cannot obtain

health insurance through their employers.

14.    Advocate sets its charges for medical services at highly inflated rates that bear no connection to the actual cost of providing the service. While Advocate gives private insurance companies and governmental third party payors like Medicare and Medicaid large discounts off this gross or "sticker price," all of its uninsured patients are charged 100% of the full sticker price, which is two to three times more than Advocate charges its insured patients for the same service. Furthermore, Advocate provided substantial discounts to "for profit" insurers in violation of the letter and spirit of 26 U.S.C. §501(c)(3) and 35 ILCS 200/15-65. Upon information and belief, Advocate charges its uninsured patients over $50 million per year more than its insured patients for the same service.

15.    Advocate realizes substantial revenues from this discriminatory charging practice. Defendant Advocate has the highest gross charges for the uninsured in Cook County. Defendant Advocate also realizes  the highest profit per discharge on its uninsured patients who pay such grossly inflated prices.

16.    Despite sizeable net revenues and its asset reserves in the billions of dollars, Advocate provides little to no charity care to its uninsured  patients. Advocate's level of charity care constitutes only a small amount of its gross charges. Since its formation in 1995, Advocate has provided the lowest level of uncompensated care in Cook County. Advocate has never provided an amount of uncompensated care equal to its market share.   Notwithstanding its tax exemptions, Advocate provides less charity care than its for-profit hospital competitors.

17.    In addition, Advocate reports its amount of charity care as the amount of gross charges -- which are grossly inflated -- rather than the cost of actually providing the service.

18.    Before Advocate admits any patient, including its uninsured  patients, into its hospitals and/or emergency rooms for emergency medical care, it requires its patients to sign a form

*Class Action Complaint - Page 8*

contract promising to pay Advocate in full for unspecified and undocumented charges for medical care that are set by Advocate in its sole discretion. Advocate will not admit a patient into its emergency rooms for emergency medical care unless and until that patient agrees to pay Advocate in full for such unspecified and undiscounted charges.

19.     Not only does Advocate charge its uninsured patients the highest rates for medical care, which they cannot afford to pay, it has also engaged in the uniform pattern and practice of aggressively pursuing such debt through abusive, humiliating, and harassing collection efforts, such as collection lawsuits, liens, and garnishments. Advocate has filed approximately one thousand lawsuits in Cook County against its uninsured patients for uncollected medical debt. Such lawsuits have driven many Advocate patients to bankruptcy and/or financial ruin.

20.     While Advocate charges its uninsured patients the full undiscounted cost for medical care, upon information and belief it provides substantial discounts off the gross charges to its Board of Directors and entities owned, controlled or connected to its Board of Directors. These discounts are in direct violation of Advocate's obligations under 26 U.S.C. §501(c)(3) and 35 ILCS 200/15-65, which forbids such cronyism and self-dealing.

21.     Advocate also allows numerous outside for-profit physician groups and service providers to use its tax-exempt hospitals to derive a profit. These for-profit physician groups and service providers practice in Advocate's taxpayer-subsidized hospitals and then bill patients for work done at these tax-exempt hospitals. These for-profit physician groups and service providers are non-charitable entities which do not have a charitable mission or purpose. By allowing noncharitable for-profit entities with no charitable mission to derive a profit from its charitable tax-exempt hospitals, Advocate has not operated actually and exclusively for charitable purposes in violation of its

obligations under 26 U.S.C. §501(c)(3), and 35 ILCS 200/15-65, which  specifically prohibits charitable tax-exempt property to be used for noncharitable purposes.

22.    The American Hospital Association ("AHA"), the self-proclaimed representative of Advocate and the nonprofit hospital industry, provides substantial assistance and guidance to Advocate and the nonprofit hospital industry on its billing and collection practices for uninsured patients.

23.    The AHA also falsely justifies these billing and collection practices employed by Advocate to government entities.  On December 16, 2003, the AHA sent a letter to the United States Department of Health and Human Services Secretary Tommy Thompson in which the AHA concealed and misrepresented Advocate's billing and collection practices.  Specifically, the AHA, while admitting that Advocate and its nonprofit hospital members charge its uninsured patients the full price for medical care, falsely represented to the Secretary that Advocate and its member nonprofit hospitals were required by the federal Medicare regulations to charge and aggressively collect such grossly inflated medical expenses.  On February 19, 2001, Secretary Thompson, as the ultimate governmental authority on the applicable Medicare regulations, exposed the falsity of the AHA's representations, stating that the Medicare regulations have never required nonprofit hospitals to charge its uninsured patients the full price for medical care.

## V.
## PLAINTIFFS - HEALTHCARE CONSUMERS

24.    Plaintiff JANNIE WATTS ("Watts") is a divorced mother who resides in the Altgeld Gardens housing project.    Watts has been employed as a community living specialist assisting mentally deficient persons and was the sole support for herself and her son.  In 1998, her then 16-

year old son suffered numerous gunshot wounds while a bystander and was hospitalized. Watts, because she was employed, was not eligible for public aid and had no health insurance coverage for her son. Watts was required to sign a guaranty of payment to Advocate's Christ Hospital. The charges for treatment of her sone totaled $48,008.47 and subsequently Watts received numerous threatening and harassing telephone calls from Advocate or its agents. Watts was sued by Advocate in the Circuit Court of Cook County. Advocate voluntarily dismissed the Complaint because the Sheriff could not serve Watts with Summons. Watts has insufficient assets and income to satisfy this obligation.

25.    Plaintiff KATHERINE A. MAZUR ("Mazur") is nineteen years of age and a student at Loyola University in Chicago. In March, 2003, Mazur was involved in a serious automobile accident while a passenger in a vehicle driven by a friend who had no insurance. Mazur was delivered unconscious to the Lutheran General Hospital in Park Ridge, Illinois, where she remained in a coma for nine days. Mazur had no health insurance coverage and Advocate was advised of this fact when Mazur was admitted. Before she was released, Mazur was required to sign a guaranty of payment. Advocate subsequently billed Mazur in the amount of $59,758.19. Mazur and her parents received several calls each day demanding payment and threatening litigation, garnishments and liens. Mazur has been sued in the Circuit Court of Cook County, Illinois, and has not defended this action since she has no funds with which to contest this lawsuit. A default has been entered against Mazur in that lawsuit. Mazur has no funds with which to pay this debt as she attends Loyola University of Chicago on a full-time basis, has limited income, and has no assets.

## VI.
## CLASS ACTION ALLEGATIONS

26.    Plaintiffs bring this class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a Class consisting of all uninsured patients and healthcare consumers of Advocate Health Care Network and Advocate Health and Hospitals Corporation from January 1, 1995 to June 15, 2004, who did not qualify for Medicare and/or Medicaid and who were charged an amount for medical care in excess of the amount charged to Defendants' Medicare patients, and/or were pursued for such debt through collection efforts and lawsuits.

27.    Plaintiffs JANNIE WATTS and KATHERINE A. MAZUR are healthcare consumers and members of the Class they seek to represent.

28.    The Class consists of thousands of individual healthcare consumers and therefore is so numerous that joinder is impracticable.

29.    Plaintiffs' claims are typical of the claims of the Class because they and all of the Class sustained damages as a result of Advocate's unfair and discriminatory charging and/or collection practices seeking the full undiscounted cost of medical care.

30.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)    whether Advocate entered into express and/or implied Agreements with the United States Government, the State of Illinois and other local governmental bodies that in return for substantial tax exemptions, it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; and not to seek to collect outstanding medical debt from the

Plaintiffs and the Class through aggressive, abusive, and humiliating collection practices;

(b)     whether Advocate breached said Agreements with the U.S. Government, State of Illinois and other local governmental bodies by: failing to operate exclusively for charitable purposes; failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; failing to provide mutually affordable medical care to the Plaintiffs and the Class; and by seeking to collect outstanding medical debt from the Plaintiffs and the Class through aggressive, abusive, and humiliating collection practices;

(c)     whether the Plaintiffs and the Class as intended healthcare consumers are express and/or implied intended third party beneficiaries to said Agreements between Advocate and the United States Government, the State of Illinois and other local governmental bodies;

(d)     whether Advocate charged the Plaintiffs and the Class the full undiscounted cost of medical care in violation of its charitable, nonprofit, tax exempt status;

(e)     whether Advocate charged the Plaintiffs and the Class higher amounts for medical care than its insured patients in violation of its charitable, nonprofit, tax exempt status;

(f)     whether Advocate profited by charging the Plaintiffs and the Class the highest rates for medical care;

(g)     whether Advocate charged the Plaintiffs and the Class unreasonable charges for medical care;

(h)     whether Advocate conditioned emergency room medical screening and/or treatment to the Plaintiffs and the Class on their ability to pay or financial guarantees to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(i)     whether Advocate should have utilized its sizable financial resources to provide a greater amount of mutually affordable medical care to the Plaintiffs and the Class pursuant to its charitable, nonprofit, tax exempt status;

(j)     whether Advocate has utilized aggressive, unfair, abusive, and harassing collection practices, lawsuits, liens, and garnishments to collect medical payments from the Plaintiffs and the Class in violation of its charitable, nonprofit, tax exempt status;

(k)     whether Advocate violated the anti-inurement provision under 26 U.S.C. §501(c)(3) by providing substantial discounts in medical care to its Board of Directors and entities connected to its Board of Directors;

(l)     whether Advocate failed to operate exclusively for charitable purposes by allowing noncharitable for-profit entities to derive a profit from its use of its tax-exempt hospitals in violation of 26 U.S.C. §501(c)(3) and 35 ILCS 200/15-65;

(m)     whether Advocate breached its duty of good faith and fair dealing to the Plaintiffs and the Class;

(n)    whether a charitable trust was created for the benefit of the Plaintiffs and the
Class;

(o)    whether Advocate's actions as alleged in the Complaint violated Illinois'
Consumer Fraud and Deceptive Business Practices Act;

(p)    whether Advocate has been unjustly enriched at the Plaintiffs' and the Class'
expense;

(q)    whether the AHA conspired with Advocate to breach its contracts with the
United States Government, State of Illinois, and other governmental bodies;

(r)    whether the AHA aided and abetted Advocate in breaching its contracts with
the United States Government, State of Illinois, and other governmental
bodies.

(s)    whether Advocate should be enjoined from continuing its unfair,
discriminatory, and abusive conduct; and

(t)    whether Advocate is liable to the Plaintiffs and the Class in this action, as
alleged in the Complaint.

31.    All common questions are able to be resolved through the same factual occurrences
as specifically and/or generally alleged herein.

32.    Plaintiffs will fairly and adequately represent and protect the interests of the members
of the Class. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained
competent and experienced counsel in complex class actions, and mass tort and products liability
litigation. Counsel is committed to the vigorous prosecution of this action.

33.    The prosecution of separate actions by the Plaintiffs and individual members of the Class against the Defendants would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

34.    A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy.

35.    The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights. In the absence of a class action, the Defendants will retain the benefits of their wrongdoing.

36.    Class Certification pursuant to Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

37.    Class Certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, Defendant Advocate has acted and/or refused to act on grounds generally applicable to the Plaintiffs and the Class, thereby warranting appropriate injunctive and/or declaratory relief.

## VII.
## CAUSES OF ACTION

### COUNT ONE
### THIRD PARTY BREACH OF CONTRACT

38.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 37 of the Complaint.

39.    On or about 1995, Advocate, as a purported charitable entity under 26 U.S.C. §501(c)(3), entered into an express and/or implied Agreement with the United States Government

*Class Action Complaint - Page 16*

pursuant to §501(c)(3) that in return for a substantial federal income tax exemption valued in the millions of dollars it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; not to pursue outstanding medical debt from the Plaintiffs and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals or entities.

40.    On or about 1995, Defendant Advocate, as a purported institution of public charity under 35 ILCS 200/15-65, also entered into express and/or implied Agreements with the State of Illinois and other governmental bodies pursuant to 35 IL CS §200/15-65 that in return for substantial state income, property, and sales tax exemptions valued in the millions of dollars, it would: operate actually and exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; not to pursue outstanding medical debt from the Plaintiffs and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals and entities.

41.    The Plaintiffs and the Class are the express and/or implied intended third party beneficiaries of Advocate's Agreements with the United States Government, the State of Illinois and other local governmental bodies.

42.    Advocate breached the above-mentioned Agreements with the United States Government, the State of Illinois and other local governmental bodies by: failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; charging the Plaintiffs and the Class the highest and full undiscounted cost of

medical care; charging the Plaintiffs and the Class significantly more than its insured patients for the same medical services; failing to use its net assets and revenues in the billions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class; providing substantial discounts off the gross charges to its Board of Directors and entities connected to its Board of Directors; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals. As a result of such conduct, the Plaintiffs and the Class have not received the benefit of Defendant Advocate's Agreements with the United States Government, the State of Illinois and other local governmental bodies. Such conduct is also contrary to the Defendant Advocate's purported charitable purpose and its nonprofit status.

43.    The aforementioned breaches of contract have proximately caused the Plaintiffs and the Class of healthcare consumers economic injury and other damages.

## COUNT TWO
## BREACH OF CONTRACT

44.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 43 of the Complaint.

45.    Alternatively, upon admission, the Plaintiffs and the Class entered into express form contracts with Advocate whereby the Plaintiffs and the Class were required to agree to pay unspecified and undocumented charges for medical care set by Advocate in its sole discretion. Imputed in these contracts is the express and/or implied contractual obligation by Defendant Advocate that it would charge the Plaintiffs and the Class no more than a fair and reasonable charge for such medical care.

46.    Similarly, by accepting and admitting the Plaintiffs and the Class into its hospitals for medical care, Advocate undertook an express and/or implied contractual obligation to charge the Plaintiffs and the Class no more than a fair and reasonable charge for such medical care.

47.    Advocate breached its contractual obligations under these form contracts by charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care. These charges are unfair, unreasonable and bear no relation to the actual cost of providing such services.

48.    The aforementioned breaches of contract have proximately caused the Plaintiffs and the Class of healthcare consumers economic injury and other damages.

## COUNT THREE
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

49.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 48 of the Complaint.

50.    Advocate's conduct as alleged above, also constitutes a breach of its duty of good faith and fair dealing.

51.    The Plaintiffs and the Class are express and/or implied intended third party beneficiaries of Agreements between the United States Government, the State of Illinois and other local governmental bodies, wherein Advocate agreed to provide mutually affordable medical care to the Plaintiffs and the Class in return for substantial federal, state, and local tax exemptions.

52.    Alternatively, the Plaintiffs and the Class entered into an express and/or implied contractual relationship with Advocate wherein each Plaintiff and Class member was admitted to an Advocate hospital for the purpose of receiving medical care.

53.    Advocate breached its duty of good faith and fair dealing to the Plaintiffs and the Class by: failing to provide emergency room medical care to the Plaintiffs and the Class without

regard to their ability to pay for such care; charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than it charged its insured patients for the same services; charging the Plaintiffs and the Class unreasonable charges for medical care; utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly inflated medical debt from the Plaintiffs and the Class; providing substantial discounts off the gross charges to its Board of Directors and entities connected to the Board of Directors; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

54.     Such unfair and bad faith conduct by Advocate proximately caused economic injury and other damages to the Plaintiffs and the Class of healthcare consumers.

## COUNT FOUR
## BREACH OF CHARITABLE TRUST

55.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 54 of the Complaint.

56.     By accepting federal, state and local tax exemptions under 26 U.S.C. §501(c)(3) and 35 ILCS 200/15-65, Advocate created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients.

57.     The Plaintiffs and the Class are the intended beneficiaries of this charitable trust created by virtue of Defendant Advocate's acceptance of federal, state and local tax exemptions.

58.     Advocate has breached its charitable trust obligations to the Plaintiffs and the Class by:  failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class significantly more than its

insured patients for the same medical services; failing to use its net assets and revenues in the

billions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing

aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments

to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class; providing

substantial discounts off the gross charges to its Board of Directors and entities connected to its

Board of Directors; and allowing noncharitable for-profit entities to derive a profit from use of its

tax-exempt hospitals. As a result of such conduct, the Plaintiffs and the Class have not received the

benefit of the charitable trust created for their benefit.

59.     The aforementioned breaches of charitable trust have caused the Plaintiffs and the

Class of healthcare consumers economic injury and other damages.

**COUNT FIVE**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

60.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set

forth in paragraphs 1 through 59 of the Complaint.

61.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2,

was enacted to prohibit and protect Illinois citizens from deceptive, fraudulent and unfair conduct.

62.     As alleged above, Advocate's conduct in charging the Plaintiffs and the Class the

highest and full uncompensated cost for medical care and its charging the Plaintiffs and the Class

a higher amount than its insured patients for the same medical services, despite its charitable,

nonprofit, tax exempt status, is in violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act because it is unfair, discriminatory, unconscionable, unethical, immoral, and

oppressive. Such conduct is against public policy and has caused substantial economic injury to the

Plaintiffs and the Class.

63.     Moreover, as alleged above, Advocate's aggressive, abusive, and harassing efforts to collect such inflated, undiscounted and uncompensated medical debt from the Plaintiffs and the Class through collection lawsuits, liens and garnishments, despite its charitable, nonprofit, tax exempt status, is unfair, discriminatory, unethical, immoral, and oppressive.  Such conduct is also against public policy and  has caused substantial economic injury to the Plaintiffs and the Class, including but not limited to bankruptcy and/or financial ruin.

64.     The aforementioned violations of the Illinois Consumer Fraud and Deceptive Business Practices Act have caused the Plaintiffs and the Class economic injury and other damages.

### COUNT SIX
### VIOLATIONS OF THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT

65.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 64 of the Complaint.

66.     Under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395, a "participating hospital" must provide a medical screening examination to any individual that comes into its emergency room for an "emergency medical condition" in order to determine whether such emergency medical condition exists.  If such an "emergency medical condition" does in fact exist, the "participating hospital" must provide sufficient medical examination and/or treatment necessary to stabilize the condition.  The express intent of the EMTALA is to prohibit hospitals from denying or delaying emergency medical treatment to patients without medical insurance because of their uninsured status.

67.     Advocate is a "participating hospital" as defined in 42 U.S.C.  §1395 cc and §1395 dd.

68.    Before Advocate would provide emergency medical screening and/or treatment for "emergency medical conditions" to the Plaintiffs and the Class, it first analyzed their ability to pay for such medical care and required the Plaintiffs and the Class to sign form contracts agreeing to pay Advocate in full for unspecified and undiscounted medical charges. Defendant Advocate would not provide emergency medical screening and/or treatment to the Plaintiffs and the Class unless they were able to pay for such medical care or until they agreed to sign a form contract guaranteeing payment in full for medical care. By conditioning medical screening and/or treatment for "emergency medical conditions" on the Plaintiffs' and the Class' ability to pay and financial guarantees, and refusing to provide emergency medical screening and/or treatment until such guarantees were given, Advocate violated the EMTALA, 42 U.S.C. §1395 dd. Such conduct in failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care is also in violation of 26 U.S.C. §501(c)(3).

69.    Such violations of 42 U.S.C. §1395 dd have proximately caused the Plaintiffs and the Class economic injury and other damages.

### COUNT SEVEN
### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

70.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 69 of the Complaint.

71.    Advocate has been unjustly enriched at the expense of Plaintiffs and the Class. As alleged above, Advocate has failed to provide mutually affordable medical care to the Plaintiffs and the Class despite receiving millions of dollars in federal, state, and local tax exemptions for such purpose. Moreover, contrary to its charitable, nonprofit, tax exempt status, Advocate has failed to utilize its substantial net assets and revenues, valued in the billions of dollars, to provide mutually

affordable medical care to the Plaintiffs and the Class. Advocate has also realized profits in the millions of dollars by charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care and by charging the Plaintiffs and the Class a higher amount for medical care than its insured patients.

72.    The Plaintiffs and the Class have suffered severe economic injury and other damages as a proximate consequence of Advocate's unjust enrichment.

73.    As a result of Advocate's breach of contract along with its wrongful, unfair, discriminatory, abusive, and noncharitable conduct, it is in possession of tax savings, profits and other assets that it in good conscience and equity should not be entitled to retain. The Plaintiffs and the Class are therefore entitled to all damages resulting from Advocate's unjust enrichment, including but not limited to, the imposition of a constructive trust in the amount of Advocate's federal, state and local tax exemption savings. The Plaintiffs and the Class are also entitled to the imposition of a constructive trust on all profits Advocate wrongfully obtained by charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care. The Plaintiffs and the Class are further entitled to the imposition of a constructive trust on the difference between the amount t Advocate has charged the Plaintiffs and the Class and the amount it has charged its insured patients. L astly, the P laintiffs and the Class are, therefore, e ntitled t o t he i mposition o f a constructive trust on Advocate's net assets and revenues in an amount sufficient to provide to the Plaintiffs and the Class mutually affordable medical care pursuant to its charitable, nonprofit, tax exempt status.

### COUNT EIGHT
### CIVIL CONSPIRACY/CONCERT OF ACTION

74.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 73 of the Complaint.

75.    The AHA presents itself in its various websites and publications as the representative and advocate for the nonprofit hospital industry, including Advocate. According to its website, the AHA "ensures that members' perspectives and needs are heard and addressed in national health policy development, legislative and regulatory debates, and judicial matters." the AHA also advises Advocate and its nonprofit hospital members on its billing and collection practices concerning the uninsured.

76.    The AHA, through its billing and collection assistance, December 16, 2003, letter to Secretary Thompson, lobbying efforts, and other representations, actively conspired and acted in concert with Advocate to breach Advocate's contracts with the United States Government, State of Illinois and other local governmental bodies, the Plaintiffs and the Class by assisting, concealing, and falsely representing and justifying Advocate's billing and collection practices.

77.    Specifically, such assistance, false justification, concealments and misrepresentations have allowed and enabled Advocate to continue to breach the aforementioned contracts by: failing to provide emergency room medical care to the Plaintiffs and the Class without regard for their ability to pay for such medical care; charging the Plaintiffs and the Class the highest and full cost of medical care; failing to provide mutually affordable medical care to the Plaintiffs and the Class; charging the Plaintiffs and the Class substantially more than its insured patients for the same medical services; failing to use its net assets and reserves in the billions of dollars to provide mutually affordable health care to the Plaintiffs and the Class; and engaging in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class.

78.    Such acts of conspiracy and concert in action by the AHA proximately caused Advocate to be unjustly enriched at the Plaintiffs' and Class' expense and also proximately caused the Plaintiffs and the Class economic injury and other damages.

## COUNT NINE
## AIDING AND ABETTING

79.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 78 of the Complaint.

80.    The AHA aided and abetted Advocate's breach of its tax exempt contracts with the United States Government, State of Illinois, other local governmental bodies, the Plaintiffs and the Class by providing substantial advisory assistance and guidance to Advocate on how to bill its uninsured patients the full undiscounted cost of medical care and how to collect such grossly inflated medical debt from the Plaintiffs and the Class through collection lawsuits, liens and garnishments.

81.    The AHA, through its December 17, 2003, letter to Secretary Thompson, lobbying efforts, and other representations, further aided and abetted Advocate's breaches of contract by falsely justifying, misrepresenting, and concealing Advocate's billing and collection practices to the federal, state and local governments as well as the Plaintiffs and the Class.

82.    Such substantial assistance by the AHA allowed and enabled Advocate to: fail to provide emergency room medical care to the Plaintiffs and the Class without regard for their ability to pay for such medical care; charge the Plaintiffs and the Class the highest and full cost of medical care; fail to provide mutually affordable medical care to the Plaintiffs and the Class; charge the Plaintiffs and the Class substantially more than its insured patients for the same medical services;

fail to use its net assets and revenues in the billions of dollars to provide mutually affordable health care to the Plaintiffs and the Class; and engage in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class.

83.     Such substantial assistance by the AHA proximately caused Advocate to be unjustly enriched at the Plaintiffs' and Class' expense and also proximately caused the Plaintiffs and the Class economic injury and other damages.

**COUNT TEN**
**INJUNCTIVE/DECLARATORY RELIEF**

84.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 83 of the Complaint.

85.     As a result of Advocate's wrongful, unfair, discriminatory, and unconscionable charging and collection practices, Plaintiffs and the Class have suffered and, unless abated, will continue to suffer severe and irreparable harm and injury.

86.     Accordingly, Plaintiffs and the Class respectfully request that this Court enter a preliminary and/or permanent injunction, in accordance with FRCP 23(b)(2), ordering Advocate to cease and desist: charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt from the Plaintiffs and the Class.

87.     Plaintiffs and the Class also seek a prospective Order from the Court, in accordance with FRCP 26(b)(2), requiring Advocate: to provide mutually affordable medical care to the

Plaintiffs and the Class; to charge the Plaintiffs and the Class no more for medical services than it charges its insured patients, and to cease its attempts to collect outstanding medical debt from the Plaintiffs and the Class until its has complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiff and the Class through a graduated payment plan or other means.

## VIII.
## DAMAGES

88.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 87 of the Complaint.

89.     As a direct and proximate result of Advocate's breach of contract, breach of duty of good faith and fair dealing, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, violation of the EMTALA, breach of charitable trust, and unjust enrichment, the Plaintiffs and the Class have suffered economic injury and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that upon a trial of this action, judgment will be entered against Advocate for:

1)     all economic, monetary, actual, consequential, and compensatory damages caused by Advocate's conduct;

2)     a constructive trust to be imposed on: Advocate's federal, state and local tax exempt savings; Advocate's profits obtained from charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care; and Advocate's net assets and revenues in an amount sufficient to provide the Plaintiffs and the class mutually affordable medical care;

3)    injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs

and the Class; and

4)    for such other and further relief as equity and justice may require.

Respectfully submitted,

JANNIE WATTS and KATHERINE A. MAZUR, Plaintiffs

BY: _____

One of Plaintiffs' Attorneys

**Co-Counsel for Plaintiffs:**

Robert A. Clifford
Michael S. Krzak
Sheri Tarr
Brian T. Nash
George S. Bellas, Of Counsel
CLIFFORD LAW OFFICES, P.C.
Attorneys for Plaintiffs
120 North LaSalle Street, 31st Floor
Chicago, Illinois 60602
Telephone: (312) 899-9090
Facsimile: (312) 251-1160

Richard F. Scruggs
Sidney A. Backstrom
Zach Scruggs
SCRUGGS LAW FIRM
120-A Courthouse Square
P.O. Box 1136
Oxford, MS 38655
Telephone: (662)281-1212
Facsimile: (662)281-1312

DOCKETED

MAR 28 2000

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOYCE D. SHANNON,                    ) JUDGE GETTLEMAN
                                     )
   Plaintiff,        ) Jury Trial Requested
                                     )
vs.                                  ) 00C 1870
                                     ) Case No. _____
ADVOCATE HEALTH AND                  )
HOSPITALS CORPORATION                )  MAGISTRATE JUDGE DENLOW
d/b/a ADVOCATE HEALTH CARE,          )
                                     )
   Defendant.        )

FILED-EOS
00 MAR 28 PM 1: 43
CLERK
U.S. DISTRICT COURT

### COMPLAINT

NOW COMES the Plaintiff, JOYCE D. SHANNON, by and through her attorneys, LISA

KANE & ASSOCIATES, P.C, and complaining of the Defendant, ADVOCATE HEALTH AND

HOSPITALS CORPORATION, d/b/a ADVOCATE HEALTH CARE, states as follows:

### PRELIMINARY STATEMENT

1. This is an action seeking redress for the violation of rights guaranteed to the

Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

The Plaintiff seeks mandatory injunctive relief and damages to redress Defendant's

discriminatory employment practices.  The Plaintiff seeks declaratory relief pursuant to 28

U.S.C. §§ 2201 and 2202.

### JURISDICTIONAL STATEMENT

2. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e-5(f) to secure

protection of and to redress deprivation of rights secured by 42 U.S.C. §2000e et seq. (Title VII).

### VENUE

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

1

### PARTIES

4.     The Plaintiff, JOYCE D. SHANNON, is an African-American female citizen of the United States who resides at 3229 Western Avenue, Park Forest, Illinois, 60466.

5.     The Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a ADVOCATE HEALTH CARE, is a public corporation properly recognized and sanctioned by the laws of the State of Illinois. The Defendant has continuously and does now employ more than fifteen employees and is engaged in an industry that affects commerce.

### PROCEDURE

6.     The Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on or about December 27, 1999. The EEOC issued the Plaintiff a Notice of Right to Sue on January 25, 2000.   The Notice of Right to Sue entitles the Plaintiff to initiate a civil action in the appropriate forum within ninety days (90) of the receipt of said Notice. The Plaintiff has initiated this action within said ninety (90) day period.

### BACKGROUND FACTS

7.     Plaintiff was hired by Defendant on or about January 24, 1999, as the (Corporate) Director of Health Information.

8.     Plaintiff was assigned to work at the Sykes Health Center located at 2555 South King Drive, Chicago, IL.

9. .    Plaintiff, as the (Corporate) Director of Health Information, was responsible for the indirect supervision and accountability of approximately thirteen medical records sites, a position that had been previously held by several employees performing multiple tasks.

Page -2-

10.    While in the course of her duties with the Defendant, Plaintiff was required to work with one "Dr. Scott Saran."

11.    Dr. Saran engaged in a course of conduct of derogatory verbal harassment and other intimidating conduct , such as public humiliation of Plaintiff in meetings and speaking towards Plaintiff in a condescending manner, which Dr. Saran inflicted upon Plaintiff but not on other non-African-American employees.

12.    Dr. Saran refused to take or return telephone calls from Plaintiff in a reasonable manner.

13.    Dr. Saran would circumvent Plaintiff's authority.

14.    Dr. Saran refused to assist the Plaintiff in her normal course of business, or work with her in a reasonable manner.

15.    Finally, Plaintiff reported his actions to the Defendant, but without result.

16.    Dr. Saran humiliated and discriminated against Plaintiff based on her race, black.

17.    Dr. Saran did not subject similarly situated white employees to the same treatment.

18.    In or around September of 1999, Plaintiff sought a transfer to the position of Manager of Health Information at Advocate South Suburban Hospital.

19.    One of Defendant's Corporate Recruiters (Malyssa O'Neal) informed Plaintiff, when Plaintiff sought such transfer, that "she ranked high in the management testing."

20.    Shortly thereafter, Plaintiff interviewed with the Defendant for the position.

21.    Plaintiff first interviewed with Brian Kelly (Kelly), Defendant's Chief Financial Officer.

22.    During her interview with Kelly, Kelly questioned Plaintiff's worth and her

Page -3-

salary, despite the fact that he already was privy to that information, as Plaintiff was an internal

candidate, and despite the fact that Plaintiff's salary was already known to Kelly, and despite the

fact that Defendant has a purported stated policy of de-emphasizing salary issues to assure

obtaining the most-qualified candidate.

23.     Kelly then passed Plaintiff on to two other employees (both white and both

whom would report to Plaintiff) who wondered out loud whether the "staff would be open to

change," alluding to Plaintiff's African-American ancestry.

24.     Historically, Defendant has not had African-Americans in high level management

positions at South Suburban Hospital.

25.     Plaintiff was told a week later that she was not selected for the position, despite

the fact that Defendant's apparent policy is to give preference to internal employees.

26.     Defendant ultimately hired an external candidate, a non-African-American.

27.     Defendant did discriminate against the Plaintiff based on her race, black.

28.     Defendant constructively discharged Plaintiff as the terms of her employment

became intolerable and oppressive.

## COUNT I - TITLE VII - RACE DISCRIMINATION

29.     Plaintiff incorporates paragraphs one (1) through twenty eight  (29) above by

reference as if fully set forth herein.

30.     The discriminatory employment practices of the Defendant alleged herein violate

the rights guaranteed to the Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §§2000e et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

Page -4-

A.      Declare the conduct of the Defendant to be violative of rights guaranteed to the Plaintiff pursuant to appropriate federal law;

B.      Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates because of race;

C.      Order Defendant to make whole JOYCE D. SHANNON by providing the affirmative relief necessary to eradicate the effects of the Defendant's unlawful practices;

D.      Grant the Plaintiff any consequential, compensatory, punitive and any other damages that the Court may deem appropriate;

E.      Grant the Plaintiff her attorney's fees, costs and disbursements; and

F.      Grant the Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT II - TITLE VII - RETALIATION

31.     Plaintiff incorporates paragraphs one (1) through thirty (30) above by reference as if fully set forth herein.

32.     The aforementioned acts and/or omissions of Defendant were in retaliation for her opposition to and reporting of discriminatory conduct.

33.     Plaintiff was retaliated against by Defendant for reporting and opposing discrimination in the workplace in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

34.     As a direct and proximate result of Defendant's retaliatory conduct, Defendant constructively discharged Plaintiff as the conditions of Plaintiff's employment became unendurable beyond what a reasonable person could tolerate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Declare the conduct of the Defendant to be violative of rights guaranteed to the Plaintiff pursuant to appropriate federal law;

B.      Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates because of race;

C.      Order Defendant to make whole JOYCE D. SHANNON by providing the affirmative relief necessary to eradicate the effects of the Defendant's unlawful practices;

D.      Grant the Plaintiff any consequential, compensatory, punitive and any other damages that the Court may deem appropriate;

E.      Grant the Plaintiff her attorneys fees, costs and disbursements; and

F.      Grant the Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT III - TITLE VII - SEXUAL HARASSMENT/DISCRIMINATION

35.     Plaintiff incorporates paragraphs one (1) through thirty four (34) above by reference as if fully set forth herein.

36.     Defendant discriminated against Plaintiff by subjecting her to different terms and conditions of her employment than similarly situated male employees based on her gender, female, and by allowing a hostile and abusive work environment, which was severe and pervasive enough, to affect Plaintiff adversely.

37.     As a direct and proximate result of Defendant 's discriminatory, harassing, and

abusive acts and omissions, Defendant constructively discharged Plaintiff as the conditions of

Plaintiff's employment became unendurable beyond what a reasonable person could tolerate.

Defendant's acts constitute unlawful discrimination on the basis of Plaintiff's gender, female, in

violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§2000e, et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Declare the conduct of Defendant to be violative of rights guaranteed to

the Plaintiff pursuant to appropriate federal law;

B.   Grant a permanent injunction restraining Defendant , its officers,

successors, assigns, and all persons in active concert or participation with them, from engaging in

any employment practice that unlawfully discriminates because of sex and unlawfully retaliates

against employees for reporting and/or opposing discrimination;

C.   Order Defendant to make whole JOYCE D. SHANNON by providing the

affirmative relief necessary to eradicate the effects of its unlawful practices;

D.   Grant the Plaintiff any consequential, compensatory, punitive and any

other damages that the Court may deem appropriate;

E.   Grant the Plaintiff her attorney's fees, costs and disbursements; and

F.   Grant the Plaintiff such further relief as the Court deems necessary and

proper in the public interest.

## JURY TRIAL DEMANDED

38.    The Plaintiff demands a jury trial on all issues raised in her Complaint.


Respectfully submitted,

JOYCE D. SHANNON


By:

Lisa Kane, Attorney for Plaintiff


LISA KANE & ASSOCIATES, P.C.
120 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney No. 06203093

## VERIFICATION

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 27th day of _March_, 2000

JOYCE D. SHANNON

FILED-ED4

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS DEC -5 PN 3: 16
EASTERN DIVISION

CLERK
U.S. DISTRICT COURT

ROSEMARIE A. PAYNE,                )
                                   )
            Plaintiff,             )
                                   )
    v.                             )    No.    00C 7635
                                   )
ADVOCATE HEALTH CARE,              )        JUDGE NORGLE
                                   )
            Defendant.             )
                                   )        MAGISTRATE JUDGE DENLOW

DOCKETED
DEC 0 6 2000

## COMPLAINT

Plaintiff Rosemarie A. Payne, by her undersigned attorney, brings this complaint against

Advocate Health Care:

### THE PARTIES

1.    Plaintiff, Rosemarie A. Payne ("Payne" or "Plaintiff"), is an individual residing in

LaGrange, Cook County, Illinois.

2.    Defendant, Advocate Health Care ("Advocate" or "Defendant"), is a not-for-

profit integrated health care delivery system with its principal place of business located in Oak

Brook, Illinois.

### NATURE OF THE ACTION

3.    This is an action brought pursuant to the Equal Pay Act, 29 U.S.C. § 206(d) ("the

Act").

### JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1343(3) and 1343(4).

5.     Defendant is an employer, and Plaintiff is an employee, within the meaning of the Act.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because all of the events and omissions giving rise to the claims stated herein arose in this judicial district.

### BACKGROUND

7.     From March 1995 through February 2000, Plaintiff was employed as an attorney for Defendant Advocate Health Care.

8.     Throughout Plaintiff's job tenure, she was paid less than other male attorneys in Defendant's Legal Department who performed substantially similar work requiring substantially similar skill, effort, and responsibility under substantially similar working conditions as those of Plaintiff ("the same work").

9.     Plaintiff complained to Defendant repeatedly about the disparate pay between Plaintiff and other male attorneys in the Department performing the same work.

10.     Throughout Plaintiff's job tenure, she additionally complained on numerous occasions regarding Defendant's pattern of promoting male attorneys who were performing the same work as Plaintiff to Vice Presidency positions -- a promotion that carries titular prestige, and, on information and belief, sometimes a pay increase, but does not involve a change in the attorney duties performed for Defendant.

11.     Notwithstanding Plaintiff's complaints, and notwithstanding that she performed the same work as other male attorneys in the Department, Defendant neither corrected the disparity in Plaintiff's pay nor promoted her by title as it did men performing the same work as she.

2

12.    By February of 2000, it was clear to Plaintiff that Defendant had no intention of correcting either the disparity in her pay or her title.

13.    In response to Defendant's failure to correct the disparity in Plaintiff's pay and title as compared to other male attorneys performing substantially similar work as Plaintiff under substantially similar working conditions, as described above, Plaintiff resigned her position with Defendant in February of 2000.

## ADMINISTRATIVE PROCEDURES

14.    On or about June 22, 2000, Plaintiff timely filed her Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC" or "Commission"). The EEOC dismissed Plaintiff's Charge with the finding it was unable to conclude, on the basis of the information before it, that the Act had been violated. The EEOC subsequently issued Plaintiff her Right to Sue letter dated August 31, 2000. This suit has been timely filed within ninety (90) days of Plaintiff's receipt of said right-to-sue letter, a copy of which (with certified mail receipt) is attached hereto, with the Charge of Discrimination, as Exhibits A and B.

## STATEMENT OF CLAIM

15.    Plaintiff adopts and realleges as if fully set forth herein paragraphs 1-14 of her complaint as this paragraph 15.

16.    Defendant's actions in refusing to pay Plaintiff as much as male attorneys who performed substantially similar work requiring substantially similar skill, effort, and responsibility under similar working conditions as Plaintiff violated the Equal Pay Act.

17.    Defendant's actions in violation of the Act were intentional and willful, without reasonable foundation, and lacking in good faith.

3

18.    As a result of Defendant's actions in violation of the Equal Pay Act, Plaintiff has suffered unknown economic losses comprised of the difference between the wages Defendant paid male attorneys who performed substantially similar work as she and the wages Defendant paid Plaintiff, plus interest, costs, and attorney's fees.

WHEREFORE, Plaintiff seeks judgment in her favor and against Defendant for:

(a)    the difference between the wages Defendant paid male attorneys performing the same work as Plaintiff and the wages Defendant paid Plaintiff, believed by Plaintiff to be in excess of Fifty Thousand Dollars ($50,000.00);

(b)    liquidated damages in an amount equal to the amount of said wage loss;

(c)    prejudgment interest in the event liquidated damages in full are not awarded;

(d)    the fees and costs of this action pursuant to 29 U.S.C. § 216(b); and

(e)    such other and further relief as the Court may deem just and appropriate.

PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

Gwen Veronica Carroll
Attorney for Plaintiff, ROSEMARIE A. PAYNE

Gwen Veronica Carroll
ARDC Number 3128563
LAW OFFICES OF GWEN VERONICA CARROLL, LTD.
445 West Erie Street
Suite 205
Chicago, Illinois 60610
Phone: (312) 202-0800
Fax:    (312) 202-0805

Dated: December 5, 2000

4

Equal Employment Opportunity Commission

# DISMISSAL AND NOTICE OF RIGHTS

| To: CERTIFIED MAIL NO.: 7099-3400-0006-7306-1445 CP ATTY.    From: | Equal Employment Opportunity Commission |
|---|---|

Rosemarie A. Payne
55 Stirling Lane
Clarendon Hills, Illinois  60514

Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, Suite 2800
Chicago, Illinois 60661-2511

[ ]    *On behalf of a person aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210A03703 | Mr. Scott Sommers, Enforcement Supervisor | (312) 886-9117 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[  ]    The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[  ]    Respondent employs less than the required number of employees.

[  ]    Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ]    You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[  ]    The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ]    The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ x ]    The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]    Other (*briefly state*) _____

## - NOTICE OF SUIT RIGHTS -

[ x ]    Title VII and/or the Americans with Disabilities Act: This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.

[  ]    Age Discrimination in Employment Act: This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.

[ x ]    Equal Pay Act (EPA): EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

8/31/00

On behalf of the Commission

John P. Rowe, District Director

Enclosures
    Information Sheet
    Copy of Charge
cc: Respondent(s)          Advocate Health Care

EEOC Form 161 (Test 5/95)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | 210A03703 |
| | ☒ EEOC | |

### State of Illinois Department of Human Rights
and EEOC

State or local Agency, if any

| NAME (indicate Mr., Ms., Mrs.) Rosemarie A. Payne | HOME TELEPHONE (Include Area Code) Attorney's Number: 312.202.0800 |
|---|---|

| STREET ADDRESS 55 Stirling Lane, | CITY, STATE AND ZIP CODE Clarendon Hills, Illinois 60514 | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME Advocate Health Care | NUMBER OF EMPLOYEES, MEMBERS 100+ | TELEPHONE (Include Area Code) 630.572.9393 |
|---|---|---|

| STREET ADDRESS 2025 Windsor Drive, | CITY, STATE AND ZIP CODE Oak Brook, Illinois 60523 | COUNTY DuPage |
|---|---|---|

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE
☐ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)  January 1995
LATEST (ALL)  Approx. 3/15/00

RECEIVED EEOC

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

JUN 2 2 2000

CHICAGO DISTRICT OFFICE

**I.    EQUAL PAY ACT**

A.    I was employed as an attorney with Respondent in Respondent's Legal Department from 1985 through February 2000.

B.    Throughout my job tenure, I was paid less than other male employees in Respondent's Legal Department who performed substantially similar work requiring substantially similar skill, effort, and responsibility under similar working conditions as those of myself.

(Continued on attached page.)

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date _June 22, 2000_    _Rosemarie A. Payne_
Charging Party (Signature)

NOTARY - (When necessary for State and Local Requirements)
_Patricia Ann Carter_

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT
_Rosemarie Payne_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)
3/23/02

"OFFICIAL SEAL"
PATRICIA ANN CARTER
Notary Public, State of Illinois

EEOC FORM 5 (Test 10/94)

Rosemarie A. Payne and Advocate Health Care

EEOC Charge Number _____

II.  **CONSTRUCTIVE DISCHARGE**

A.  I complained to Respondent repeatedly about the disparate pay between myself and other male attorneys in the Department performing substantially similar work, as was I, as described above.

B.  Throughout my job tenure, I additionally complained on numerous occasions regarding Respondent's pattern of promoting male attorneys who were equally or less qualified than myself to Vice Presidency positions.

C.  Notwithstanding my complaints, and notwithstanding the substantial similarity of my work, as described above, to other male attorneys in the Department, Respondent neither corrected the disparity in my pay nor promoted me as I should have been to a Vice Presidency position.

D.  By February of 2000, it was clear to me that Respondent had no intention of either correcting the disparity in my pay or promoting me to a Vice Presidency position as it had other similarly or less qualified male attorneys in the Department.

E.  In response to Respondent's failure to promote me based on my sex, female, and failure to correct the disparity in my pay as compared to other male attorneys performing substantially similar work as myself under substantially similar working conditions, as described above, I resigned my position with Respondent.

2

Signature of Complainant

_Rosemarie A. Payne_

Date _June 22, 2000_

Subscribed and Sworn To Before Me
This 22nd Day of June, 2000

_Patricia Ann Carter_
Notary Public

My Commission Exp...

"OFFICIAL SEAL"
PATRICIA ANN CARTER
Notary Public, State of Illinois
My Commission Expires 03/23/02

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

FEB - 5 2001

| | |
|---|---|
| LINDA K. GALLO, M.D., M.S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. |
| | ) |
| ADVOCATE HEALTH CARE | ) |
| | ) |
| Defendant. | ) |

**01C 0748**

**JUDGE JOHN W DARRAH**

**MAGISTRATE JUDGE ASHMAN**

## COMPLAINT

Plaintiff, Linda K. Gallo, M.D., M.S. (hereinafter referred to as "Dr. Gallo"), by her attorneys, William J. Raleigh and Margaret M. Cahill of the law firm of Raleigh & Cahill, P.C., states as her complaint against Defendant, Advocate Health Care, as follows:

1.    This is an action that is brought under the Federal Labor Standards Act of 1938 as amended by the Equal Pay Act of 1963, 29 U.S.C. §206 *et seq.*, and 28 U.S.C. §1343(4), and also under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

2.    The Plaintiff, Dr. Gallo, is a female citizen of the United States and resides in Cook County, Illinois.

3.    Defendant, Advocate Health Care, is a not-for-profit healthcare organization that owns and operates Christ Hospital and Medical Center located in Oaklawn, Illinois (hereinafter Christ Hospital Medical Center and Hope Childrens' Hospital are referred to as "Christ Hospital"). Advocate Health Care is headquartered in DuPage County, Illinois.

4.    The jurisdiction of this Court is invoked to secure protection of and redress for the deprivation of rights secured by federal law, which provide for relief against sex discrimination



and employment practices. This Court has subject matter jurisdiction under Section 16(b) of the

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §216(b) and also under 28 U.S.C.

§§1331 and 1337. The Court further has subject matter jurisdiction under 42 U.S.C. §2000e-

5(f)(3).

      5.      Venue is properly before this Court pursuant to 42 U.S.C. §2000e-5(f)(3) in that

the unlawful employment practices as hereinafter stated were committed within this judicial

district. Venue is also proper under 28 U.S.C. §1391(b) and (c), in that the claims that are set

forth in this Complaint arose in this judicial district and Advocate Health Care is an organization

that is duly licensed to do business within this judicial district.

      6.      Defendant, Advocate Health Care acting through Christ Hospital, is an

"employer" within the meaning of 29 U.S.C. §203. Advocate Health Care has over 21,000

employees who provide care at more than 200 sites throughout the State of Illinois.

      7.      Dr. Gallo is a respected medical doctor, who has been board certified by the

American Board of Pediatrics and formerly was a clinical associate with the National Institutes of

Health and also obtained her experience at John Hopkins Hospital.

      8.      As part of its written policies, Advocate Health Care professes to be an equal

employment opportunity organization and professes to act fairly and to employ people without

regard to their gender. Advocate Health Care states in its written policies that it acts with

equality through which it affirms the worth and freedom of each person to treat all people with

respect, integrity and dignity.

      9.      On or about October 30, 1996, Christ Hospital made a written offer to Dr. Gallo

for a full-time position as the Director of Inpatient Services with the Department of Pediatrics at

Hope Children's Hospital. Dr. Larry Roy (Pediatric Residency Program Director) told Dr. Gallo

that the salary range was $80,000 to $95,000. Dr. Roy stated to Dr. Gallo that because of her

extensive experience and training she would receive $95,000. This offer was accepted by Dr.

Gallo providing for an hourly wage of $45.67 per hour at a 40-hour minimum workweek

resulting in an annual salary of $95,000. A comprehensive benefit package was included with

employment to begin on December 16, 1996. Dr. Gallo reasonably relied on the representations

that Dr. Roy made to her and she had no knowledge that similarly situated male doctors were

receiving higher wages.

      10.     The term of Dr. Gallo's original contractual arrangement with Christ Hospital was

to expire on December 15, 1998. The Professional Services Agreement that Christ Hospital

drafted specifically provided that Christ Hospital would review the agreement with Dr. Gallo for

subsequent periods of employment and that this review would commence sixty days prior to the

expiration of the original agreement. The review should have taken place by October 16, 1998,

but did not.

      11.     During the time period that Dr. Gallo was employed by Advocate Healthcare, she

was at all times a faithful, dedicated and a well-respected employee. Dr. Gallo's superb abilities

were immediately recognized and within her first year of employment, she was asked to serve as

Chairperson of the Performance Improvement Committee for Pediatrics. As part of her

additional duties and responsibilities at Hope Children's Hospital, Dr. Gallo later served as the

Chairperson of the Performance Improvement Committee for Pediatric Cardiovascular Surgery

and Cardiology, and she further served on the Health Information Management Committee,

Pediatric Care Management Committee, Pediatric Residency Program Committee, the

3

Gastroenterology Value Compass Team, the Infant Abduction and Security Task Force and the Pediatric Respiratory Care Committee.

12.    In addition to serving on these committees, Dr. Gallo faithfully and competently served as the Director of Inpatient Services at Hope Children's Hospital, which is part of Christ Hospital.   Dr. Gallo received outstanding performance evaluations while she performed these tasks and duties.  Dr. Gallo has the experience, ability, education and training to perform this job at Hope Children's Hospital.

13.    Within months of beginning her tenure as Director of Inpatient Services, Dr. Gallo took the initiative to establish a billing system to collect revenues that were not being billed by her male colleagues for their care of general pediatric hospitalized patients.  Dr. Gallo, in fact, brought in more revenues than her male colleagues did each year she was employed at Advocate Health Care.

14.    Dr. Gallo maintained the highest academic standards for the pediatric residents and medical students whom she taught daily.  Dr. Gallo received excellent annual teacher evaluations from the pediatric residents.  In addition to her administrative, patient care, and teaching responsibilities, Dr. Gallo continued her scholarly activity and had a chapter published in an Oxford University Press book in 1998.

15.    In November 1998, Dr. Gallo asked Dr. Sulayman about her contract renewal and an evaluation.  Dr. Sulayman stated there were no evaluations and the contract renewal should happen "automatically."

16.    Dr. Gallo still did not receive a contract renewal by March 1999.  Given this failure, Dr. Gallo once again spoke with Dr. Sulayman.  Dr. Sulayman referred Dr. Gallo to a

4

nursing director, Pam Wolfe. On or about May 4, 1999 Dr. Gallo spoke to Ms. Wolfe about the delay in providing a written agreement.

17.     On or about March 18, 1999, a draft Professional Services Agreement was tendered to Dr. Gallo from Christ Hospital. Christ Hospital instructed Dr. Gallo to simply sign the agreement. The proposed agreement was backdated to run for the term of December 16, 1998 through December 15, 2000, but was for the same salary of $95,000.00 per year, with no wage increase. When Dr. Gallo expressed her concerns to Ms. Wolfe about the lack of a raise, Ms. Wolfe told Dr. Gallo that it was Dr. Sulayman who set the salaries and raises in August 1998, during preparation of the annual budget.

18.     On April 5, 1999, Dr. Gallo met with Dr. Sulayman and informed him that she believed her salary was low and she reviewed salary figures provided by the American Academy of Pediatrics as a comparison. Dr. Gallo also stated to Dr. Sulayman that she had not received a raise since she started at Christ Hospital in 1996. Dr. Gallo was devoting additional time on various key committees at Christ Hospital, administering the Inpatient Services at Hope Children's Hospital, teaching, and providing patient care. Dr. Sulayman told Dr. Gallo that she was doing a "wonderful job." He instructed her to make any changes she wanted to the proposed agreement and return the revised agreement to him.

19.     On April 6, 1999 Dr. Gallo returned the agreement to Dr. Sulayman with a few minor changes, which provided for a salary of $115,000 for full-time work. When he reviewed the revised agreement, Dr. Sulayman asked "Is that all?" Dr. Sulayman informed Dr. Gallo that her request for an increase was no problem, and took the amended contract from her.

5

20.     Four more months passed, and Dr. Gallo never received an executed revised agreement. In August 1999, Dr. Gallo asked Dr. Sulayman again about the renewal of her agreement. This time, Dr. Sulayman stated that there would be no contract renewals, no raises, and no hiring because of a possible merger with the Lutheran General Hospital pediatric department. Dr. Sulayman told Dr. Gallo that even though her job was not involved in the merger, everything in terms of salaries and raises was at a standstill.

21.     In December 1999, Dr. Gallo learned that in spite of what Dr. Sulayman had stated to her, Dr. Sulayman had given her male colleague, Dr. Roy, a raise. At that point in time, Dr. Gallo had been working for one year without a written contract and for three years without a raise.

22.     Dr. Gallo is informed and she believes that her male colleague, Dr. Roy, had received a raise during this time period and was receiving a salary that was approximately $64,000 a year greater than the salary that Dr. Gallo was receiving.

23.     Dr. Gallo further learned that while Advocate Health Care restricted Dr. Gallo from any other work at Christ Hospital and from any private practice, these same restrictions were not applied to Dr. Roy.

24.     Dr. Gallo also learned that in spite of what Dr. Sulayman had told her about a freeze on contract renewals, raises, and hiring, Dr. Sulayman actually hired male doctors in new positions. Dr. Gallo learned that Dr. Roy, with Dr. Sulayman's approval, hired an inexperienced male doctor as an associate director of the residency program for the salary of $95,000, which is the same salary that Dr. Gallo, who was 15 years his senior, was earning. In fact, this new male

6

doctor, had just one year prior completed his residency training at Hope Children's Hospital and Dr. Gallo had been one of his teachers.

25.     Under the terms of the original Professional Services Agreement, as the Director of Inpatient Services at Hope Children's Hospital, Dr. Gallo received a $95,000 salary for a forty-hour work week and Christ Hospital prohibited Dr. Gallo from engaging in any private practice. Dr. Gallo informed Dr. Sulayman, and management at Christ Hospital was well aware, that Dr. Gallo worked at least 50 to 70 hours per week, which was well over the 40-hour minimum as described in her original Agreement that expired on December 15, 1998.

26.     On or about May 11, 2000, Christ Hospital submitted another revised Professional Services Agreement to Dr. Gallo. This proposed Agreement required Dr. Gallo to continue in her duties as the Director of Inpatient Services, but reduced her official status to part-time (25 hours weekly) though she was expected to continue her full-time schedule and duties that took 50 to 70 hours a week. Despite being placed on part-time status, Dr. Gallo was given additional duties when she was asked to establish and serve as Chairperson of a new committee.

27.     Although Christ Hospital had reduced Dr. Gallo to part-time status, Christ Hospital still restricted Dr. Gallo from any private practice to supplement her income that remained stationary at $95,000.

28.     On two occasions, Dr. Gallo attempted to discuss these serious issues with the Vice President of Human Resources, Mr. Paul Macuga, but her calls were not returned. In spite of this, Dr. Gallo continued to faithfully perform all of her duties.

29.     Although Dr. Gallo continued to work full-time hours as scheduled, she did not sign this revised Agreement. Dr. Gallo's benefits were decreased to part-time status with an

7

increase in premiums for medical and dental insurance, a decrease in vacation accrual, and a
decrease in educational leave and reimbursement even though Dr. Gallo continued to work 50-70
hours a week. In August 2000, Dr. Gallo told Dr. Sulayman of these part-time status changes,
Dr. Sulayman stated that it was a mistake.

30.    On August 14, 2000, Dr. Gallo informed Dr. Sulayman that she was now aware
that male doctors in similarly situated positions were receiving annual salaries, and hourly wages,
that were far in excess of what Dr. Gallo was receiving even though male doctors' work and
duties were less and that these male doctors' hours had not been reduced to part-time status. Dr.
Gallo informed Dr. Sulayman that she was being underpaid as a woman doctor at Hope
Children's Hospital given her duties, her performances, her teaching evaluations, and her wages
when compared to her male colleagues.

31.    Dr. Sulayman denied that any male colleagues were given higher pay and further
stated that no one at Christ Hospital was earning as much as $140,000 a year. During this
meeting, Dr. Gallo informed Dr. Sulayman that her scheduled hours and duties were never less
than full-time and that she expected her contractual arrangement to properly reflect this reality.

32.    On August 14, 2000, Dr. Gallo handed Dr. Sulayman a letter, wherein Dr. Gallo
detailed her concerns as to the unusual negotiations concerning her salary and informed Dr.
Sulayman that she believed that blatant acts of gender discrimination were taking place
concerning the wages given to female doctors at the hospital as compared to similarly situated
male doctors. (A copy of this letter is attached hereto and incorporated herein as Exhibit No. 1).

33.    On August 28, 2000 Christ Hospital tendered another revised Professional
Services Agreement to Dr. Gallo, which provided for the reinstatement of Dr. Gallo to a full-time

8

employment status. However, this latest version of the Agreement only provided a salary increase to $105,000. No job description was attached to the Agreement though it was referred to as Exhibit A in the Agreement. Further, the term of the agreement was revised and would only run from July 1, 2000 through June 30, 2002.

34.     On August 31, 2000, Dr. Gallo met with Dr. Sulayman and she objected to the revised terms in this proposed Professional Services Agreement since the salary was far below what male doctors were receiving and there was no job description. Dr. Gallo further reiterated her concerns that Advocate Health Care was offering her lower wages than were offered to male doctors for jobs that involved equal work, skill, effort, and responsibility. Dr. Sulayman refused to increase Dr. Gallo's salary.

35.     On September 13, 2000, Dr. Gallo filed a Charge of Discrimination with the Equal Employment Opportunity Commission asserting that she was being discriminated against by Advocate Health Care based upon her sex and also in violation of the Equal Pay Act.

36.     On September 18, 2000, Dr. Sulayman told Dr. Gallo that he needed to talk with her and instructed her to meet him within ten minutes for a conference. After twenty minutes, Dr. Sulayman finally appeared, and he acknowledged that Dr. Gallo was present. Dr. Sulayman then entered his office and closed the door without inviting Dr. Gallo to enter. Dr. Gallo left the office suite after informing Dr. Sulayman's secretary to page her when Dr. Sulayman was prepared to meet with her. After four hours of additional work at the hospital on this date, Dr. Gallo returned to her office that is next to Dr. Sulayman's and was told by his secretary that Dr. Sulayman left. Dr. Sulayman never paged Dr. Gallo to meet with him.

9

37.    When Dr. Gallo returned to work on September 25, 2000, after being out of town, she received a large inter-office envelope that contained a letter inside. This letter was from the Vice President of Finance at Christ Hospital, informing her that the offers by Christ Hospital were being withdrawn and that Christ Hospital would discontinue compensating Dr. Gallo effective November 14, 2000, since Dr. Gallo had failed to accept the "offers" for continued employment at wages less than what Christ Hospital was offering male doctors..

38.    Dr. Gallo was discharged just several weeks after she refused to sign a Professional Services Agreement containing a low salary, given her qualifications and experience, while her male colleagues at Christ Hospital were allowed to negotiate agreements for more than eight months and were not terminated for such conduct.

39.    In a meeting with Dr. Sulayman that took place on September 25, 2000, Dr. Gallo informed Dr. Sulayman that she had received this letter from the Vice President of Finance and Dr. Sulayman represented to Dr. Gallo that he had not approved of the sending of the letter to Dr. Gallo.

40.    At this meeting on September 25, 2000, Dr. Sulayman acknowledged to Dr. Gallo that he believed that Dr. Gallo had performed outstanding work for the hospital that he relied on Dr. Gallo for extra responsibilities, and that the residents in the training program were very pleased with Dr. Gallo's performance. During this meeting, Dr. Gallo once again informed Dr. Sulayman that she was well aware that there were male doctors with poor resident evaluations, who had less responsibility and duties at the Hospital, were receiving tens of thousands of dollars more in annual salary. Dr. Gallo informed Dr. Sulayman that she believed that this was a very serious violation of federal and state laws pertaining to gender discrimination.

10

41.     On or about October 24, 2000, Dr. Gallo filed an additional Charge of Discrimination asserting retaliation against Advocate Health Care with the Equal Employment Opportunity Commission.

## COUNT I

### Sex Discrimination Under Title VII

1-41.     Dr. Gallo incorporates herein Paragraphs 1 through 41 of the Facts Common to All Counts as if fully set forth herein as Paragraphs 1 through 41 of Count I.

42.     The conduct committed by Advocate Health Care constitutes unlawful discrimination against Dr. Gallo on the basis of her sex within the meaning of 42 U.S.C. §2000e-2(a).

43.     By letters that are dated January 5, 2001, from the Equal Employment Opportunity Commission, Dr. Gallo was notified of her right to institute this action pursuant to 42 U.S.C. §2000e-5(f)(1).

44.     Advocate Health Care's violation of the Civil Rights Act, as set forth above, was a malicious and willful violation in that Advocate Health Care knew, or should have known, that it was illegally discriminating against a female doctor at its Christ Hospital facility.

WHEREFORE, Dr. Gallo respectfully requests that this Court enter an Order that provides for the following:

A.     Award Dr. Gallo for all of her damages to be proven at trial, including but not limited to, the pay and benefits that should have been paid to Dr. Gallo for services rendered to the hospital during the relevant time period;

11

B.    Award Dr. Gallo all of her reasonable attorneys' fees and costs;

C.    Award Dr. Gallo for such other relief as this Court deems just and proper under the circumstances.

## COUNT II

### Sex Discrimination Under The Equal Pay Act

1-41.    Dr. Gallo incorporates herein Paragraphs 1 through 41 of the Facts Common to All Counts as if fully set forth herein as Paragraphs 1 through 41 of Count II.

42.    Advocate Health Care deliberately mislead Dr. Gallo concerning the purported freeze on all salary increases, contract renewals and hiring and further committed illegal discriminatory acts against Dr. Gallo by not increasing her salary when other increases in salaries were given to similarly situated male employees for equal work requiring equal skill, effort, and responsibility under similar working conditions.

43.    Dr. Gallo's hourly wage and annual salary was substantially less *per annum* than male employees who worked at Christ Hospital for equal work on jobs, performance of which required equal skill, time and effort and responsibilities, and which were performed under similar working conditions.

44.    Advocate Health Care further discriminated against Dr. Gallo by reverting to a purportedly "part-time" position for Dr. Gallo from a full-time position because Dr. Gallo was a woman, when employees of a different sex were not restricted in terms of weekly hours to a part-time status.

12

45.     Advocate Health Care further discriminated against Dr. Gallo, in violation of 29 U.S.C. §206(d), by restricting her from engaging in private practice when they reduced her to part-time status, while similarly situated male doctors who worked under similar working conditions were not restricted in this regard.

46.     Such conduct by Advocate Health Care constitutes unlawful discrimination against Dr. Gallo on the basis of her sex within the meaning of 29 U.S.C. §206(d)(1).

47.     Such conduct committed by Advocate Health Care also constitutes unlawful employment discrimination against Dr. Gallo within the meaning of 42 U.S.C. §2000e-2(a).

48.     As a direct and proximate result of Advocate Health Care's differential payment of wages and other discriminatory conduct, which is based solely upon Dr. Gallo's sex as a female, Dr. Gallo has lost substantial employment benefits with Advocate Health Care since December 15, 1996, including lost wages, and other employee benefits in an amount currently in excess of $250,000.00, the precise amount of which will be proven at trial.

49.     In addition to the damages claim above by Dr. Gallo, Dr. Gallo is also entitled to liquidated damages equivalent to the amount of lost wages, together with original attorneys' fees and costs of this suit in pursuing this act.

WHEREFORE, Dr. Gallo respectfully requests that this Court enter an Order that provides for the following:

A.      Granting to Dr. Gallo and ordering Advocate Health Care to pay Dr. Gallo the difference in pay between what she earned and what male, similarly situated doctors at Advocate Health Care were receiving for performing a job position requiring similar skill, effort and responsibility during the period that Dr. Gallo was employed by Advocate Health Care;

13

B.      Award Dr. Gallo all of her liquidated damages to be set and proven at trial;

C.      Award Dr. Gallo all of her reasonable attorneys' fees and costs;

D.      Award Dr. Gallo for such other relief as this Court deems just and proper under the circumstances.

## COUNT III

### Unlawful Retaliation

1-41.    Dr. Gallo incorporates herein Paragraphs 1 through 41 of the Facts Common to All Counts as if fully set forth herein as Paragraphs 1 through 41 of Count III.

42.      Since the filing of her Charge for sexual discrimination and violations of the Equal Pay Act, Advocate Health Care, by and through its agents, servants and employees, deliberately retaliated against and committed act of reprisal against Dr. Gallo in immediately rescinding all offers and in discharging her in violation of 29 U.S.C. §215(a)(3) of the Fair Labors Practices Act, and further in violation of 42 U.S.C. §2000e-3(a).

43.      Dr. Gallo verbally placed Christ Hospital on notice throughout the period of August 2000 through the date of her dismissal that she believed that female doctors were discriminated against in terms of their wages at Christ Hospital.  Christ Hospital's actions in dismissing Dr. Gallo were further in retaliation for these complaints to her supervisor in violation of 42 U.S.C. §2000e-3(a).

44.      Advocate Health Care's acts in withdrawing any and all offers made to Dr. Gallo were done deliberately, maliciously and willfully and in violation of federal laws protecting employees seeking redress before the Equal Employment Opportunity Commission.

14

WHEREFORE, Dr. Gallo respectfully requests that this Court enter an Order that provides for the following:

A.     Granting to Dr. Gallo and ordering Advocate Health Care to pay Dr. Gallo the difference in pay between what she earned and what male, similarly situated doctors at Advocate Health Care were receiving for performing a job position requiring similar skill, effort and responsibility during the period that Dr. Gallo was employed by Advocate Health Care;

B.     Award Dr. Gallo all of her reasonable attorneys' fees and costs;

C.     Award Dr. Gallo for such other relief as this Court deems just and proper under the circumstances.

### Jury Demand

Dr. Gallo asserts her rights under U.S. Const. Amend. 7 and demands a jury on all issues, in accordance with Fed. R. Civ. P. 38.

LINDA K. GALLO, M.D.

By: _William J. Raleigh_
One of her Attorneys

William J. Raleigh
Margaret M. Cahill
Raleigh & Cahill, P.C.
200 W. Adams St., Ste. 2505
Chicago, IL 60606
(312) 460-0600

15

August 14, 2000

Rabi Sulayman, M.D.
Chairman
Department of Pediatrics
Hope Children's Hospital
Christ Hospital and Medical Center
Oak Lawn, IL 60453

Dear Dr. Sulayman:

Since November 1998 I have spoken with you four times regarding my low salary and
lack of a contract. As Director of Inpatient Services, my initial two year contract
(Dec. 1996-1998) gave me $95,000 for full time (40 hr.) work. My work week is
routinely 50-70 hours. This latest contract of July 1, 2000 was altered to reduce
the hours to 25 and kept the pay at $95,000 so it looks like my pay was increased.
How deceptive! If I deserve $95,000 for 25 hours then I should get $152,000 for the
40+ hours I really work.

Though I have 15 years experience and an impressive CV, I have not had a penny
increase since I started working at Hope in December 1996. But most importantly,
I am now positive that my male colleagues are earning tens of thousands of dollars
more. I am appalled by this gender discrimination. I trusted you but you lied and
betrayed me. For these reasons, I sought legal advice from an employment law
specialist. I have been advised that it is a violation of Federal law to discriminate
against a woman with lower pay for equal work and a charge could be filed with
the Equal Employment Opportunity Commission. This is a very serious matter.
Though litigation is an option, I would hope that we could solve this problem
quietly and expeditiously.

Per our conversation today, I expect to receive a new, revised contract by Friday,
August 18 with the following conditions:
1) An annual salary of $150,000 retroactive to December 16, 1998 ( the date my
   last contract expired) and going forward for three years to July 1, 2003. Pension
   contributions to be adjusted accordingly.
2) Reinstate the 40 hour full time employment status.
3) $2000 per year for educational expenses, memberships, and professional fees
4) Seven days for continuing medical education
5) Minor job description changes as amended in the attached contract.

Linda K. Gallo, M.D., M.S.
Director, Inpatient Services
Hope Children's Hospital

EXHIBIT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MO JAWAD, )
)
)
Plaintiff, )
)
)
v. )   JURY TRIAL DEMANDED
)
)
ADVOCATE HEALTH CARE, INC. )
d/b/a  GOOD SAMARITAN HOSPITAL, )
)
)
Defendant. )

**COMPLAINT**

Now comes PLAINTIFF MO JAWAD, through his attorney, Richard J. Gonzalez/ Law

Offices of Chicago-Kent College of Law, and complaining of DEFENDANT ADVOCATE

HEALTH CARE, INC. d/b/a GOOD SAMARITAN HOSPITAL, states as follows:

**NATURE OF ACTION, JURISDICTION & VENUE**

1. This is an action for damages and equitable relief to redress the deprivation of rights

secured to PLAINTIFF by virtue of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec.

2000e et. seq., as amended, and 42 U.S.C. Sec. 1981.

2. The jurisdiction of this Court is invoked pursuant to the provisions of 42 U.S.C. Sec.

2000e, 42 U.S.C. Sec. 1981, and 28 U.S.C. 1331.

3. Venue is proper by virtue of 28 U.S.C. Sec. 1391(b).

4. PLAINTIFF has met all administrative prerequisites to suit in that he timely filed a

charge of discrimination with the Equal Employment Opportunity Commission on February 5,

2002, obtained a "Right-To-Sue Letter" with respect to his Title VII claims, and files this action

within the allowable statute of limitations of Title VII and of 42 U.S.C. Sec. 1981.

## PARTIES

5. PLAINTIFF is a male citizen of the United States. In 1992, PLAINTIFF was a part-

time hourly employee for six months, and then became a full-time salaried employee of

DEFENDANT until May 15, 2001.

6. DEFENDANT is and was at all relevant times a duly registered corporation engaged in

the business of providing medical care to the general public and doing business within the State

of Illinois and is an employer within the meaning of 42 U.S.C. Sec. 2000e et. seq.

## COUNT ONE

## NATIONAL ORIGIN AND RELIGIOUS HARASSMENT UNDER TITLE VII

## FACTS

7. PLAINTIFF is of Iraqi national origin and of the Muslim faith.

8. In 1992, PLAINTIFF commenced employment with DEFENDANT as an engineering

mechanic within its Radiology department.

9. At all times while employed within DEFENDANT's Radiology department,

PLAINTIFF performed at a level that met or exceeded DEFENDANT's legitimate performance

expectations.

10. In approximately August, 2001, PLAINTIFF was transferred into DEFENDANT's

Engineering department.

11. PLAINTIFF was the sole employee of his national origin and religious faith within

said department.

12. At all times while employed within DEFENDANT's Engineering department,

PLAINTIFF performed at a level that met or exceeded DEFENDANT's legitimate performance expectations.

13. Beginning shortly after PLAINTIFF's transfer to DEFENDANT's Engineering department, PLAINTIFF was harassed by co-workers because of his national origin and religion.

14. Co-workers frequently referred to PLAINTIFF in his presence and in the presence of other employees as "an Iraqi fag", and made comments including but not limited to: "We bombed your country, "We kicked their ass" and "Muslims are terrorists", or words to that effect.

15. In approximately April, 2001, PLAINTIFF arrived at his work station to find a large poster depicting Iraqi leader Saddam Hussein with a large target over his face. PLAINTIFF immediately called his supervisor over to view the poster.

16. PLAINTIFF, on that, and other occasions, complained to his supervisor of what he perceived to be harassment directed at him by co-workers, based upon his national origin and religion.

17. Upon information and belief, DEFENDANT took no action with respect to PLAINTIFF's complaints of harassment at any time during PLAINTIFF's employment.

18. In response to one of PLAINTIFF's complaints to his supervisor, the supervisor replied, "Look, Mo, this is America. You're just going to have to take it," or words to that effect.

19. DEFENDANT had a duty to maintain a workplace that was free of harassment based upon national origin or religion.

20. The harassment suffered by PLAINTIFF was severe and pervasive and had the effect of creating an objectively and subjectively hostile work environment.

21. DEFENDANT failed to act to halt the harassment of PLAINTIFF at any time during his employment even though managerial agents of DEFENDANT were aware of the harassment

and of PLAINTIFF's complaints concerning the harassment.

22. The foregoing conduct constituted unlawful harassment based upon national origin and religion in violation of Title VII.

23. DEFENDANT acted intentionally and with malice and/or with reckless indifference to PLAINTIFF's federally protected rights.

## DAMAGES

24. As a proximate result of the foregoing facts, PLAINTIFF experienced emotional distress, anxiety, loss of appetite, insomnia, embarrassment, humiliation, and loss of status and self-esteem.

WHEREFORE, PLAINTIFF prays that this Court enter an Order:

A. Finding that DEFENDANT is guilty of harassment based upon national origin and religion;

B. Awarding PLAINTIFF compensatory and punitive damages in an appropriate amount;

C. Awarding PLAINTIFF reasonable attorney fees and costs incurred in this action;

D. Ordering DEFENDANT to cease and desist from discriminating against its employees on the basis of national origin and religion; and

E. Such other relief as this Court deems just.

## COUNT TWO

### NATIONAL ORIGIN HARASSMENT UNDER 42 U.S.C. § 1981

25.   PLAINTIFF repeats and realleges paragraphs 1-24 and incorporates same by reference as though fully set out herein.

26. By virtue of the foregoing conduct, DEFENDANT intentionally discriminated against PLAINTIFF in the enforcement of a contract because of his national origin, in violation of 42

U.S.C. Sec. 1981.

WHEREFORE, PLAINTIFF prays that this Court enter an Order:

A. Finding that DEFENDANT is guilty of harassment based upon national origin in violation of 42 U.S.C. § 1981;

B. Awarding PLAINTIFF compensatory and punitive damages in an appropriate amount;

C. Awarding PLAINTIFF reasonable attorney fees and costs incurred in this action;

D. Ordering DEFENDANT to cease and desist from discriminating against its employees on the basis of national origin; and

E. Such other relief as this Court deems just.

COUNT THREE

UNLAWFUL TERMINATION OF EMPLOYMENT BASED ON
NATIONAL ORIGIN AND RELIGION UNDER TITLE VII

27. PLAINTIFF repeats and realleges paragraphs 1-26 and incorporates same by reference as though fully set out herein.

28. On or about May 8, 2001, PLAINTIFF was once again addressed as an "Iraqi fag" by a co-worker. PLAINTIFF demanded to know from whom the employee had heard that remark. PLAINTIFF then questioned another co-employee, who had made that same remark repeatedly to PLAINTIFF in the past. PLAINTIFF angrily approached the co-worker, slammed his hand on a table, but engaged in no physical contact nor further altercation with that or any other employee.

29. On May 10, 2001, DEFENDANT advised PLAINTIFF that it was terminating his employment for damaging the toolbox of a co-employee.

30. DEFENDANT upheld PLAINTIFF's termination, even though the owner of the toolbox in question told DEFENDANT's management that PLAINTIFF had not, in fact,

damaged the toolbox, but that it had previously sustained the alleged damage.

31. DEFENDANT failed to discipline non-Iraqi, non-Muslim co-workers in the past for threatening conduct, including an instance where a co-worker held a dangerous knife to the throat of a co-employee.

32. DEFENDANT had a duty to conduct and implement its personnel decisions, including terminations, in a nondiscriminatory manner without regard to national origin or religion.

33. DEFENDANT's articulated reason for PLAINTIFF's termination was either a pretext for discrimination, or, standing alone, is a non-legitimate reason for termination in that any anger exhibited by PLAINTIFF toward his co-worker was occasioned solely by continued and persistent harassment based on national origin and religion, despite PLAINTIFF having registered complaints with his supervisor seeking to have the harassment stopped.

34. DEFENDANT acted intentionally and with malice and/or reckless indifference to PLAINTIFF, federally protected rights.

35. As a proximate result of the foregoing facts, PLAINTIFF suffered emotional distress, anxiety, loss of appetite, insomnia, embarrassment, humiliation, loss of status and self-esteem, loss of his job, lost wages and benefits.

WHEREFORE, PLAINTIFF prays that this Court enter an Order:

A. Finding that DEFENDANT discriminated against PLAINTIFF on the basis of national origin and religion in violation of Title VII;

B. Reinstating PLAINTIFF to his former or a comparable position;

C. Awarding PLAINTIFF lost wages and the value of lost benefits;

D. Awarding PLAINTIFF compensatory and punitive damages in an appropriate amount;

E. Awarding PLAINTIFF attorney's fees and the costs of this action:

F. Ordering DEFENDANT to cease and desist from discrimination on the basis of national origin and religion;

G. Such other relief as this Court deems just.

## COUNT FOUR

### UNLAWFUL TERMINATION BASED UPON NATIONAL ORIGIN IN VIOLATION OF 42 U.S.C. SEC. 1981

36. PLAINTIFF repeats and realleges paragraphs 1-35 and incorporates same by reference as though fully set out herein.

37. By virtue of the  foregoing conduct, DEFENDANT intentionally discriminated against PLAINTIFF in the enforcement of a contract in violation of 42 U.S.C. § 1981.

WHEREFORE, PLAINTIFF prays that this Court enter an Order:

A. Finding that DEFENDANT discriminated against PLAINTIFF on the basis of national origin in violation of 42 U.S.C.§ 1981;

B. Reinstating PLAINTIFF to his former or a comparable position;

C. Awarding PLAINTIFF lost wages and the value of lost benefits;

D. Awarding PLAINTIFF compensatory and punitive damages in an appropriate amount;

E. Awarding PLAINTIFF attorney's fees and the costs of this action:

F. Ordering DEFENDANT to cease and desist from discrimination on the basis of national origin;

G. Such other relief as this Court deems just.

## COUNT FIVE

### UNLAWFUL RETALIATION UNDER TITLE VII

38. PLAINTIFF repeats and realleges paragraphs 1-37 and incorporates same by reference as though fully set out herein.

39. DEFENDANT had a duty not to retaliate against employees who in good faith protest to supervisory personnel what they reasonably believe to constitute unlawful harassment based upon national origin and religion.

39. In terminating PLAINTIFF's employment for the stated reason of damaging company property, and in refusing to reverse said decision even after it became fully aware that no such damage had occurred, DEFENDANT unlawfully retaliated against PLAINTIFF for having protested harassment based upon national origin and religion.

40. In so doing, DEFENDANT acted intentionally and with malice and/or reckless indifference toward PLAINTIFF's federally protected rights.

WHEREFORE, PLAINTIFF prays that this Court enter an Order:

A. Finding that DEFENDANT discriminated against PLAINTIFF on the basis of retaliation.

B. Reinstating PLAINTIFF to his former or a comparable position;

C. Awarding PLAINTIFF lost wages and the value of lost benefits;

D. Awarding PLAINTIFF compensatory and punitive damages in an appropriate amount;

E. Awarding PLAINTIFF attorney's fees and the costs of this action:

F. Ordering DEFENDANT to cease and desist from discrimination on the basis of retaliation.

G. Such other relief as this Court deems just.

## COUNT SIX
### UNLAWFUL RETALIATION UNDER 42 U.S.C.§ 1981

42. PLAINTIFF repeats and realleges paragraphs 1-41and incorporates same by reference as though fully set out herein.

43. By virtue of the foregoing conduct, DEFENDANT intentionally discriminated against PLAINTIFF in the enforcement of a contract, in violation of 42 U.S.C. § 1981

WHEREFORE, PLAINTIFF prays that this Court enter an Order:

A. Finding that DEFENDANT discriminated against PLAINTIFF on the basis of retaliation.

B. Reinstating PLAINTIFF to his former or a comparable position;

C. Awarding PLAINTIFF lost wages and the value of lost benefits;

D. Awarding PLAINTIFF compensatory and punitive damages in an appropriate amount;

E. Awarding PLAINTIFF attorney's fees and the costs of this action:

F. Ordering DEFENDANT to cease and desist from discrimination on the basis of retaliation.

G. Such other relief as this Court deems just.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted,

Richard J. Gonzalez

Chicago-Kent Law Offices
565 W. Adams, Suite 600
Chicago, Illinois 60661
(312) 906-5079

RECEIVED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
_____EASTERN_____DIVISION     DEC 1 2 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DEC 1 3 2002

_Earl Stanford Worthington_     )
                                )
_____Plaintiff_____     )     CIVIL ACTION
(Name of the plaintiff or plaintiffs)  )
                                )     NO. 02C 8994
          V.                    )     (Case number will be supplied by the assignment clerk)
                                )
                                )
_Advocate Health Care  D/B/A_   )     JUDGE LEINENWEBER
                                )
_Bethany Hospital_____    )     MAGISTRATE JUDGE NOLAN
                                )
_____Defendant_____     )
(Name of the defendant or defendants)  )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1.  This is an action for employment discrimination.

2.  The plaintiff is _____Earl Stanford Worthington_____ of
    the county of _____Cook_____ in the state of ___Illinois_____.

3.  The defendant is _Advocate Health Care  D/B/A Bethany Hospital_, who

    resides at (street address) _2025 Windsor Drive_____

    (city) _Oakbrook_ (county) _Dupage_ (state) _Illinois_ (ZIP) _60523_

    (Defendant's telephone number) (_630_)–_572-9393_____

4) The plaintiff sought employment or was employed by the defendant at

(street address)   3435 West Van Buren Street

(city) Chicago   (county) Cook   (state) Illinois (ZIP code)   60624-3359

5. The plaintiff [check one box]

(a) ☐   was denied employment by the defendant.

(b) ☐   was hired and is still employed by the defendant.

(c) ☒   was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) July , (day) 10 , (year) 2000 .

7. (a) The plaintiff [check one box] ☐ *has not* ☒ *has* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i)   ☒ the United States Equal Employment Opportunity Commission on or about (month) July (day) 27 (year) 2000 .

(ii)   ☒ the Illinois Department of Human Rights on or about (month) July (day) 27 (year) 2000 .

(b)   If charges *were* filed with an agency indicated above, a copy of the charge is

attached.   ☒ YES ☐ NO

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

8. (a) ☐   the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b) ☒   the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) September

(day) 14    (year) 2002    a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [check all that apply]

   (a) ☐   Age (Age Discrimination Employment Act).

   (b) ☒   Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (c) ☐   Disability (Americans with Disabilities Act)

   (d) ☐   National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (e) ☒   Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (f) ☐   Religion (Title VII of the Civil Rights Act of 1964)

   (g) ☐   Sex (Title VII of the Civil Rights Act of 1964)

10. The plaintiff is suing the defendant, a state or local government agency, for discrimination on the basis of race, color, or national origin (42 U.S.C. §1983).

   ☐ YES       ☒ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); over 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; over the A.D.E.A. by 42 U.S.C.§12117.

12. The defendant [check all that apply]

   (a) ☐   failed to hire the plaintiff.

   (b) ☒   terminated the plaintiff's employment.

   (c) ☒   failed to promote the plaintiff.

   (d) ☐   failed to reasonably accommodate the plaintiff's religion.

   (e) ☐   failed to reasonably accommodate the plaintiff's disabilities.

   (f) ☒   other (specify): Failed to transfer plaintiff to a more diverse environment whereby he could seek promotional opportunities,

alsodefamed plaintiff's character and work performance to

prevent him from seeking promotional opportunities with

other prospective employers.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Please see attached COURT COMPLAINT and corresponding

documentation detailing the specific provisions under

Sec. 703.  (a) under Title VII of the Civil Rights Act

of 1964 , paragraph (1) and (2) defendant knowingly,

intentionally, and willfully violated.

14. [AGE DISCRIMINATION ONLY] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury.   [X] YES    [ ] NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [check all that apply]

(a) [ ]   Direct the defendant to hire the plaintiff.

(b) [ ]   Direct the defendant to re-employ the plaintiff.

(c) [ ]   Direct the defendant to promote the plaintiff.

(d) [ ]   Find that the defendant failed to reasonably accommodate the plaintiff's religion.

(e) [ ]   Find that the defendant failed to reasonably accommodate the plaintiff's disabilities.

(f) [X]   Direct the defendant to (specify): pay plaintiff damages of $4.9

million for the very innense pain and suffering and financial

hardship he has endured as the result of the injuries from

this Title VII violation by defendant.  The damage amount

also covers the defamation of character and work performance

by defendant toward plaintiff which has caused plaintiff to

be unemployed to this very day. Damage amount also covers

the lost of retirement income in plaintiff's 401K plan.

(g) ☒    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)    *Earl Stanford Worthing*

(Plaintiff's name)    Earl Stanford Worthington

(Plaintiff's street address)    4522 Saratoga Road


(City) Richton Park    (State) Illinois (ZIP) 60471-1123

(Plaintiff's telephone number) (708) - 481-3881/ (312) 505-0582.

EVIDENCE OF TITLE VII VIOLATIONS BY DEFENDANT'S HUMAN RESOURCE
DIRECTOR,  FRED MARTINEZ REGARDING PLAINTIFF'S EMPLOYMENT.

(a)   The termination by defendant's Human Resource Director of
      plaintiff's employment is a clear violation of the Title VII
      Act of Congress.  In 1976,  regarding McDonald v. Santa Fe
      Trail Transportation Co.;  The U. S.  Supreme Court ruled
      that differential treatment of employees based on their race
      is a violation of Title VII.  In regards to EEOC file no.
      21BA02935,  it is seen thusly:

(1)   In late 1999,  Bela Patel,  a non-african american employee,
      was allowed to transfer from Bethany Hospital a majority
      african american venue,  to Lutherian General Hospital,  one
      of defendant's majority white venues.  Consequently,
      plaintiff,  an african american,  whom is equally qualified
      as Ms.  Patel was denied the opportunity to transfer from
      Bethany Hospital,  a majority african american venue to
      Christ Hospital a majority white venue.

(2)   In March of 2000,  Hasan Moazzam,  a non-african american
      employee,  was allowed to take a three week vacation and was
      allowed to return to his position as a medical technologist.
      On the other hand,  plaintiff,  an african american was denied
      the opportunity to return to his position as a medical
      technologist by defendant's human resource director when he
      returned from his administrative-ordered vacation.

(3)   Additionally,  one of the non-african american employees whom
      replaced plaintiff,  was allowed a month's leave of absence
      and was allowed by Human Resource Director Martinez to return
      to their position as a medical technologist.

**Conclusion:**

In the above captioned case,  the U. S.  Supreme Court ruled that
this differential treatment of employees based on their race by
defendant's Human Resource Director Martinez is a violation of
Title VII.

(b)   The refusal of defendant's human resource director to reinstate
      plaintiff and give him equal pay plus bonus as granted the
      newly hired non-african american employee is a violation of the
      made whole provision under Title VII.  In 1976,  regarding
      Franks v.  Bowman Transportation Co., Inc.,  U. S.  Supreme
      Court Justice  Brennan stated that rewards should be made for
      loss of seniority in accordance to the made whole provision
      under Title VII,  thus enabling plaintiffs to attain
      promotions within the company independent of their race.

(1)    In August of 2000, defendant's human resource director
       refused to grant plaintiff, an african american employee,
       equal pay plus bonus as granted a non-african american
       employee.

(2)    In September of 2000, when a position for a medical
       technologist opened at Christ Hospital, defendant's human
       resource director refused to reinstate and transfer plaintiff.

**Conclusion:**

In the above captioned case, Justice Brennan ruled that plaintiffs
should have their seniority reinstated as the result of losing
their employment based on their race.

(c)    The refusal of defendant's human resource director to
       transfer plaintiff from Bethany Hospital, a majority african
       american venue to Christ Hospital a majority white venue, is
       a violation of the segregation provision under Title VII. In
       1954, regarding <u>Brown</u> v. <u>Board of Education</u>, the U. S.
       Supreme Court ruled that <u>dejure</u> segregation was
       unconstitutional and violated Title VII.

(1)    In June of 2000, plaintiff notified defendant's human
       resource director that he desired to transfer from Bethany
       Hospital, a majority african american venue to Christ
       Hospital a majority white venue. Defendant's human resource
       director severed plaintiff's an african american, employment
       at Bethany Hospital as the result of the <u>dejure</u> segregation
       policy that defendant had in force at that time.

(2)    In February of 2001, an investigator with the Illinois
       Department of Human Rights, told plaintiff, an african
       american that his request for a Mediation Conference whereas
       he would negotiate a transfer of his seniority to Christ
       Hospital a majority white venue is totally out of the
       question. The investigator was told this by defendant's
       human resource director in order to be in compliance with
       their <u>dejure</u> segregation.

**Conclusion:**

In the above captioned case, the U. S. Supreme court ruled that
<u>dejure</u> segregation enforced by defendant's human resource director
is unconstitutional and is a violation under Title VII.

THE PLAINTIFF'S 14TH AMENDMENT EQUAL PROTECTION RIGHTS AS AN EMPLOYEE
WAS VIOLATED BY DEFENDANT'S HUMAN RESOURCE DIRECTOR.

(1)   In July of 2000, defendant's human resource director severed
      plaintiff's employment at Bethany Hospital in spite of the
      fact that plaintiff had two pending grievances against his
      immediate supervisor. This malicious action by defendant's
      human resource director is a violation of plaintiff's
      Contractual Rights of employment and futhermore a violation
      of plaintiff's 14th Amendment Equal Protection Rights as an
      employee with defendant.

IN ACCORDANCE TO FEDERAL AND STATE LAWS, COMPLAINANT IS DUE
PUNITATIVE DAMAGES AS THE RESULT OF RESPONDENT'S/DEFENDANT'S
HUMAN RESOURCE DIRECTOR MALICIOUS ACT OF DEFAMING PLAINTIFF'S
CHARACTER AND WORK PERFORMANCE.

(1)   In December of 2001, defendant's human resource director
      under oath, tried to convince the Illinois Employment
      Security Board of Review that plaintiff was discharged from
      Bethany Hospital due to misconduct and not the result of
      Title VII violations. This defamation of character by
      said defendant's human resource director provides a nexus
      that he was telling prospective employers for plaintiff
      the same Untruth.

(2)   In January of 2001, defendant's human resource director had
      filed under Illinois Department of Human Rights Charge No:
      2001CF0159 a missive signed by defendant's associate general
      counsel falsely stating that plaintiff was discharged for
      job abandonment and not the result of Title VII violations.
      This missive filed by said defendant provides a nexus that
      they were telling prospective employers for plaintiff the
      same untruth.

(3)   The refusal of human resource director for defendant to
      submit to plaintiff a letter of referal when requested to
      defendant's associate general counsel, further shows defendant's
      belief that plaintiff abandoned his job. This false belief
      again provides a nexus that defendant's human resource
      director was telling prospective employers for plaintiff the
      same untruth.

(4)   A missive sent to plaintiff from defendant's human resource
      director superior, the senior VP of human resources with
      defendant when plaintiff requested a secondary review of
      the situation, showed support for defendant's human resource
      director action of discharging plaintiff for job abandonment.
      This support of a false claim of discharge against plaintiff
      further provides a nexus that defendant was telling prospective
      employers for plaintiff the same untruth.

## REFERENCES

1)  **Library of Congress**.
    Washington,   D. C.

2)  **The Supreme Court and Individual Rights**.
    Witt,  Elder.  2nd ed.  1988.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

EEOC Charge Number 210BA02935

Earl S. Worthington
10557 South Eberhart                                    Charging Party
Chicago, Illinois  60628

     v.

Bethany Hospital
3435 West Van Buren                                     Respondent
Chicago, Illinois  60624

     and

Advocate Healthcare
2025 Windsor Drive                                      Respondent
Oak Brook, Illinois  60523

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII).

Respondents are employers within the meaning of Title VII and all requirements for coverage have been met.

Charging Party alleges that he was retaliated against for opposing racial discrimination by his supervisor in that when he was issued a verbal warning he was subjected to a racially derogatory remark.  After stating he was going to file a grievance against this supervisor, four days later Charging Party was issued a written warning, and  was subsequently terminated for job abandonment, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondents retaliated against Charging Party, in that he was disciplined, in violation of Title VII.

Determination
EEOC Charge No. 21BA02935
Page 2 of 2

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26)

If the Respondents wish to accept this invitation to participate in conciliation efforts, it may do so at this time by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by the Respondent to not engage in unlawful practices, placement of identified victims in positions they would have held but for the discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

Should the Respondent have further questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage them to contact the assigned Commission representative. Should there be no response from the Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On Behalf of the Commission

September 13, 2002
Date

John P. Rowe
John P. Rowe
Director

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form.

| A | | CHARGE NUMBER |
|---|---|---|
| ☒ FEPA | | 2001CF0159 |
| ☒ EEOC | | |

Illinois Department of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Earl S. Worthington | (773) 264-1512 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 10557 S. Eberhart | Chicago, IL 60628 | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below).

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Bethany Hospital | 15+ | (773) 265-7700 x3640 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 3435 W. Van Buren | Chicago, IL 60624 | Cook |

| NAME | | TELEPHONE (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | EARLIEST (ADEA/EPA)   LATEST (ALL) |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER | 6/19/00 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s) ):

I.   A.   ISSUE/BASIS
         1.   VERBAL WARNING ON JUNE 19, 2000, IN RETALIATION FOR OPENLY
              OPPOSING RACE DISCRIMINATION.

     B.   PRIMA FACIE ALLEGATIONS
         1.   June 18, 2000, I reported to work on my scheduled shift,
              first shift, and I noticed an employee who was not
              scheduled to work on my original work schedule.  My
              immediate supervisor, Ms. Violeta Puldio-Johnson was
              called and she informed me that I was not scheduled to
              work first shift on that day, and that I should pay more
              attention to the schedule because I was scheduled,
              according to her, to work second shift that day.  She
              also said and I quote: "That is the problem with you
              Black people, you people can't follow the schedule,

cont.d HMS

7/27/00

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

"SEAL"
KONAH J. YANCY-MORGAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/5/2003
Notary Public Seal

| SIGNATURE OF COMPLAINANT | DATE |
|---|---|
| | |

*(signature)* 7/27/00
SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)

EEOC FORM 5 (5/00)

2000CF0159
Earl Worthington
page 2

   and you people just don't want to work, that's our biggest
   problem!".

2.   I of course, was taken aback by what I would considered
     to be a racist comment.  I then notified her that I was
     going to file a grievance against her with the Human
     Resource Department at the hospital.

3.   On June 19, 2000, I was issued a verbal reprimand by
     Violeta Pulido-Johnson, Supervisor, for reporting to work
     on the wrong shift.

4.   The verbal warning followed my having put my supervisor
     notice that I was filing a grievance against for her
     racist statements made to me by her within a short
     period of time, thereby raising an inference of
     retaliatory
     motivation.

## II. A. ISSUE/BASIS

1.   WRITTEN REPRIMAND ON JUNE 23, 2000, IN RETALIATION FOR
     REPORTING RACIAL HARASSMENT.

## B.   PRIMA FACIE ALLEGATIONS

1.   June 18, 2000, I reported to work on my scheduled shift,
     first shift, and I noticed an employee who was not
     scheduled  to work on my original work schedule.  My
     immediate supervisor, Ms. Violeta Puldio-Johnson was
     called and she informed that I was not scheduled to work
     first shift of that day, and that I should pay more
     attention to the schedule because I was scheduled,
     according to her, to work second shift that day.  She also
     said and I quote:  "That is the problem with you Black
     people, you people can't follow the schedule, and you
     people just don't want to work, that's our biggest
     problem!".

cont.d hms

2001CF0159
Earl Worthington
page 3

2.   I of course, was taken aback by what I would considered
     to be a racist comment.  I then notified her that I was
     going to file a grievance against her with the Human
     Resource Department at the hospital.

3.   On June 23, 2000, I was issued a written reprimand by Ms
     Violeta Pulido- Johnson , Supervisor, allegedly for not
     showing to work and or calling in when scheduled. I was
     nor scheduled to work on the date in question as Fridays
     has always been my scheduled days off.

4.   The written reprimand followed my having put my
     supervisor notice that I was filing a grievance against
     for her racist statements made to me by her within a
     short period of time, thereby, raising an inference of
     retaliatory motivation.

III.   A.   ISSUE/BASIS
            1. DISCHARGE ON JULY 10, 2000, IN RETALIATION FOR
               REPORTING A RACIST STATEMENTS.

       B.   PRIMA FACIE ALLEGATIONS
            1.   June 18, 2000, I reported to work on my scheduled shift,
                 first shift, and I noticed an employee who was not
                 scheduled to work on my original work schedule.
                 My immediate supervisor, Ms. Violeta Puldio-Johnson was
                 called and she informed me that I was not scheduled to
                 work first shift on that day, and that I should pay more
                 attention to the schedule because I was scheduled,
                 according to her, to work second shift that day.  She
                 also said and I quote:  "That is the problem with you
                 Black people, you people can't follow the schedule, and
                 you people just don't want to work, that's our biggest
                 problem!".

            2.   I of course, was taken aback by what I would considered
                 to be a racist comment. I then notified her that I was
                 going to file a grievance against her with the Human
                 Resource Department at the hospital.

            3.   On July 10, 2000 I was discharged while I was on
                 vacation. The reason cited to me for my discharge by
                 Violeta Pulido- Johnson , Supervisor, was for job
                 abandonment.

cont.d hms

2000CF0159
Earl Worthington
page 4

4.  The discharge  followed my having put my
    supervisor notice that I was filing a grievance against
    for her racist statements made to me by her within a
    short period of time, thereby, raising an inference of
    retaliatory motivation.

HMS/dng

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

02 DEC 23 AM11: 55

FILED

| | | |
|---|---|---|
| SONDRA M. KARNEY, | ) | **02C 9332** |
| Plaintiff, | ) | No. |
| | ) | |
| vs. | ) | Judge **JUDGE ANDERSEN** |
| | ) | |
| ADVOCATE HEALTH CARE dba | ) | Magistrate Judge **MAGISTRATE JUDGE SCHENKIER** |
| LUTHERAN GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

DOCKETED
DEC 2 3 2002

## COMPLAINT

Plaintiff, Sondra M. Karney, by and through her attorney, brings this action against

Advocate Health Care, dba Lutheran General Hospital, seeking a preliminary and permanent

injunction and monetary damages based on discrimination unlawful under the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

### PARTIES

1.      Plaintiff, Sondra Karney, is a citizen of Illinois, with her residence in Chicago,

Illinois. Ms. Karney is employed at Lutheran General Hospital ("Lutheran General") in Park

Ridge, Illinois. She began her employment at Lutheran General in June 1979.

2.      Since birth, Ms. Karney has suffered from cerebral palsy. Cerebral palsy is

caused by damage to one or more areas of the brain, often occurring during fetal development,

and describes a group of conditions that affect movement and muscle coordination. In Ms.

Karney's case, the cerebral palsy principally affects her gait and balance. Because of her

condition, she experiences frequent falls, which over the course of her life have resulted in

Page 1

broken bones and other serious injuries.  Ms. Karney is a person with a disability within the meaning of the ADA.

3.      Defendant Advocate Health Care ("Advocate") is a not-for-profit company incorporated in the State of Illinois, which owns and operates Lutheran General Hospital as well as other hospitals and health care facilities in Illinois.  Defendant is an employer within the meaning of the ADA.

4.      At all times relevant to this Complaint, Defendant was aware of Plaintiff's disability.

5.      On December 21, 2001, the Equal Employment Opportunity Commission (EEOC) issued a determination finding reasonable cause to believe that Defendant had discriminated against Plaintiff in failing to grant her request for a reasonable accommodation. The EEOC issued a notice of right to sue dated September 26, 2002, a copy of which is attached as Exhibit 1.

## JURISDICTION

6.      This action arises under the laws of the United States, specifically the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (ADA).

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

8.      The claims made in this action arose within this judicial district.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTS

10.     In the late 1990s, due to aging and the cumulative effect of previous injuries she had sustained, Ms. Karney realized that her gait and balance impairment was becoming worse. Despite the potential for further injury by walking as a means of mobility, walking gave Ms. Karney both health benefits and independence unmatched by any alternative.

11.     In 1999, she learned that service dogs were available as "walker" dogs. After consultation with her physician, Ms. Karney concluded that she would greatly benefit from the use of a service dog. A service dog would primarily assist Ms. Karney in maintaining her balance and avoiding falls, and breaking a fall if one was unavoidable. But the service dog would also pick up and carrying things, open and close doors, and retrieve objects for her. Ms. Karney ultimately saw the use of a service dog as a way of increasing her health and independence while decrease the need to rely on other people.

12.     In February 2000, Ms. Karney traveled to Concordia, Kansas, to CARES, an organization that trains and places service animals with disabled people. At CARES, Ms. Karney was interviewed and later accepted into program. She was placed on a list to obtain a service dog. In January 2001, CARES informed Ms. Karney that a service dog had been found for her and was then in training; an English Mastiff named Darcy.

13.     Immediately after her contact with CARES, Ms. Karney informed Advocate that she would be obtaining a service dog, and requested that she be permitted to use the service dog at Lutheran General. As part of Advocate's review of that request, Ms. Karney, along with her husband, Christopher, met with the company's "reasonable accommodation committee" on February 27, 2001, at Advocate's Good Samaritan Hospital in Downers Grove, Illinois. In

addition to the Karneys, Karen Schmidt, Al Lewis, Maureen Zizzo, Sue Miller-Perez, and Vicki

Warden, all members of the reasonable accommodation committee, were present.

14.    At the February meeting, the members of the reasonable accommodation

committee treated Ms. Karney's request that she be able to utilize her service dog at work as a

fait accompli.  Committee members made a number of statements to Ms. Karney and her

husband which clearly and unambiguously expressed the committee's view that the request was

approved.  Mr. Lewis stated "We can't say no to this, [the service dog] has a right to be there."

Ms. Schmidt stated "I wish all accommodation requests were this easy.  This is a no brainer."

Ms. Warden stated "Don't be surprised if you and Darcy get called up to Peds for therapy work."

Ms. Karney left the meeting with the definite conviction that her request had been granted.

15.    In March 2001, Ms. Karney again traveled to Kansas, this time to train with

Darcy.  At the conclusion of the training, Darcy was certified for public assess, meaning that she

had been trained and tested in performing her duties in public areas.

16.    Ms. Karney return home with Darcy on April 2, 2001, expecting to return to work

on April 11, 2001, with her service dog.  On April 6, 2001, Ms. Karney was informed by Karen

Schmidt, the director of Advocate's disability committee, that "concerns" had arisen about her

use of a service dog in the hospital, and that a second meeting would be held on the issue.

17.    At that meeting, held April 10, 2001, the attitude of the members of the

reasonable accommodation committee had changed completely.  Ms. Karney was told that her

request was denied because the Illinois Department of Public Health regulations barred

Advocate from granting her requested accommodation.

18.    As the meeting concluded, Ms. Miller-Perez told Ms. Karney "We all have a job

to do: we don't want to set a precedent."   One week after that meeting, on April 17, 2001, Ms.

Page 4

Schmidt followed up with a letter confirming the denial of Ms. Karney's request, and suggesting alternatives to Ms. Karney, like providing her an "escort" to and from her automobile, or her use of "an assistive device, like a cane, walker, wheel chair, or motorized scooter . . .."

19.     Further efforts by Ms. Karney to obtain Advocate's approval to use her service dog in the workplace were unavailing.

## CAUSE OF ACTION
### (Violation of the Americans with Disabilities Act)

20.     Plaintiff hereby incorporates by reference paragraphs 1 through 19, inclusive, as if herein set forth at length.

21.     Plaintiff is a qualified individual with a disability.

22.     Plaintiff requested a reasonable accommodation to her disability, namely that her service dog assist her in her place of employment.

23.     Defendant's action in refusing to make reasonable accommodation to Plaintiff's disability by permitting her the use of her service dog constitutes employment discrimination against a qualified individual with a disability, in violation of the Americans with Disabilities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare that Defendant's policy, which bars the use of service dogs by persons with disabilities, violates the Americans with Disabilities Act;

B.     Issue a permanent injunction requiring that Plaintiff be permitted to use her service dog during the course of her duties at Lutheran General;

C.     Award Plaintiff compensatory damage in an amount to be determined at trial;

**Page 5**

D.    Award Plaintiff costs and reasonable attorneys' fees; and

E.    Award such other relief which this Court may deem just and proper.


Respectfully submitted,

SONDRA M. KARNEY

Jamie G. Sypulski
Attorney for the Plaintiff

Jamie G. Sypulski
Attorney-at-Law
122 South Michigan Avenue, Suite 1720
Chicago, Illinois 60603
312/360-0960

## COUNT II
### (Wrongful Death - Hospital)

The Plaintiff, **ROSHELLE SHEALEY**, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, by her attorneys, **LEVIN & PERCONTI**, makes the following allegations against the Defendant, **ADVOCATE HEALTH AND HOSPITALS CORPORATION, D/B/A ADVOCATE BETHANY HOSPITAL, an Illinois Not-For-Profit corporation, ("BETHANY HOSPITAL")** as follows:

1. The Plaintiff, **ROSHELLE SHEALEY**, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, brings this action pursuant to 740 ILCS 180/1, *et. seq.*, commonly known as the Wrongful Death Act of the State of Illinois.

2-7. The Plaintiff realleges and restates Paragraphs 2 through 7 of Count I of this Complaint, as and for Paragraphs 2 through 7 of this Count II.

8. Plaintiff's decedent left surviving her various persons who were her next of kin, including, but not limited to the following individuals:

**TANYIA SMITH, her daughter**

9. All of the decedent's next of kin suffered injuries as a result of the death of decedent, including the loss of companionship, society, guidance, and material services of the decedent.

10. Attached to this Complaint are the Attorney's Affidavit and Health Professional's Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

WHEREFORE, the Plaintiff, **ROSHELLE SHEALEY**, Special Administrator of the Estate of OCTAVIA SHEALEY, Deceased, asks judgment against the Defendant, **ADVOCATE HEALTH AND HOSPITALS CORPORATION, D/B/A ADVOCATE BETHANY HOSPITAL, an Illinois Not-For-Profit corporation**, in a sum in excess of FIFTY

4

Thousand ($50,000) Dollars, which will fairly compensate the Plaintiff for the injuries sustained.

## COUNT III
### (Survival Action-Apparent Agency - Hospital)

The Plaintiff, **ROSHELLE SHEALEY**, Special Administrator of the Estate of

**OCTAVIA SHEALEY**, deceased, by her attorneys, **LEVIN & PERCONTI**, complains against

the Defendant, **ADVOCATE HEALTH AND HOSPITALS CORPORATION, D/B/A**

**ADVOCATE BETHANY HOSPITAL, an Illinois Not-For-Profit corporation,**

("**BETHANY HOSPITAL**"), as follows:

1.    The Plaintiff, **ROSHELLE SHEALEY**, Special Administrator of the Estate of

**OCTAVIA SHEALEY**, deceased, brings this action pursuant to 755 ILCS 5/27-6, *et. seq.*,

commonly known as the Survival Act of the State of Illinois.

2-4.    The Plaintiff realleges and restates Paragraphs 2-4 of Count I of this Complaint,

as and for Paragraphs 2-4 of this Count III.

5.    At all times mentioned herein, the Defendant, **BETHANY HOSPITAL**, acted in

a manner that would lead a reasonable person to conclude that **DR. SANG IN HAM, DR.**

**ARTHUR JONES, and DR. VICTOR L. THOMAS**, were employees or agents of the

Defendant, **BETHANY HOSPITAL.**

6.    The Defendant did not inform the Plaintiff's decedent, **OCTAVIA SHEALEY**,

that the care rendered by **DR. SANG IN HAM, DR. ARTHUR JONES, and DR. VICTOR L.**

**THOMAS**, was being provided by an independent contractor or by a physician who was not an

agent, servant or employee of the hospital.

7.    The Plaintiff's decedent, **OCTAVIA SHEALEY**, relied upon the Defendant,

**BETHANY HOSPITAL**, to provide complete medical care through its staff and did not select

5

the Defendants, DR. SANG IN HAM, DR. ARTHUR JONES, DR. VICTOR L. THOMAS, and EMERGENCY MEDICAL SPECIALISTS, S.C., an Illinois corporation, as her physicians.

8.    The Plaintiff's decedent, OCTAVIA SHEALEY, did not know and did not have reason to know that DR. SANG IN HAM, DR. ARTHUR JONES, DR. VICTOR L. THOMAS, and EMERGENCY MEDICAL SPECIALISTS, S.C., an Illinois corporation, were not agents, servants or employees of the Defendant, BETHANY HOSPITAL.

9-12.    The Plaintiff realleges and restates Paragraphs 5-8 of Count I of this Complaint, as and for Paragraphs 9-12 of this Count III.

13.    Attached to this Complaint are the Attorney's Affidavit and Health Professional's Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

WHEREFORE, the Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased asks that a judgment be entered against Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION, D/B/A ADVOCATE BETHANY HOSPITAL, an Illinois Not-For-Profit corporation, in a fair and just amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT IV
### (Wrongful Death - Apparent Agency - Hospital)

The Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, by her attorneys, LEVIN & PERCONTI, complains against the Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION, D/B/A ADVOCATE BETHANY HOSPITAL, an Illinois Not-For-Profit corporation, ("BETHANY HOSPITAL"), as follows:

6

1.     The Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, brings this action pursuant to 740 ILCS 180/1, *et. seq.*, commonly known as the Wrongful Death Act of the State of Illinois.

2-12.   The Plaintiff realleges and restates Paragraphs 2 through 12 of Count III of this Complaint, as and for Paragraphs 2 through 12 of this Count IV.

13.     Plaintiff's decedent left surviving her various persons who were her next of kin, including, but not limited to the following individuals:

TANYIA SMITH, her daughter.

14.     All of the decedent's next of kin suffered injuries as a result of the death of decedent, including the loss of companionship, society, guidance, and material services of the decedent.

15.     Attached to this Complaint are the Attorney's Affidavit and Health Professional's Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

WHEREFORE, the Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, asks that a judgment be entered against Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION, D/B/A ADVOCATE BETHANY HOSPITAL, an Illinois Not-For-Profit corporation, in a fair and just amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT V
### (Survival Action - Dr. Arthur G. Jones and Advocate Health Care Network)

The Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, by her attorneys, LEVIN & PERCONTI, complains against the Defendants, DR. ARTHUR G. JONES and ADVOCATE HEALTH CARE NETWORK,

an Illinois corporation, d/b/a ADVOCATE HEALTH CARE as follows:

1.    The Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, brings this action pursuant to 755 ILCS 5/27-6, *et. seq.*, commonly known as the Survival Act of the State of Illinois.

2-4.    The Plaintiff realleges and restates Paragraphs 2-4 of Count I of this Complaint, as and for Paragraphs 2-4 of this Count V.

5.    On or before the 2nd day of September, 2004, the Plaintiff's decedent, OCTAVIA SHEALEY, came under the care of the Defendant, DR. ARTHUR G. JONES, for the evaluation and treatment of shortness of breath and chest pain.

6.    At all times mentioned herein, the Defendant, DR. ARTHUR G. JONES was the duly authorized agent, servant or employee of Defendant, ADVOCATE HEALTH CARE NETWORK, an Illinois corporation, d/b/a ADVOCATE HEALTH CARE.

7.    At all times mentioned herein, it became and was the duty of the Defendants, DR. ARTHUR G. JONES and ADVOCATE HEALTH CARE NETWORK, to use the skill and care ordinarily used by a reasonably qualified physician in the examination, diagnosis and treatment of Plaintiff's decedent.

8.    The Defendants, DR. ARTHUR G. JONES and ADVOCATE HEALTH CARE NETWORK were guilty of one or more of the following careless and negligent acts or omissions in the examination, treatment or diagnosis of the Plaintiff's decedent:

    a.    Failed to recognize signs and symptoms of post-partum cardiomyopathy;

    b.    Failed to treat signs and symptoms of post-partum cardiomyopathy;

    c.    Failed to evaluate for potential causes of congestive heart failure;

    d.    Failed to order appropriate medications for OCTAVIA including but not limited to digitalis, diuretics, and ACE inhibitors;

8

e.     Failed to ensure that **OCTAVIA** was appropriately monitored while in the Emergency Department;

f.     Failed to transfer **OCTAVIA** to the intensive care unit in a timely manner;

g.     Failed to intubate **OCTAVIA** when it known or should have been known that she was in acute respiratory distress; and;

h.     Failed to protect **OCTAVIA'S** airway during transfer.

9.     As a direct and proximate result of one or more of the negligent acts or omissions attributable to Defendants **DR. ARTHUR G. JONES** and **ADVOCATE HEALTH CARE NETWORK**, the Plaintiff's decedent, **OCTAVIA SHEALEY**, developed significant progressive shortness of breath, respiratory distress and cardiopulmonary arrest which caused or contributed to cause her death on September 3, 2004.

10.    As a direct and proximate result of the aforesaid, the decedent suffered injuries of a personal and pecuniary nature, including but not limited to, lost wages, medical expenses, funeral expenses, physical and emotional trauma, and conscious pain and suffering; and the decedent would have been entitled to receive compensation from the Defendant for these injuries, had the decedent survived.

11.    Attached to this Complaint are the Attorney's Affidavit and Health Professional's Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

WHEREFORE, the Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, Deceased,** asks judgment against each Defendant, **DR. ARTHUR G. JONES** and **ADVOCATE HEALTH CARE NETWORK,** in a sum in excess of FIFTY Thousand ($50,000) Dollars, which will fairly compensate the Plaintiff for the injuries sustained.

## COUNT VI
### (Wrongful Death - Dr. Arthur G. Jones – Advocate Health Care Network)

The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of
OCTAVIA SHEALEY, deceased,** by her attorneys, **LEVIN & PERCONTI,** complains against
the Defendant, **DR. ARTHUR G. JONES and ADVOCATE HEALTH CARE NETWORK,
an Illinois corporation, d/b/a ADVOCATE HEALTH CARE,** as follows:

1.  The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of
OCTAVIA SHEALEY, deceased,** brings this action pursuant to 740 ILCS 180/1, *et. seq.*,
commonly known as the Wrongful Death Act of the State of Illinois.

2-9.  The Plaintiff realleges and restates Paragraphs 2 through 9 of Count V of this
Complaint, as and for Paragraphs 2 through 9 of this Count VI.

10.  Plaintiff's decedent left surviving her various persons who were her next of kin,
including, but not limited to the following individuals:

**TANYIA SMITH, her daughter.**

11.  All of the decedent's next of kin suffered injuries as a result of the death of
decedent, including the loss of companionship, society, guidance, and material services of the
decedent.

12.  Attached to this Complaint are the Attorney's Affidavit and Health Professional's
Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

**WHEREFORE,** the Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the
Estate of OCTAVIA SHEALEY, deceased,** asks that a judgment be entered against Defendant,
**DR. ARTHUR G. JONES,** in a fair and just amount in excess of **FIFTY THOUSAND
DOLLARS ($50,000.00).**

10

## COUNT VII
### (Survival Action – Dr. Sang In Han and Emergency Medical Specialists, S.C.)

The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased**, by her attorneys, **LEVIN & PERCONTI**, complains against the Defendants, **DR. SANG IN HAN and EMERGENCY MEDICAL SPECIALISTS, S.C.**, as follows:

1.      The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased**, brings this action pursuant to 755 ILCS 5/27-6, *et. seq.*, commonly known as the Survival Act of the State of Illinois.

2-4.      The Plaintiff realleges and restates Paragraphs 2-4 of Count I of this Complaint, as and for Paragraphs 2-4 of this Count VII.

5.      On or before the 2nd day of September, 2004, the Plaintiff's decedent, **OCTAVIA SHEALEY**, came under the care of the Defendant, **DR. SANG IN HAN**, for the evaluation and treatment of shortness of breath and chest pain.

6.      At all times mentioned herein, the Defendant, **DR. SANG IN HAN** was the duly authorized agent, servant or employee of Defendant, **EMERGENCY MEDICAL SPECIALISTS, S.C.**

7.      At all times mentioned herein, it became and was the duty of the Defendants, **DR. SANG IN HAN and EMERGENCY MEDICAL SPECIALISTS, S.C.**, to use the skill and care ordinarily used by a reasonably qualified physician in the examination, diagnosis and treatment of Plaintiff's decedent.

8.      The Defendants, **DR. SANG IN HAN and EMERGENCY MEDICAL**

11

SPECIALISTS, S.C., were guilty of one or more of the following careless and negligent acts or

omissions in the examination, treatment or diagnosis of the Plaintiff's decedent:

- a.   Failed to recognize signs and symptoms of post-partum cardiomyopathy;

- b.   Failed to treat signs and symptoms of post-partum cardiomyopathy;

- c.   Failed to evaluate for potential causes of congestive heart failure;

- d.   Failed to order appropriate medications for OCTAVIA including but not
   limited to digitalis, diuretics, and ACE inhibitors;

- e.   Failed to ensure that OCTAVIA was appropriately monitored while in
   the Emergency Department;

- f.   Failed to transfer OCTAVIA to the intensive care unit in a timely manner;

- g.   Failed to intubate OCTAVIA when it known or should have been known
   that she was in acute respiratory distress; and;

- h.   Failed to protect OCTAVIA'S airway during transfer.

9.   As a direct and proximate result of one or more of the negligent acts or omissions

attributable to Defendant, DR. SANG IN HAN, the Plaintiff's decedent, OCTAVIA

SHEALEY, developed significant progressive shortness of breath, respiratory distress, and

cardiopulmonary arrest which caused or contributed to cause her death on September 3, 2004.

10.   As a direct and proximate result of the aforesaid, the decedent suffered injuries of

a personal and pecuniary nature, including but not limited to, lost wages, medical expenses,

funeral expenses, physical and emotional trauma, and conscious pain and suffering; and the

decedent would have been entitled to receive compensation from the Defendant for these

injuries, had the decedent survived.

11.   Attached to this Complaint are the Attorney's Affidavit and Health Professional's

Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

WHEREFORE, the Plaintiff, ROSHELLE SHEALEY, Special Administrator of the

12

Estate of OCTAVIA SHEALEY, Deceased, asks judgment against each Defendant, DR. SANG IN HAN and EMERGENCY MEDICAL SPECIALISTS, S.C., in a sum in excess of FIFTY Thousand ($50,000) Dollars, which will fairly compensate the Plaintiff for the injuries sustained.

## COUNT VIII
(Wrongful Death – Dr. Sang In Han and Emergency Medical Specialists, S.C.)

The Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, by her attorneys, LEVIN & PERCONTI, complains against the Defendants, DR. SANG IN HAN and EMERGENCY MEDICAL SPECIALISTS, S.C., as follows:

1.    The Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, brings this action pursuant to 740 ILCS 180/1, *et. seq.*, commonly known as the Wrongful Death Act of the State of Illinois.

2-9.    The Plaintiff realleges and restates Paragraphs 2 through 9 of Count VII of this Complaint, as and for Paragraphs 2 through 9 of this Count VIII.

10.    Plaintiff's decedent left surviving her various persons who were her next of kin, including, but not limited to the following individuals:

TANYIA SMITH, her daughter.

11.    All of the decedent's next of kin suffered injuries as a result of the death of decedent, including the loss of companionship, society, guidance, and material services of the decedent.

12.    Attached to this Complaint are the Attorney's Affidavit and Health Professional's Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

13

WHEREFORE, the Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the** Estate of **OCTAVIA SHEALEY**, deceased, asks that a judgment be entered against each Defendant, **DR. SANG IN HAN** and **EMERGENCY MEDICAL SPECIALISTS, S.C.**, in a fair and just amount in excess of **FIFTY THOUSAND DOLLARS ($50,000.00)**.

<u>COUNT IX</u>
(Survival Action – Dr. Victor L. Thomas)

The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of** **OCTAVIA SHEALEY**, deceased, by her attorneys, **LEVIN & PERCONTI**, complains against the Defendants, **DR. VICTOR L. THOMAS** and **ADVOCATE HEALTH CARE** **NETWORK, an Illinois corporation, d/b/a ADVOCATE HEALTH CARE**, as follows:

1.    The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of** **OCTAVIA SHEALEY**, deceased, brings this action pursuant to 755 ILCS 5/27-6, *et. seq.*, commonly known as the Survival Act of the State of Illinois.

2-4.    The Plaintiff realleges and restates Paragraphs 2-4 of Count I of this Complaint, as and for Paragraphs 2-4 of this Count IX.

5.    On or before the 2nd day of September, 2004, the Plaintiff's decedent, **OCTAVIA** **SHEALEY**, came under the care of the Defendant, **DR. VICTOR L. THOMAS**, for the evaluation and treatment of shortness of breath and chest pain.

6.    At all times mentioned herein, the Defendant, **DR. VICTOR L. THOMAS** was the duly authorized agent, servant or employee of Defendant, **ADVOCATE HEALTH CARE** **NETWORK, an Illinois corporation, d/b/a ADVOCATE HEALTH CARE.**

7.    At all times mentioned herein, it became and was the duty of the Defendants, **DR.** **VICTOR L. THOMAS** and **ADVOCATE HEALTH CARE NETWORK, an Illinois**

14

corporation, d/b/a **ADVOCATE HEALTH CARE,** to use the skill and care ordinarily used by

a reasonably qualified physician in the examination, diagnosis and treatment of Plaintiff's

decedent.

      8.     The Defendants, **DR. VICTOR L. THOMAS** and **ADVOCATE HEALTH**

**CARE NETWORK,** an Illinois corporation, d/b/a **ADVOCATE HEALTH CARE,** were

guilty of one or more of the following careless and negligent acts or omissions in the

examination, treatment or diagnosis of the Plaintiff's decedent:

    a.    Failed to recognize signs and symptoms of post-partum cardiomyopathy;

    b.    Failed to treat signs and symptoms of post-partum cardiomyopathy;

    c.    Failed to evaluate for potential causes of congestive heart failure;

    d.    Failed to order appropriate medications for **OCTAVIA** including but not limited to digitalis, diuretics, and ACE inhibitors;

    e.    Failed to ensure that **OCTAVIA** was appropriately monitored while in the Emergency Department;

    f.    Failed to transfer **OCTAVIA** to the intensive care unit in a timely manner;

    g.    Failed to intubate **OCTAVIA** when it known or should have been known that she was in acute respiratory distress; and;

    h.    Failed to protect **OCTAVIA'S** airway during transfer.

      9.     As a direct and proximate result of one or more of the negligent acts or omissions

attributable to Defendant, **DR. VICTOR L. THOMAS,** the Plaintiff's decedent, **OCTAVIA**

**SHEALEY,** developed significant progressive shortness of breath, respiratory distress, and

cardiopulmonary arrest which caused or contributed to cause her death on September 3, 2004.

      10.    As a direct and proximate result of the aforesaid, the decedent suffered injuries of

a personal and pecuniary nature, including but not limited to, lost wages, medical expenses,

funeral expenses, physical and emotional trauma, and conscious pain and suffering; and the

decedent would have been entitled to receive compensation from the Defendant for these injuries, had the decedent survived.

11. Attached to this Complaint are the Attorney's Affidavit and Health Professional's Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

WHEREFORE, the Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, Deceased**, asks judgment against each Defendant, **DR. VICTOR L. THOMAS and ADVOCATE HEALTH CARE NETWORK, an Illinois corporation, d/b/a ADVOCATE HEALTH CARE,** in a sum in excess of FIFTY Thousand ($50,000) Dollars, which will fairly compensate the Plaintiff for the injuries sustained.

COUNT X
(Wrongful Death - Dr. Victor L. Thomas – Advocate Health Care Network)

The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased,** by her attorneys, **LEVIN & PERCONTI,** complains against the Defendants, **DR. VICTOR L. THOMAS and ADVOCATE HEALTH CARE NETWORK, an Illinois corporation, d/b/a ADVOCATE HEALTH CARE,** as follows:

1. The Plaintiff, **ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased,** brings this action pursuant to 740 ILCS 180/1, *et. seq.,* commonly known as the Wrongful Death Act of the State of Illinois.

2-9. The Plaintiff realleges and restates Paragraphs 2 through 9 of Count IX of this Complaint, as and for Paragraphs 2 through 9 of this Count X.

10. Plaintiff's decedent left surviving her various persons who were her next of kin, including, but not limited to the following individuals:

**TANYIA SMITH, her daughter.**

16

11.     All of the decedent's next of kin suffered injuries as a result of the death of decedent, including the loss of companionship, society, guidance, and material services of the decedent.

12.     Attached to this Complaint are the Attorney's Affidavit and Health Professional's Reports filed pursuant to 735 ILCS 5/2-622(a)(1).

WHEREFORE, the Plaintiff, ROSHELLE SHEALEY, Special Administrator of the Estate of OCTAVIA SHEALEY, deceased, asks that a judgment be entered against each Defendant, DR. VICTOR L. THOMAS and ADVOCATE HEALTH CARE NETWORK, an Illinois corporation, d/b/a ADVOCATE HEALTH CARE, in a fair and just amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

Respectfully submitted,
LEVIN & PERCONTI

By: _____
JOHN J. PERCONTI

JOHN J. PERCONTI
LEVIN & PERCONTI #55019
325 N. LaSalle Street, Suite 450
Chicago, Illinois  60610
(312) 332-2872

17

## CERTIFICATION

Pursuant to the provisions of 42 U.S.C. § 233, and by virtue of the authority delegated to me by the Attorney General under 28 C.F.R. § 15.4 and through the United States Attorney for the Northern District of Illinois, I hereby certify that I have read the complaint in *Rochelle Shealey, as Special Administrator for the Estate of Octavia Shealey, Deceased v. Advocate Health and Hospitals Corporation, etc., et al.*, No. 05 L 12265 (Circuit Court of Cook County, Illinois), and all attachments thereto. On the basis of the information now available, I find that at the relevant times, the Lawndale Christian Health Center was a private entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 233. Further, I certify that Arthur Jones, M.D., was acting within the scope of his employment at the Lawndale Christian Health Center with respect to the incidents referred to in the complaint. Accordingly, for purposes of the above case, Arthur Jones, M.D., is deemed an employee of the United States pursuant to 42 U.S.C. § 233, for Federal Tort Claims Act purposes only.

Thomas Walsh

THOMAS P. WALSH
Chief, Civil Division
Office of the United States Attorney
    for the Northern District of Illinois

Date: February 24, 2006

*MHN*

# RECEIVED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
_____ DIVISION

NOV 2 7 2007
11-27-2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

_____ )
_____ )
_____ )
Lamas Alexander )
(Name of the plaintiff or plaintiffs) )
                                     )
        v.                           )
                                     )
_____ )
Advocate Health Care )
_____ )
_____ )
(Name of the defendant or defendants) )

( 07CV6655
JUDGE KENDALL
MAG. JUDGE COLE

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is _____Lamas Alexander_____ of
   the county of ____Will____ in the state of ___Illinois___.

3. The defendant is ___Advocate Healthcare_____, who
   resides at (street address)___2025 Windsor Drive_____
   (city)__Oak Brook__(county)__DuPage__(state)___Illinois___(ZIP)_60523_
   (Defendant's telephone number) (630) - 572-9393

4) The plaintiff sought employment or was employed by the defendant at

(street address) _J400 PEARL St_____

(city) _Rosemont_ (county) _Cook_ (state) _IL_ (ZIP code) _60018_

5. The plaintiff [check one box]

(a) ☐   was denied employment by the defendant.

(b) ☐   was hired and is still employed by the defendant.

(c) ☒   was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month) _04_____ (day) _18_____, (year) _2006_

7. (a) The plaintiff [check one box]  ☐ *has not* filed a charge or charges against the defendant
☒ *has*

asserting the acts of discrimination indicated in this complaint with any of the following      government

agencies:

(i) ☒ the United States Equal Employment Opportunity Commission on or about
(month) _June_____ (day) _14_____ (year) _2006_
_October_      _12_      _2006_

(ii) ☐ the Illinois Department of Human Rights on or about
(month)_____ (day)_____ (year)_____.

(b)    If charges *were* filed with an agency indicated above, a copy of the charge is

attached.   ☒ YES   ☐ NO

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of

Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to

believe that this policy was not followed in this case.

8. (a) ☐    the United States Equal Employment Opportunity Commission has not issued a *Notice*

*of Right to Sue.*

(b) ☒    the United States Equal Employment Opportunity Commission has issued a *Notice of*

*Right to Sue*, which was received by the plaintiff on (month) _Sept_;_

(day) _1_ (year) _2007_ a copy of which *Notice* is attached to this complaint.

(Guide to Civil Cases for Litigants Without Lawyers: Page 44)

9.  The defendant discriminated against the plaintiff because of the plaintiff's [check all that apply]

   (a) ☐ Age (Age Discrimination Employment Act).

   (b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (c) ☒ Disability (Americans with Disabilities Act)

   (d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

   (g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. The plaintiff is suing the defendant, a state or local government agency, for discrimination on the basis of race, color, or national origin (42 U.S.C. §1983).

   ☒ YES    ☐ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); over 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; over the A.D.E.A. by 42 U.S.C.§12117.

12. The defendant [check all that apply]

   (a) ☐ failed to hire the plaintiff.

   (b) ☒ terminated the plaintiff's employment.

   (c) ☐ failed to promote the plaintiff.

   (d) ☐ failed to reasonably accommodate the plaintiff's religion.

   (e) ☒ failed to reasonably accommodate the plaintiff's disabilities.

   (f) ☒ other (specify): Retaliated Against the Plaintiff by terminating employment after plaintiff filed the EEOC Charge of discrimination.

(Guide to Civil Cases for Litigants Without Lawyers: Page 45)

13. The facts supporting the plaintiff's claim of discrimination are as follows:

(PLEASE REVIEW the AttAched PAGES)

_____

_____

_____

_____

14. [AGE DISCRIMINATION ONLY] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury.  ☒ YES  ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [check all that apply]

(a) ☐  Direct the defendant to hire the plaintiff.

(b) ☐  Direct the defendant to re-employ the plaintiff.

(c) ☐  Direct the defendant to promote the plaintiff.

(d) ☐  Find that the defendant failed to reasonably accommodate the plaintiff's religion.

(e) ☒  Find that the defendant failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒  Direct the defendant to (specify): To pay the defendant loss wages, to include vacation + sick time, promotional, cost of living wages and punitive damages and interest accrued at 1% above the inflation rate.

_____

_____

(g) ☒  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(Guide to Civil Cases for Litigants Without Lawyers: Page 46)

Paragraph 13 continued,

1) I began my employment with the respondent on October 3, 2005. My position at the time of my acceptance of their offer, was Courier 1.

2) From October 2005 until April 2006, I was deemed an exemplary employee. That is to say, an employee without problems or issues.

3) In February 2006 a co-worker approached my wife without provocation, and asked why did you marry that m----------g guy. I reported this to my immediate supervisor Clay Caulkin. My wife and I are a mix race couple. There was no action taken against this co-worker named Xavier, who works as a dispatcher in the courier department.

4) On April 18, 2006 I was subjected to derogatory statements about my race, and disability (Diabetic), by the shift supervisor Larry Moore. The next day I reported it to my immediate supervisor Clay Caulkin and the manager of the department Matt Clark. Two days later Matt Clark, the department manager assured me that he had taken care of the issue and that no further discussion would be necessary.

5) At the beginning of the month of May 2006 Larry Moore a supervisor in the courier department, is overheard telling a dispatcher that he is going to get that SOB, Lamas Alexander fired the hell out of here.

6) On June 1, 2006 as I enter the building I am greeted by my supervisor Clay Caulkin and asked to accompany him to the conference room at the other end of the building. When we arrive Larry Moore is waiting for us with a document in his hand. Larry Moore passes the documents to Clay Caulkin, who turns to me and states that I am being given a Level 1 written warning for 11 performance failures, that began with the night April 18, 2006.

7) On June 8, 2006 I was given a Level II written warning, that was revised and issued again on June 13, 2006.

8) On June 14, 2006 I filed an EEOC discrimination charge # 440-2006-05608.

9) I had applied for the position of Patient Access Representative at one the respondent's hospitals in early April 2006. I wanted to transfer to another facility internally so I would not lose benefits or pay.

10) I was interviewed on two separate occasions for this position and was told by the Patient Access Manager Nicole Jones I was considered a top candidate for the job. I did not get either of the vacant positions and was not notified that I had not been hired, even though the department Manager Nicole Jones told me that I would hear from herself or the recruiter within 2-3 days.

11) I was subsequently issued a Level III written warning on June 27, 2006 and terminated on June 28, 2006

12) I believed that I have been retaliated against, in violation of Title VII of the civil rights act of 1964, as amended.

(h) ☒      Grant such other relief as the Court may find appropriate.

(Plaintiff's signature) _____ *James DeLam* _____

(Plaintiff's name) _____ LAMAS ALEXANDER _____

(Plaintiff's street address) _____ 463 MALLVIEW LANE _____

_____ alexanderlamas@hotmail.com _____

(City) Colinebrook      (State) IL      (ZIP) 60440

(Plaintiff's telephone number) (630) – 664-5716

630-783-4041

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2006-05608 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Lamas Alexander | (630) 739-5689 | 08-25-1963 |

Street Address: **463 Mallview Ave., Bolingbrook, IL 60440**   City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ADVOCATE HEALTH CARE | 500 or More | (847) 390-9334 |

Street Address: **5400 Pearl St, Rosemont, IL 60018**   City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address:    City, State and ZIP Code

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10-03-2005**    Latest **06-14-2006**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on October 3, 2005. My most recent position is Courier I. In February 2006 and April 2006, I was subjected to derogatory remarks about my race and disability. I immediately complained to management about the remarks. On June 5, 2006, June 8, 2006, and June 13, 2006, I was issued written disciplinary actions.

I believe that I have been discriminated against because of my disability in violation of the Americans with Disabilities of 1990. I also believe that I have been discriminated against because of my race, Black, and have been retaliated against for complaining, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC
JUN 1 4 2006
CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jun 14, 2006**   *Date*    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2007-00240 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Lamas Alexander | (630) 410-8777 | 08-25-1963 |

**Street Address**
463 Mallview Ave., Bolingbrook, IL 60440
City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ADVOCATE HEALTHCARE | 500 or More | (630) 990-5038 |

**Street Address**
2025 Windsor Drive, Oak Brook, IL 60523
City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

**Street Address**
City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 06-28-2006 | 06-28-006 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On June 14, 2006, I filed EEOC Charge No. 440-2006-05608 against Respondent. I had applied for the position of Patient Access Representative at one of Respondent's hospital facilities in late April, 2006 or early May, 2006. I was interviewed on two occasions, the latest interview taking place in June, 2006. I had been told by the Patient Access Manager that I was considered a top candidate for one of the vacant positions. Respondent was to notify me as to its final decision within two to three days after my second interview. I was never notified at all. I was subsequently issued a Level III Disciplinary Warning on June 27, 2006. I was discharged on June 28, 2006.

I believe I have been retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.

OCT 12 2006

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Oct 12, 2006  *(signature)*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Lamas Alexander<br>483 Mallview Ave.<br>Bolingbrook, IL 60440 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

CERTIFIED MAIL 7099 3400 0018 8815 4755

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2006-05508 | Kathleen Leaver,<br>Investigator | (312) 353-8766 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_signature: John P. Rowe_          8/16/07

_____          _____
John P. Rowe,                              (Date Mailed)
District Director

Enclosure(s)

cc:    ADVOCATE HEALTHCARE

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Lamas Alexander<br>463 Maliview Ave.<br>Bolingbrook, IL 60440 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |

CERTIFIED MAIL  7099 3400 0018 8815 4762

[ ]   On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 440-2007-00240 | Kathleen Leaver,<br>Investigator | (312) 353-8766 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]   While reasonable efforts were made to locate you, we were not able to do so.

[ ]   You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

John P. Rowe,
District Director

8/16/07
(Date Mailed)

Enclosures(s)

cc:    ADVOCATE HEALTHCARE

RECEIVED

DEC - 3 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK U.S. DISTRICT COURT

DOCKETED

DEC 0 4 2001

SLAVKO SUBARIC,

               Plaintiff,

               vs

ADVOCATE HEALTH CARE NETWORK
d/b/a LUTHERAN GENERAL HOSPITAL,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)

01C 9243

JUDGE LEINENWEBER

MAGISTRATE JUDGE SCHENKIER

## COMPLAINT

    NOW COMES the Plaintiff, Slavko Subaric, appearing pro se, and for his Complaint against Advocate Health Care Network d/b/a Lutheran General Hospital, states as follows:

### JURISDICTION

    1.    This action arises pursuant to Section 7(b) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C., §626(b).

    2.    Plaintiff is a resident of Prospect Heights, Illinois, and is a citizen of the State of Illinois.

    3.    On information and belief Defendant Advocate Health Care Network ("Advocate") is an Illinois Not for Profit, doing business in the State of Illinois at, in addition to many other locations, 1775 Dempster, Park Ridge, Illinois.

    4.    At all time relevant to this Complaint, Defendant was engaged in an industry affecting commerce as defined in Section 11(b) of the ADEA, 29 U.S.C. §630(b).

1

5.    At all times relevant, Defendant has employed 20 or more employees. The Defendant was and is, therefore, an employer within the meaning of Section 11(b) of the ADEA, 29 U.S.C. §630(b).

## ADMINISTRATIVE PREREQUISITES

6.    On or about July 3, 2000, Plaintiff filed a charge with the Illinois Department of Human Rights ("IDHR") which was cross-filed with the Equal Employment Opportunity Commission ("EEOC") charging Defendant with discriminating against Plaintiff on the basis of age. A true and complete copy of that charge is attached hereto as Exhibit "A".

7.    On November 9, 2001, the EEOC issued a Right to Sue letter, a true and complete copy of which is attached hereto as Exhibit "B".

8.    On or about July 10, 2001, Plaintiff filed a second charge with the EEOC charging Defendant with discriminating against Plaintiff on the basis of age and retaliation. A true and complete copy of that charge is attached hereto as Exhibit "C".

9.    On September 7, 2001, the EEOC issued a Right to Sue letter, a true and complete copy of which is attached hereto as Exhibit "D".

10.    Plaintiff is informed and believes that the IDHR and the EEOC sent a notice of these charges to Defendant and that the Defendant has received notice of same.

11.    The IDHR, EEOC, Plaintiff and a representative of Defendant had the opportunity to participate in conciliation of the charges during the one hundred eighty day period without reaching agreement.

2

12.   The EEOC has not filed suit concerning the matters described in the charges.

## COUNT I

### DISCRIMINATION BASED ON AGE

13.   Plaintiff was hired by the Defendant Company in or about 1998 as a Maintenance Mechanic I.

14.   During his employment, Plaintiff performed the work assigned to him of a satisfactory basis.

15.   On or about May, 2000 Plaintiff applied for a promotion to Maintenance Engineer.

16.   On June 18, 2000, Plaintiff was denied the promotion to Maintenance Engineer.  Instead, a younger, less qualified individual received the promotion.

17.   Although the decision maker declined to provide Plaintiff for a reason for the denial of the promotion to him, Plaintiff was told by another person that the decision maker had stated that Plaintiff was too old.

18.   Plaintiff was denied a promotion to Maintenance Engineer based on his age, Plaintiff being 61 years of age at the time of the denial of the promotion, and a younger, less experienced person received the promotion, thereby violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C., §626(b), et seq.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Enjoin Defendant Company from discriminating on the basis of age

3

in the terms and conditions of employment of its employees, including the promotion of its employees;

   B.    Award, against the Defendant Company and in favor of Plaintiff actual damages for loss of revenue, including back pay, incurred by the Plaintiff as a result of the discrimination against him;

   C.    Award, against the Defendant Company and in favor of Plaintiff compensation for the loss of benefits resulting from the denial of the promotion to him;

   D.    Award Plaintiff liquidated damages as provided by the ADEA;

   E.    Award Plaintiff reasonable attorney fees and other costs incurred by this action; and

   F.    Award Plaintiff such other and further relief as may be equitable and just.

## COUNT II

## DISCRIMINATION BASED ON AGE

   19.    On July 3, 2000, Plaintiff filed a charge against the Defendant Company based on the allegations set forth in Count I above based on age discrimination (2001CA0324). On April 16, 2001, Plaintiff filed a Request for Review on that charge.

   20.    On April 25, 2001 Cheryl Phillips informed Plaintiff that he was to return to work on April 30, 2001. At no time did Ms. Phillips inform Plaintiff that if he did not return to work at that time that he would be terminated. Instead, Plaintiff asked if Ms. Phillips if she could provide him with a copy of the report submitted by the hospital's doctor so that Plaintiff could show it to his doctor. Ms. Phillips agreed, but did not fax

4

the letter to Plaintiff until May 8, 2001.

21.    On May 7, 2001 Plaintiff received a telephone call from Len Pawelski, Plaintiff's supervisor, informing Plaintiff that he should return to work on light duty. Plaintiff asked Mr. Pawelski if he could see his own doctor to obtain his own doctor's opinion as to whether Plaintiff could return to work. Mr. Pawelski told Plaintiff that he could do so and to let him know what Plaintiff's doctor said.

22.    On May 11, 2001 Plaintiff saw his doctor as this was the first available appointment. Plaintiff's doctor stated that he could not return to work until May 25, 2001, the date on which Plaintiff would complete his physical therapy.

23.    Shortly after the appointment, Plaintiff suffered a heart attack and was hospitalized through May 15, 2001. During his hospitalization, Plaintiff was visited by Mr. Pawelski who informed Plaintiff that he would inform Ms. Phillips as well as the Disability Council about Plaintiff's condition. No mention of a termination was made at that time.

24.    On May 22, 2001, Plaintiff was precipitously terminated by his employer.

25.    Plaintiff was terminated based on his age, Plaintiff being 62 years of age at the time of his termination in that younger persons were able to consult with their own physicians before returning to work after an injury, thereby violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C., §626(b), et seq.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Enjoin Defendant Company from discriminating on the basis of age in the terms and conditions of employment of its employees;

5

B.      Award, against the Defendant Company and in favor of Plaintiff actual damages for loss of revenue, including back pay, incurred by the Plaintiff as a result of the discrimination against him;

C.      Award, against the Defendant Company and in favor of Plaintiff compensation for the loss of benefits resulting from his termination;

D.      Award Plaintiff liquidated damages as provided by the ADEA;

E.      Award Plaintiff reasonable attorney fees and other costs incurred by this action; and

F.      Award Plaintiff such other and further relief as may be equitable and just.

## COUNT III

### RETALIATION

26.     The allegations of paragraphs 19 through 25 of this complaint are incorporated by reference into this paragraph 26.

27.     Plaintiff was retaliated against for filing a previous charge of discrimination against the Defendant Company, and in that he filed a Request for Review on that charge shortly before his termination, thereby violating the retaliation provision of the ADEA, 29 U.S.C., §626(b), et seq.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Enjoin Defendant from retaliating against employees for complaining of and reporting incidents of discrimination;

6

B.     Award, against the Defendant Company and in favor of Plaintiff compensation for the loss of benefits resulting from his retaliatory termination;

C.     Award Plaintiff liquidated damages as provided by the ADEA;

D.      Award Plaintiff reasonable attorney fees and other costs incurred by this action; and

E.     Award Plaintiff such other and further relief as may be equitable and just.

## JURY DEMAND

28.     Plaintiff demands trial by jury.

Respectfully submitted,

SLAVKO SUBARIC

Appearing Pro Se

Slavko Subaric
306 East Euclid
Prospect Heights, Illinois 60070
(847) 818-0003

7

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See ... by act statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| ☒ | FEPA | |
| ☒ | EEOC | 2001CA0324 |

## Illinois Department of Human Rights and EEOC
### State or local Agency, if any

| NAME (indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Slavko Subaric | (847)818-0003 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 306 E Euclid | Prospect Heights, IL 60070 | 11/24/38 |

## NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Lutheran General Hospital | 15+ | (847)723-5565 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1775 Dempster | Park Ridge, IL 60068 | Cook |
| | | TELEPHONE (Include Area Code) |

| NAME | | |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| | | TELEPHONE |

### CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST (ADEA/EPA) | LATEST (ALL) |
| 6/18/00 | 6/18/00 |

☐ CONTINUING ACTION

### THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s))

I.  A.  **ISSUE/BASIS**
        **FAILURE TO PROMOTE ON JUNE 18, 2000 DUE TO MY AGE, 61**

    B.  **PRIMA FACIE ALLEGATIONS**
        1. My age is 61.

        2. I was qualified to be promoted from Maintenance Mechanic I to Maintenance Engineer.

        3. There was a position available for a Maintenance Engineer.

        4. I applied for said promotion.

        5. On June 18, 2000, I was denied a promotion to Maintenance Engineer by Tony Pilolla, Chief Maintenance Electrician. No reason was given for this action. However, I was told by a friend that knows Peski that he thought I was too old.

        6. A younger, less qualified individual, Robert (last name unknown) was promoted instead of me.

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone Number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

NOTARY - (When necessary to Meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT        8-31-00 DATE

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)

"OFFICIAL SEAL"
KONAH I. YANCY-MORGAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/9/2003

EEOC FORM 5 (5/01)

EXHIBIT A

FROM :

PHONE NO. : Nov. 27 2001 10:43AM P2

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: Slavko Subaric
306 E EUCLID
PROSPECT HEI, IL 60070

From: E.E.O.C
Chicago District Office
500 W. Madison Street Suite 2800
Chicago, IL 60661-2511

☐ On behalf of a person aggrieved whose identity is CONFIDENTIAL. ( 29 C.F.R. 1601.7(a) )

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 21BA02848 | Nola Smith, S&L Coord. | (312) 886-5973 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.
☐ Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.
☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.
☐ We cannot investigate your charge because it was not filed within the time limit required by law.
☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.
☐ While reasonable efforts were made to locate you, we were not able to do so.
☐ You had 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.
☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.
☐ Other (briefly state) _____

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission

John P. Rowe, District Director

7 November 2001
(Date)

Enclosure(s)

cc: LUTHERAN GENERAL HOSP
1775 DEMPSTER
PARK RIDGE, IL 60068

EXHIBIT B

EEOC Form 191 (Rev 09/97)

**CHARGING PARTY COPY**

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☒ FEPA
☒ EEOC

CHARGE NUMBER

### Illinois Dept. of Human Rights
*State or local Agency, if any*
and EEOC

NAME (Indicate Mr., Ms., Mrs.)
Mr. Slavko Subaric

HOME TELEPHONE (Include Area Code)
(847) 818-0003

STREET ADDRESS
386 East   Euclid

CITY, STATE AND ZIP CODE
Prospect Heights, Illinois 60070

DATE OF BIRTH
11/24/38

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below.)

NAME
Lutheran General Hospital

NUMBER OF EMPLOYEES, MEMBERS
15+

TELEPHONE (Include Area Code)
(847) 723-5565

STREET ADDRESS
1775 Dempster

CITY, STATE AND ZIP CODE
Park Ridge, Illinois 60068

COUNTY
Cook

NAME

TELEPHONE NUMBER (Include Area Code)

STREET ADDRESS

CITY, STATE AND ZIP CODE

COUNTY

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

### SEE ATTACHED CHARGE

APR 1 0 2001

OFFICIAL SEAL
LESA STRUCK KIEFER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 08/06/02

EXHIBIT C

☐ I also want this charge filed with the EEOC.
I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.
I declare under penalty of perjury that the foregoing is true and correct.

Date

Charging Party (Signature)

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

DATE
6/29/01

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
6/29/01

On July 3, 2000 I filed a charge against my employer, Lutheran General Hospital based on age discrimination (2001CA0324). On April 16, 2001 I filed a Request for Review on that charge.

On April 25, 2001 Cheryl Phillips informed me that based on the opinion of Advocates doctor, I was to return to work on April 30, 2001. At no time did Ms. Phillips inform me that if I did not return to work at that time that I would be terminated. Instead I asked Ms. Phillips if she would provide me with a copy of the report submitted by the hospitals' doctor so that I could show it to my doctor. Ms. Phillips agreed but did not fax the letter to me until May 8, 2001.

On May 7, 2001 I received a telephone call from Len Pawelski informing me that I should return to work on light duty. I asked Mr. Pawelski if I could see my doctor to obtain my doctors opinion as to whether I could return to work. Mr. Pawelski told me that I could do so and to let him know what my doctor said.

On May 11, 2001 I saw my doctor, as this was the first available appointment. My doctor stated that I could not return to work until May 25, 2001, the date on which I would complete my physical therapy. Shortly after the appointment, I suffered a heart attack and was hospitalized through May 15, 2001. During my hospitalization I called Mr. Pawelski and advised him of my condition. He told me that he would inform Ms. Phillips as well as the Disability Council. However, on May 22, 2001 I was terminated by my employer.

I believe that I was discriminated against based on my age (DOB: 11/24/38) and retaliated against for filing a previous charge of discrimination, in that I was treated differently than other younger employees who had not filed previous charges of discrimination against my employer.





**Equal Employment Opportunity Commission**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  Slavko Subaric<br>396 East Euclid<br>Prospect Heights, Illinois 60070<br><br>7001 0360 0000 0467 1470 | From:  Equal Employment Opportunity Commission<br>Chicago District Office<br>500 West Madison Street, Suite 2800<br>Chicago, Illinois  60661-2511 |

[  ]   *On behalf of a person aggrieved whose identity is*
         *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No.<br>210A14112 | EEOC Representative<br>Kathleen A. Leaver, Investigator | Telephone No.<br>(312) 353-8766 |
|---|---|---|

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[  ]   The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[  ]   Respondent employs less than the required number of employees.

[  ]   Your charge was not timely filed with the Commission, i.e., you waited too long after the date(s) of the discrimination you alleged to file your charge.  Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ]   You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge.  You have had more than 30 days in which to respond to our final written request.

[  ]   The Commission has made reasonable efforts to locate you and has been unable to do so.  You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ]   The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged.  At least 30 days have expired since you received actual notice of this settlement offer.

[ X ]   The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -

[  ]   **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[ X ]   **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[  ]   **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

_____9|7|01_____          On behalf of the Commission

                              _____
                              John P. Rowe, District Director

Enclosures
    Information Sheet
    Copy of Charge
cc: Respondent(s)        Lutheran General Hospital

EEOC Form 161 (Test 5/95)

EXHIBIT D